LATONIA SMITH
9748 CANYON LANDING AVE.
LAS VEGAS, NV 89166
702-521-3522
PLAINTIFF IN PROPER PERSON

UNITED STATES DISTRICT COURT

CLARK COUNTY, NEVADA

LATONIA SMITH,

        Plaintiff(s),

-vs-

FENNEMORE CRAIG,

        Defendant(s).

2:19-cv-00824-GMN-GWF

## COMPLAINT AND REQUEST FOR INJUNCTION WITH JURY DEMAND

NOW COMES Plaintiff Latonia Smith, an individual ("Ms. Smith"), states her Complaint against Defendant(s) as follows:

### INTRODUCTION

1. Fennemore Craig P.C. is a regional law firm that represents large corporations in litigation.

2. Fennemore Craig P.C. includes six office locations in Phoenix, Arizona; Tucson, Arizona; Nogales, Arizona; Las Vegas, Nevada; Reno, NV; and Denver, Colorado.

3. Caesars Entertainment is a major gaming corporation that owns and operates more than fifty (50) casinos and hotels, including but not limited to PHWLV, LLC; The Cromwell; Flamingo Las Vegas; Harrah's Las Vegas; The Linq Hotel; Bally's Las Vegas; Rio All-Suite Hotel; and Paris Las Vegas.

4. Fennemore Craig is representing Caesars Entertainment (CEC) and Planet Hollywood Las Vegas (PHWLV) in a currently pending, multi-million-dollar litigation, involving Annecer Peruzar (the Plaintiff's mom and Plaintiff in the litigation) and Caesars Entertainment/PHWLV (defendants).

5. Fennemore Craig also represented Caesars Entertainment in a dismissed retaliatory lawsuit that was filed against the Plaintiff and 50 DOE defendants.

6. During the course of the litigation that began on November 5, 2018, employees of Fennemore Craig began harassing, intimidating, and defaming Ms. Smith, who is a witness in the currently pending litigation.

7. Employees of Fennemore Craig, in a concerted effort, threatened Ms. Smith, filed multiple protective orders against Ms. Smith in various locations (consecutively), defamed Ms. Smith to various third parties, and have continued to harass Ms. Smith in an attempt to prevent Ms. Smith from attending public proceedings or being a witness in the litigation.

8. Namely, employees of Fennemore Craig also threatened to have the Plaintiff and her mother killed, called the Plaintiff derogatory, anti-black names, and accused the Plaintiff of crimes that were listed in the dismissed retaliatory lawsuit (in and outside of separate, public court proceedings).

9. Employees of Fennemore Craig also set out to expose a confidential settlement agreement made between parties in connection with the dismissed retaliatory lawsuit, which all parties agreed would cause irreparable harm if exposed.

10. Fennemore Craig further instructed their defendants, Caesars Entertainment, to ban Ms. Smith from all Caesars Properties although Ms. Smith has never been on a Caesars property.

11. This lawsuit is brought against the defendant(s) to seek legal redress for their intentional, reckless, and malicious attacks on the Plaintiff, which has caused permanent damage to her life and reputation.

12. The Plaintiff does not have a criminal history, graduated third in her high school class, and recently graduated with a bachelor's degree in Biochemistry.

13. The Plaintiff is preparing for medical school and there is no doubt that the harm inflicted by Fennemore Craig in their emotionally-filled need to help their clients "get back" at the Plaintiff's mother has caused permanent damage to her reputation.

14. The defendant(s) assisted in bullying the innocent daughter of Mrs. Annecer Peruzar (the Plaintiff in a case against their clients CEC/PHWLV) with an absolute disregard for the pain and destruction that their attacks would cause and due to their hate of African Americans in general.

15. This country and our society have been a pillar of equality, and countless leaders have fought, and are still fighting, to eradicate the hate found within pockets of our communities. Every individual has a right to be respected regardless of the color of their skin.

16. The defendants must be dealt with in the same manner all bullies are dealt with and that is to hold the bully fully accountable for their wrongdoing in a manner which effectively deters the bully from again engaging in bullying. In a civil lawsuit, punishment and deterrence is found in awarding money damages to the victim and target of the bully.

17. In order to fully compensate Ms. Smith for her damages and to punish, deter, and teach the defendants a lesson that they will remember, this action seeks money damages in excess of One Million Dollars (1,000,000.00).

//

# FACTS OF THE CASE

## Background

18. Mrs. Peruzar (Plaintiff's mother) was employed at Planet Hollywood from November 19, 2012 to November 15, 2017 as a Guest Room Attendant (GRA).

19. Guest room attendants at Planet Hollywood receive tips in many different forms and amounts.

20. At the time of Mrs. Peruzar's employment, Planet Hollywood did not have tip policies nor tip envelopes, leaving it up to Guest Room Attendants to decipher what constituted a tip from a guest.

21. Guest Tomas Pina stayed at Planet Hollywood from October 28, 2017 or October 29, 2017 to November 2, 2017.

22. Mrs. Peruzar cleaned the room of Guest Tomas Pina on October 31, 2017 where she received and took a tip.

23. Mrs. Peruzar was suspended by Planet Hollywood on November 5, 2017 and terminated by Planet Hollywood on November 15, 2017 for an unrelated complaint made by guest Tomas Pina concerning money that was taken from his room on November 1, 2017 (Planet Hollywood pinned that complaint on Annecer Peruzar in order to cover for another GRA).

24. Between the time period of November 5, 2017 and November 15, 2017, Planet Hollywood and CEC subsequently began accusing Mrs. Peruzar's daughter (Ms. Smith) of sending hateful messages under various aliases (consisting of crimes), which caused Ms. Smith to be hospitalized on November 17, 2017 (along with witnessing the termination of her mother).

25. Planet Hollywood and CEC planned to use Ms. Smith as a pawn and already knew Mrs. Peruzar had a daughter when they immediately pinned false allegations to Mrs. Peruzar's daughter although Mrs. Peruzar had not told them

directly that she had a daughter. Later, CEC and PHWLV doubled back to ask Mrs. Peruzar if she had a daughter, in which Mrs. Peruzar confirmed.

26. Planet Hollywood suspended and terminated Mrs. Peruzar for alleged theft (of a tip) and gross willful misconduct without any evidence, based solely on the fact that she was African American and based on the false allegations that her daughter, Ms. Smith, was sending hateful messages to CEC and PHWLV (using Mrs. Peruzar's daughter as a further basis for termination).

27. Shortly afterward, defendants CEC and PHWLV terminated another employee for alleged theft (of a tip).

28. Defendants PHWLV and CEC spread the news of these incidents throughout their own housekeeping departments and to several third parties.

**Messages Sent to Defendants PHWLV and Caesars Entertainment Under Various Aliases Created By What Could Have Only Been Themselves And/Or Other Employees**

29. During the suspension of Mrs. Peruzar, it is presumed that defendants Planet Hollywood and Caesars Entertainment started receiving hateful messages from themselves and/or upset employees under the guise of various aliases including aliases, suspiciously, pretending to be the "children of Mrs. Peruzar."

30. Although it was evident that Ms. And Mr. Smith had not sent any of these messages, Planet Hollywood and Caesars Entertainment immediately pinned these messages on Ms. Smith and began accusing her of crimes to third parties.

31. When CEC/PHWLV were put on notice to cease their baseless accusations, they continued on in order to stick with their false narrative (a further basis for the termination of Mrs. Peruzar) finding an absolute disregard for Mrs. Peruzar's family.

32. With the situation spiraling out of control, Ms. Smith, through her personal Facebook profile, wrote to the CEO of Caesars Entertainment asking for matters concerning Mrs. Peruzar and the false accusations being made to be looked into more closely.

33. Instead, on a hate-filled, retaliatory agenda, CEC/PHWLV added Ms. Smith to a lawsuit/TPO (stating Ms. Smith was stalking an employee of PHWLV that she did not know), making her the fall person in their retaliatory agenda against Mrs. Peruzar.

**The Retaliatory Lawsuit Filed Against the Plaintiff**

34. On March 15, 2018 and March 19, 2018, defendants PHWLV and CEC filed a lawsuit and temporary protective order against Ms. Smith, with the help of Fennemore Craig due to their hate of the Plaintiff's mother. As stated in settlement discussions, CEC/PHWLV's only basis for attaching Ms. Smith to the lawsuit/TPO with 50 DOE defendants was the message that she sent to the CEO, from her personal Facebook, to look into matters.

35. Instead of going through a long and baseless litigation, Ms. Smith (represented by Mortenson and Rafie) and CEC/PHWLV (represented by Fennemore Craig), agreed to enter into a confidential settlement, dismissing all frivolous claims (including the TPO) against Ms. Smith.

36. Despite the confidential settlement, Fennemore Craig, exposed this agreement and continued to assert these false allegations against the Plaintiff, along with their defendants CEC/PHWLV, to third parties.

37. With the start of the lawsuit that Mrs. Peruzar filed against CEC/PHWLV, Fennemore Craig (along with their defendants CEC/PHWLV) also threatened to cause harm to Ms. Smith and Mrs. Peruzar, and followed in their defendants'

footsteps by filing frivolous TPOs against Ms. Smith (engaging in witness intimidation).

**Fennemore Craig and their Employees Continue The False Allegations Against The Plaintiff in Further Retaliation and Malice**

38. Fennemore Craig distributed the confidential settlement agreement to various third parties (outside of those confined to the agreement).

39. After being harassed by an employee of Fennemore Craig (Shannon Pierce) since the start of the litigation involving Mrs. Annecer Peruzar and CEC/PHWLV, the harassment reached a high when Ms. Smith submitted an affidavit to the Eighth Judicial District court in connection with a motion filed by Mrs. Annecer Peruzar, on April 16, 2019.

40. On April 17, 2019, after a public proceeding that Ms. Smith attended with her mother, Fennemore Craig employee, Shannon Pierce (in attendance with her associate Ethan Thomas), noted that she was angry about the affidavit filed by Ms. Smith. Since her remarks were ignored by Ms. Smith, this caused Ms. Pierce and her associate Ethan Thomas to become upset. They both carried on calling Ms. Smith a "nigga." They then threatened Ms. Smith stating, "you won't make it to see the end of the case because all our defendants have to do is call in an order to have you and your mom taken out….'niggas' don't win." Pierce and her associate then called Ms. Smith a schizophrenic and threatened to punch Ms. Smith in the case stating, "maybe your big lying nose will become smaller."

41. This was all done in an attempt to intimidate and provoke Ms. Smith who had her Air pods in.

42. Along with previously disclosing the confidential settlement agreement to (including but not limited to) Ethan Thomas, Brandon Trout, Jerome Bowen, Shawna Braselton, and Wade Beavers, Shannon Pierce used this moment as an

opportunity to falsely accuse Ms. Smith of issuing the threats that she and her associate had issued, filed publicly with the court and made wild accusations about Ms. Smith committing crimes, and filed the confidential settlement publicly with the district court.

43. Ms. Pierce and her associate then maliciously moved to have Ms. Smith banned from public proceedings as a witness by filing an emergency protective order in district court, which was denied.

44. Fennemore Craig employees then, subsequently, conspired with one another to further intimidate, harass, and defame Ms. Smith by consecutively filing TPOs against Ms. Smith in various locations and continuing to spread the false and defaming accusations to third parties.

45. Working in connection with their defendants CEC/PHWLV and subsequent with the frivolous TPO filings, Fennemore Craig further instructed CEC to ban Ms. Smith from all current and future properties (although Ms. Smith had never been on a CEC property).

46. Fennemore Craig and their employees disclosed the settlement agreement in the hopes of further retaliating against Mrs. Annecer Peruzar and are willing to go to any depths (along with their defendants CEC/PHWLV) in order to cause harm and destruction. Their destruction must end.

**MALICIOUS USE OF PLAINTIFF'S MEDICAL RECORDS**

47. Employees of Fennemore Craig maliciously used the medical records of Ms. Smith (stemming from her November 17, 2017 hospitalization) and disclosed by Mrs. Annecer Peruzar (not Ms. Smith) in her ongoing lawsuit (and accidently publicly filed by Mrs. Peruzar) to further their and their defendants' agenda of retaliation and hate.

48. Employees of Fennemore Craig distributed Ms. Smith's medical records containing Ms. Smith's social security and medical identification number, and used Ms. Smith's medical records to falsely indicate to third parties that Ms. Smith was "schizophrenic" (Ms. Smith was not diagnosed with schizophrenia).

49. Employees of Fennemore Craig also used Ms. Smith's medical records (stemming from her November 17, 2017 hospitalization) as a basis for the frivolous and consecutive TPO filings that they conspired to make against Ms. Smith in their agenda to intimidate, harass, and defame Ms. Smith as a witness.

50. It is evident that Fennemore Craig's goal was to also play into the stigma surrounding mental health in an attempt to bring courts to conclude that due to Ms. Smith seeking mental health for the first time in her life, on November 17, 2017, she could not be believed and could not defend herself against the assertions being made by Fennemore Craig employees in TPO filings.

51. The defendant's continual regurgitation of false accusations, public filing of the settlement agreement, and defaming statements have continued and have expanded on the harm caused to the Plaintiff.

52. The defendant(s) must be held accountable for their actions.

## PARTIES, JURISDICTION, AND VENUE

53. At all relevant times, Ms. Smith was and is a resident of Clark County, Nevada.

54. The defendant, Fennemore Craig, is incorporated under the laws of the State of Arizona and has its principal place of business in the State of Arizona.

55. The amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interests and costs, as required to sustain subject-matter jurisdiction in this Court.

56. This Court has subject-matter jurisdiction over this matter pursuant to 28 28 U.S.C. § 1332(a)(c).

57. The defendant(s) directed their unlawful and bullying conduct at Ms. Smith, a citizen of Nevada.
58. The defendant(s) published the false statements identified herein in the State of Nevada.
59. Ms. Smith suffered permanent reputational and emotional harm in this District.
60. There is a reasonable and direct nexus between the defendants' tortious conduct and the harm suffered by Ms. Smith.
61. Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b) because the defendants are subject to personal jurisdiction in this District and/or a substantial part of the events giving rise to this claim occurred in this District, including publication and injury.

## CAUSE OF ACTION FOR CIVIL CONSPIRACY

62. Ms. Smith reasserts and incorporates by reference paragraphs 1 through 61 of this Complaint as if fully restated herein.
63. Several employees of Fennemore Craig became involved in the plot to harass, defame, and intimidate Ms. Smith, which included distributing the confidential settlement agreement and filing TPOs against Ms. Smith in various locations.
64. The defendant(s) intended to accomplish the unlawful objective of intimidating a witness in a current and separate litigation and furthering their defendants' goal of retaliating against Mrs. Annecer Peruzar.
65. The defendant(s), upon agreement, accomplished their goal as several courts are currently considering the various TPOs filed against Ms. Smith, Ms. Smith has been harassed and defamed to an extent that has caused her great emotional distress, and Ms. Smith has had fears for her life due to being a witness in the litigation of Mrs. Annecer Peruzar v. CEC et al.

66. The unfaithful and unlawful actions by the defendants were deliberate leading directly to the damages sustained by Ms. Smith to be proven at trial on this matter.

### CAUSE OF ACTION FOR SLANDER/SLANDER PER SE

67. Ms. Smith reasserts and incorporates by reference paragraphs 1 through 66 of this Complaint as if fully restated herein.

68. The defendant(s) made unprivileged false and defamatory statements about Ms. Smith including but not limited to accusing her of the crimes of stalking, harassment, aggravated stalking, sending threatening messages, calling her a "nigga," and calling her a "schizophrenic," to several third parties.

69. The defendant(s) made false and defamatory statements about Ms. Smith concerning settled matters contained in a confidential settlement agreement, which all parties (including Fennemore Craig) agreed would cause irreparable harm if exposed to outside parties.

70. The actions of defendant(s) are slanderous on its face as they have accused Ms. Smith of committing crimes under Nevada laws without sufficient basis for doing so and has called the Plaintiff a word so degrading and derogatory in our society that it would be considered defamation per se.

71. Defendant(s) have caused great harm to Ms. Smith to be proven at trial in this matter.

### CAUSE OF ACTION FOR DEFAMATION/DEFAMATION PER SE

72. Ms. Smith reasserts and incorporates by reference paragraphs 1 through 71 of this Complaint as if fully restated herein.

73. The defendant(s) made unprivileged false and defamatory statements about Ms. Smith including but not limited to accusing her of the crimes of stalking,

harassment, aggravated stalking, sending threatening messages, calling her a "nigga," and calling her a "schizophrenic," to several third parties.

74. The defendant(s) made false and defamatory statements about Ms. Smith concerning settled matters contained in a confidential settlement agreement, which all parties (including Fennemore Craig) agreed would cause irreparable harm if exposed to outside parties.

75. The actions of defendant(s) are defaming on its face as they have accused Ms. Smith of committing crimes under Nevada laws without sufficient basis for doing so and have called the Plaintiff a word so degrading and derogatory in our society that it would be considered defamation per se.

76. Defendants have caused great harm to Ms. Smith to be proven at trial in this matter.

**CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

77. Ms. Smith reasserts and incorporates by reference paragraphs 1 through 76 of this Complaint as if fully restated herein.

78. The defendant(s) defamed, harassed, and intimidated Ms. Smith as stated in this lawsuit, which has caused Ms. Smith to (including but not limited to) continually seek mental health treatment, has caused Ms. Smith permanent harm to her reputation, and has caused Ms. Smith to fear for her life.

79. As a result of defendant's reckless conduct, Ms. Smith has suffered severe emotional distress to be proven at trial on this matter.

**CAUSE OF ACTION FOR PERMANENT INJUNCTIVE RELIEF**

80. Ms. Smith reasserts and incorporates by reference paragraphs 1 through 79 of this Complaint as if fully restated herein.

81. The defendant(s) have not stopped their baseless accusations against Ms. Smith. In fact, they have continued on, causing severe and permanent harm including but not limited to emotional harm and harm to Ms. Smith's reputation.

82. Ms. Smith is entitled to permanent injunctive relief against defendant(s) banning them from continuing to make false and defamatory statements against Ms. Smith and banning them of continuing the conspiracy of having employees file frivolous TPOs against Ms. Smith in various locations.

## MS. SMITH IS A PRIVATE FIGURE

83. Ms. Smith is a private figure for the purposes of the defamation and libel claims, having lived her entire life outside of the public eye.

## DEFENDANTS PUBLISHED INTENTIONALLY AND WITH ACTUAL MALICE AND FILED VARIOUS APPLICATIONS FOR PROTECTIVE ORDERS WITH ACTUAL MALICE

84. The defendant(s) published false and defamatory accusations/statements with actual knowledge of their falsity and/or reckless disregard for the truth.

85. The defendant(s) filed various applications for protective orders against Ms. Smith with actual malice as stated in this lawsuit. Employees that Ms. Smith has never seen or had contact with filed TPO applications against Ms. Smith.

86. The defendant(s) exposed the confidential settlement agreement with actual malice (due to the litigation between Mrs. Annecer Peruzar and their clients CEC/PHWLV).

87. As a large law firm with several subsidiaries, defendant(s) knew but ignored the importance of verifying damaging and in this case, incendiary accusations against Ms. Smith prior to making them.

88. The actual malice of defendants is demonstrated by their utter and knowing disregard for the truth and reputation of Ms. Smith.

89. The defendant's conduct demonstrates a purposeful avoidance of the truth in order to exact revenge on behalf of their clients.

90. The defendant's actual malice is further evidenced by their failure to cease to their false claims after having knowledge of and entering into a confidential agreement with the Plaintiff.

91. The defendant's made the false and defamatory accusations with common law malice, including because they intended to retaliate against Mrs. Annecer Peruzar by harming her family.

## DAMAGES

92. The defendant's conduct, included but not limited to defamation, was steeped in hate and retaliation.

93. The defendant(s) in an attempt to retaliate against Mrs. Annecer Peruzar and cause further harm to Ms. Smith engaged in the intentional infliction of emotional distress on the Plaintiff.

94. The false and defamatory accusations, including but not limited to the confidential settlement agreement, was published to third parties.

95. The false and defamatory accusations against Ms. Smith are defamatory per se as they are slanderous on their face without resort to additional facts, and subjected Ms. Smith to humiliation, contempt, embarrassment, and disgrace.

96. As a direct and proximate result of the false and defamatory accusations, Ms. Smith suffered permanent harm to her reputation.

97. As a direct and proximate result of the false and defamatory accusations, Ms. Smith suffered severe emotional distress.

98. As a direct and proximate result of the false and defamatory accusations, Ms. Smith is forced to live her life in a constant state of concern regarding her reputation.

99. Ms. Smith is entitled to compensatory and punitive damages.

100. The defendant's actions were done with actual malice and common law malice, thereby entitling Ms. Smith to an award of punitive damages.

101. The defendant's conduct was outrageous and willful, demonstrating that entire want of care that raises a conscious indifference to consequences.

102. Ms. Smith is entitled to an award of punitive damages to punish defendants and to deter them from repeating such egregiously unlawful misconduct in the future.

**WHEREFORE,** Ms. Smith respectfully prays:

(a) That judgment be entered against the defendants for compensatory damages in an amount not less than One Million Dollars ($1,000,000.00);

(b) That judgment be entered against the defendants for punitive damages in an amount not less than One Million Dollars ($1,000,000.00);

(c) That all costs of this action be taxed to the defendant(s);

(d) For interest at the statutory rate; and

(e) That the Court grant all such other and further relief that the Court deems just and proper; including equitable relief.

**DEMAND FOR JURY TRIAL**

Ms. Smith demands trial by jury in this action of all issues so triable.

Respectfully submitted this 13th day of May 2019

*/s/ Latonia Smith*

LATONIA SMITH

9748 CANYON LANDING AVE.
LAS VEGAS, NV 89166
702-521-3522