1  Alex L. Fugazzi (Nevada Bar No. 9022)
   Michael Paretti (Nevada Bar No. 13926)
2  SNELL & WILMER L.L.P.
   3883 Howard Hughes Parkway, Suite 1100
3  Las Vegas, Nevada 89169
   Telephone: 702.784.5200
4  Facsimile: 702.784.5252
   afugazzi@swlaw.com
5  mparetti@swlaw.com

6

7  *Attorneys for Defendant Fennemore Craig*

8              **UNITED STATES DISTRICT COURT**

9              **DISTRICT OF NEVADA**

10

11  LATONIA SMITH,                          Case No.:   2:19-cv-00824-GMN-GWF

                         Plaintiff(s),
12
                                            **DEFENDANT FENNEMORE CRAIG'S**
13           -vs-                           **SPECIAL MOTION TO DISMISS**
                                            **PURSUANT TO NRS 41.660**
14  FENNEMORE CRAIG,
                                            **-AND-**
15                       Defendant(s).
                                            **MOTION TO DISMISS PURSUANT**
16                                          **TO FRCP 12(B)(6)**

17

18

19      Defendant Fennemore Craig ("Fennemore"), by and through its counsel of record, Snell &

20  Wilmer L.L.P., hereby submits this special motion to dismiss Plaintiff Latonia Smith's ("Ms.

21  Smith") Complaint [ECF No. 1] pursuant to Nevada's Anti-SLAPP statute, NRS 41.660, and

22  motion to dismiss Ms. Smith's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

23

24

25

26

27

28

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

1    These motions are based on the attached memorandum of points and authorities, the papers

2    and pleadings on file with the Court, the Request for Judicial Notice filed concurrently herewith,

3    and such other written or oral argument and other materials that may be presented prior to the

4    Court's decision on these motions.

5

6    Dated:  June 5, 2019.                    SNELL & WILMER L.L.P.

7

8                                             By: _____

9                                             Alex L. Fugazzi (NV Bar No. 9022)
                                              Michael Paretti (NV Bar No. 13926)
10                                            3883 Howard Hughes Parkway, Suite 1100
                                              Las Vegas, Nevada 89169
11
                                              *Attorneys for Defendant Fennemore Craig*
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Ms. Smith's lawsuit attempts to both stifle Fennemore's ability to seek redress with the courts and punish Fennemore's Directors and employees for seeking and securing protective orders regarding threats made by Ms. Smith to them and their clients. Indeed, Ms. Smith inappropriately asserts claims against Fennemore, a law firm, based solely on Fennemore's representation of its clients in litigation between Ms. Smith's mother and Fennemore's clients. The Court should therefore dismiss Ms. Smith's Complaint under NRS 41.660, Nevada's anti-SLAPP statute. NRS 41.660 requires the Court to dismiss claims (1) that are based on a good faith communication in furtherance of a person's right to petition, such as petitioning a court, and (2) where the party asserting such claims cannot show a probability of prevailing on the merits. Both elements are satisfied here.

First, the entire basis for Ms. Smith's Complaint is that Fennemore's Directors and employees (i.e. its attorneys), as counsel for Caesars Entertainment Corporation and PHWLV, LLC, made communications to Ms. Smith during the pendency of active litigation, distributed a confidential settlement agreement, and filed "TPOs against Ms. Smith in various locations." These are quintessential good faith communications in furtherance of Fennemore's right to petition the courts for redress, especially when, as is the case here, those communications resulted in temporary protective orders being granted by sitting Justice Court Judges.

Second, Ms. Smith cannot prevail on the merits. Because Ms. Smith's claims are based on Fennemore's petitioning, Fennemore is immune from liability under NRS 41.650. Ms. Smith's claims are similarly barred by the absolute litigation privilege, as Fennemore was working in its capacity as counsel, and any actions it took for its clients related to the underlying litigation were uttered or published in the course of judicial proceedings, and thus are absolutely privileged and cannot be the basis for a cause of action against Fennemore.

But even absent these privilege protections, Ms. Smith's Complaint fails to state a claim for which relief can be granted. Fennemore did not conspire against Ms. Smith, slander or defame Ms. Smith, or intentionally cause Ms. Smith emotional distress, and Ms. Smith has not alleged facts

sufficient to state any claim for relief against Fennemore that is plausible on its face. Therefore, the Court can and should grant this motion and dismiss Ms. Smith's Complaint on the merits. Finally, the Court should award Fennemore its costs and attorneys' fees under NRS 41.670.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Fennemore's Only Connection to Ms. Smith is in Its Capacity as Counsel for Caesars Entertainment Corporation and PHWLV, LLC.

This case is one of two related actions filed by Ms. Smith against her mother's former employers, Caesars Entertainment Corporation and PHWLV, LLC, and the individual attorneys (including Fennemore attorney Shannon Pierce) representing those entities in another, currently pending lawsuit. *See* Pl.'s Compl., ECF No. 1, at ¶¶ 1-7, 18-28; *see also* Case No. 2:19-cv-00856-GMN-GWF (asserting nearly identical claims against Fennemore attorney Shannon Pierce).

Ms. Smith alleges that when litigating the lawsuit brought by her mother against the Caesars Entertainment Corporation and PHWLV, LLC, Fennemore's employees (i.e. attorneys and legal support staff) improperly sought temporary protective orders, on behalf of Fennemore's employees' individually and on behalf of Fennemore's clients, against Ms. Smith related to threats Fennemore believed Ms. Smith had made towards its clients and its employees. *See* Pl.'s Compl., ECF No. 1, at ¶¶ 7, 34, 43, 85. Ms. Smith also alleges that Fennemore's attorneys improperly disclosed a confidential settlement agreement[1] in litigation between Fennemore's clients and Ms. Smith. *See* Pl.'s Compl., ECF No. 1, at ¶¶ 9, 35-36, 38, 42, 46, 51, 63, 86. Finally, Ms. Smith alleges that Fennemore improperly accused Ms. Smith of crimes of stalking, harassment, aggravated stalking, and called Ms. Smith racial slurs. *See* Pl.'s Compl., ECF No. 1, at ¶¶ 68-70, 73-75. As discussed in detail below, Fennemore adamantly denies its attorneys ever used racial slurs toward Ms. Smith, and Fennemore's attorneys and employees only "accused" Ms. Smith of wrongdoing in the course of ongoing legal proceedings—namely in seeking redress from the courts in the form of requests for protective orders.

---

[1]  The Court may take judicial notice of the Settlement Agreement, as well as the pleadings and papers publicly filed in the underlying litigation without converting this motion to a motion for summary judgment. *See infra*, Section III(C), and Fennemore's concurrently filed Request for Judicial Notice ("RJN").

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

It is undisputed that Fennemore's sole connection to Ms. Smith is in its capacity as counsel to Caesars Entertainment Corporation and PHWLV, LLC in a lawsuit brought by Ms. Smith's mother against Caesars Entertainment Corporation and PHWLV, LLC. *See, e.g.,* Pl.'s Compl., ECF No. 1, at ¶ 4 ("Fennemore Craig is representing Caesars Entertainment (CEC) and Planet Hollywood Las Vegas (PHWLV) in a currently pending, multi-million-dollar litigation, involving Annecer Peruzar (the Plaintiffs mom and Plaintiff in the litigation) and Caesars Entertainment/PHWLV (defendants)"); *see also* ¶¶ 5-7, 34-35. Indeed, Ms. Smith submitted a declaration under penalty of perjury in support of an opposition to a motion in her mother's lawsuit, in which Ms. Smith directly connects the alleged statements by a Fennemore attorney that are subject of this action to her mother's litigation. *See* Opposition to Defendants' Emergency Motion for Protective Order to Exclude Latonia Smith from All Proceedings on an Order Shortening Time, attached to the RJN as Ex. A, at pp. 9-12 (Declaration of Latonia Smith). Fennemore has no other connection to Ms. Smith and its employees never interacted with Ms. Smith outside of their capacity as counsel (or legal assistants to counsel), and Ms. Smith does not allege Fennemore interacted with her outside of legal proceedings.

**B.    The Applications for Protective Orders Against Ms. Smith.**

In November 2017, Caesars Entertainment Corporation and PHWLV, LLC terminated Ms. Smith's mother's employment in connection with Ms. Smith's mother admittedly taking money from the hotel room of a guest. *See* Defendants' Emergency Motion for Protective Order to Exclude Latonia Smith from All Proceedings on an Order Shortening Time in Eighth Judicial District Court Case No. A-18-784032-C ("MPO"), attached to the RJN as Ex. B, at 4:7-9. Planet Hollywood supervisor Samantha Radak ("Ms. Radak") was the employee that informed Ms. Smith's mother that her employment was terminated. *Id.* at 4:9-10. Thereafter, Ms. Radak received numerous email and social media messages insulting her and escalating to threats to her personal safety. *Id.* at 4:10-14.

In response to these threats, Caesars Entertainment Corporation, PHWLV, LLC and Ms. Radak, through their counsel, Fennemore, filed a complaint against Ms. Smith in the Eighth Judicial District Court, Case No. A-18-771192-C. *See* Complaint in Case No. A-18-771192-C, attached to

the RJN as Ex. C. Ms. Radak also sought a Temporary Protective Order, through Fennemore, for Protection against Stalking, Aggravated Stalking, or Harassment (NRS 200.591) in the Justice Court of Las Vegas Township, Case No. 18PO0421. The Las Vegas Justice Court granted Ms. Radak's application and issued a protective order against Ms. Smith and in favor of Ms. Radak. *See* Protective Order issued in Case No. 18PO0421, attached to the RJN as Ex. D.

In June 2018, Ms. Radak, Caesars Entertainment Corporation, PHWLV, LLC, and Ms. Smith entered into a settlement agreement to, among other things, dismiss the complaint filed in Case No. A-18-771192-C against Ms. Smith in exchange for Ms. Smith's agreement to not make any threatening or disparaging statements towards Ms. Radak, Caesars Entertainment Corporation or PHWLV, LLC, and their employees and attorneys (Fennemore). *See* June 2018 Settlement Agreement ("Settlement Agreement"), attached to the RJN as Ex. E. While the parties agreed to the confidentiality of the Settlement Agreement, they provided an express exception to the confidentiality provision if further threatening or disparaging comments were made against the Caesars Entertainment Corporation or PHWLV, LLC or their employees or attorneys:

> Confidentiality. The Parties and their attorneys represent, warrant, and agree that the terms and contents of this Agreement and all information and evidence elicited or exchanged during the Dispute and in negotiating this Agreement are and shall be treated as confidential and shall not be disclosed, in any way used or described or characterized to any other person or entity except the parties hereto as described herein. This confidentiality provision and agreement is a material term of this Agreement, breach of which the Parties hereby agree will cause the Parties irreparable harm. **Notwithstanding the foregoing, in the event of any further threatening or disparaging comments made against Ms. Radak or Caesars, Ms. Radak and/or Caesars shall have the right to disclose this Agreement to a court as part of a request for protective or other relief, complaint, or other pleading.** In addition, the Parties agree that responding to unsolicited questions regarding this matter shall not constitute a breach of this provision or the Agreement.

RJN Ex. E, at § 4 (emphasis added).

In November 2018, Ms. Smith's mother filed a Complaint against Caesars Entertainment Corporation and PHWLV, LLC in Case No. A-18-784032-C, alleging that they defamed her and

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

engaged in intentional misrepresentations through alleged statements concerning the basis for the termination of Plaintiff's mother's employment. *See* MPO, RJN Ex. B, at 5:8-10.

Immediately following a discovery hearing on April 17, 2019, in the Eighth Judicial District Court, Ms. Smith physically threatened Fennemore attorney Shannon Pierce and Fennemore's client's in-house counsel, Ethan Thomas. *Id.* at 6:16-7:8. Given Ms. Smith's threats and her history of making threatening statements to those associated with litigation with her mother, Ms. Pierce reasonably feared for her safety and filed the MPO, on behalf of herself, as counsel, and her clients, Caesars Entertainment Corporation and PHWLV, LLC, as well as a personal application for Temporary Protective Order. *See* generally, RJN Ex. B; Protective Order issued in Case No. 19PO0589, attached to the RJN as Ex. F.

Since Ms. Smith's threatening actions directly violated the terms of the Settlement Agreement, and because the Settlement Agreement expressly permitted disclosure of its terms in such scenarios, there existed no prohibition against attaching the Settlement Agreement. Specifically, the following, pertinent sections of the Settlement Agreement provide:

> Non-disparagement. For eighteen (18) months from the date of signing this agreement, **[Smith] agrees that she will not make, or cause to be made any disparaging or threatening statements, comments, or communications of any kind . . . to or about [Defendant Entities** and Radak] or any of them, **or their** products and services, business, technologies, market position, **agents, representatives,** directors, officers, shareholders, **attorneys, employees,** vendors, affiliates, successors or assigns, **or any person acting by, through, under, or in concert with any of them.**

RJN Ex. E at § 1(b)(emphasis added).

> Remedies for Breach of Non-Disparagement. [] The Parties agree that a breach of this Agreement will cause irreparable and acknowledge damage to the Parties. ..**[U]pon any breach of this Agreement, including without limitation the non-disparagement clause, the Parties agree that the affected Plaintiffs) [i.e., the Defendant Entities and Radak] will be immediately entitled to injunctive and protective relief** as provided for under applicable law or equity . . . in the event of any such breach. Injunctive and/or protective relief will not be deemed the exclusive remedy for any such breach, but will be in addition to all other remedies available under applicable law.

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

1    RJN Ex. E at § 3 (emphasis added).

2          On April 24, the Court granted the MPO, in part, under NRCP 26 and precluded Ms. Smith's

3    attendance at discovery, depositions, or settlement conferences.[2] In response, Ms. Smith filed this

4    action, as well as a separate action against Fennemore attorney Shannon Pierce and others.

5    **III.    LEGAL STANDARD**

6          **A.    Ms. Smith's Complaint Constitutes a Strategic Lawsuit Against Public**

7             **Participation.**

8          A "Strategic Lawsuit Against Public Participation" (also known as a SLAPP suit) abuses

9    the judicial process "by chilling, intimidating, and punishing individuals for their involvement in

10    public affairs." *LHF Productions, Inc. v. Kabala*, 2:16-cv-02028-JAD-NJK, 2018 WL 4053324, at

11    *2 (D. Nev. Aug. 24, 2018); *see also John v. Douglas Cty. Sch. Dist.*, 125 Nev. 746, 752, 219 P.3d

12    1276, 1280 (2009), *superseded by amendment to NRS 41.660(3)(b) on other issue*. To combat these

13    oppressive lawsuits, the Nevada Legislature enacted comprehensive anti-SLAPP legislation in

14    1993, fine-tuning it by amendment several times since. *John*, 125 Nev. at 752; *see also Delucchi v.*

15    *Songer*, 133 Nev. Adv. Op. 42, 396 P.3d 826, 829–831 & nn.2, 3 (2017) (explaining amendment

16    history).

17          The anti-SLAPP law creates an immunity from civil liability from any claim based upon "a

18    good faith communication in furtherance of the right to petition or the right to free speech in direct

19    connection with an issue of public concern." NRS 41.650. It also creates a procedural remedy to

20    vindicate that immunity. "When a plaintiff files a SLAPP suit against a defendant, Nevada's anti-

21    SLAPP statute allows the defendant to file a special motion to dismiss in response to the action."

22    *Stubbs v. Strickland*, 129 Nev. 146, 150, 297 P.3d 326, 329 (2013).

23          On an anti-SLAPP motion to dismiss, the moving defendant must show "that the claim is

24    based upon a good faith communication in furtherance of the right to petition or the right to free

25    speech in direct connection with an issue of public concern." *Shapiro v. Welt*, 133 Nev. Adv. Op.

26    6, 389 P.2d 262, 267 (2017) (quoting NRS 41.660(3)(a)). The Nevada Supreme Court has explained

27    

28    [2] The Court denied the MPO to the extent it sought to preclude Ms. Smith from public proceedings, but informed the parties that they could pursue additional relief, which Fennemore attorney Shannon Pierce did by seeking a personal Temporary Protective Order against Ms. Smith.

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

1    that "'good faith communication in furtherance of the right to petition or the right to free speech in

2    direct connection with an issue of public concern' is a phrase that 'is explicitly defined by statute

3    in NRS 41.637.'" *Delucchi*, 396 P.3d at 832.

4        Because of the statutory definition, "the term 'good faith' does not operate independently

5    within the anti-SLAPP statute." *Shapiro*, 398 P.3d at 267. Thus, "a defendant's conduct constitutes

6    'good faith communication in furtherance of the right to petition or the right to free speech in direct

7    connection with an issue of public concern' if it falls within one of the four categories enumerated

8    in NRS 41.637 and 'is truthful or is made without knowledge of its falsehood.'" *Delucchi*, 396 P.3d

9    at 833. As pertinent here, those categories include a "[w]ritten or oral statement made in direct

10   connection with an issue under consideration by a legislative, executive or judicial body, or any

11   other official proceeding authorized by law[.]" NRS 41.637(3). In order for a statement to be

12   protected under NRS 41.637(3), "the statement must (1) relate to the substantive issues in the

13   litigation and (2) be directed to persons having some interest in the litigation." *Patin v. Ton Vinh*

14   *Lee*, 429 P.3d 1248, 1251 (Nev. 2018).

15       When an anti-SLAPP motion challenges only the legal sufficiency of a claim, a district

16   court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a

17   claim is properly stated. *Planned Parenthood Fedn. of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d

18   828, 834 (9th Cir. 2018), *amended*, 897 F.3d 1224 (9th Cir. 2018), *and cert. denied sub nom. Ctr.*

19   *for Med. Progress v. Planned Parenthood Fedn. of Am.*, 139 S. Ct. 1446 (2019).

20       **B.    Anti-SLAPP Protections Apply to State Law Claims in Federal Court.**

21       "An anti-SLAPP motion is available to defendants in federal court." *Graham-Sult v. Clainos*,

22   756 F.3d 724, 735 (9th Cir. 2014). Although a state anti-SLAPP statute does not apply to federal

23   claims, state "anti-SLAPP protections apply to state law claims brought in federal court." *Piping*

24   *Rock Partners, Inc. v. David Lerner Associates, Inc.*, 946 F. Supp. 2d 957, 967 (N.D. Cal. 2013),

25   *aff'd*, 609 Fed. Appx. 497 (9th Cir. 2015)(unpublished). Where, as here, an anti-SLAPP motion

26   challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of

27   Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated. *Planned*

28   *Parenthood Fedn. of Am., Inc.*, 890 F.3d at 834 (9th Cir. 2018).

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

**C.**    **Ms. Smith's Claims Also Fail Under Fed. R. Civ. P. 12(b)(6).**

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as a factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, Rule 12(b)(6) "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990). "However, material which is properly submitted as part of the complaint may be considered." *Id.* Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *E.g., Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119, 1123–24 (9th Cir. 2002). On a motion to dismiss, the Court may also take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if a court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. Fed. R. Civ. P. 12(d).

IV.    **ARGUMENT**

    A.    **Each of Ms. Smith's Causes of Action are Based on Good Faith Communications in Furtherance of the Right to Petition.**

    A lawsuit is "based on" rights protected by the anti-SLAPP statute when conduct falling within one of the statutory grounds in NRS 41.637 makes up an element of the plaintiff's claim. *See Goldentree Master Fund, Ltd. v. EB Holdings II, Inc.*, 415 P.3d 14, 2018 WL 1634189 at * (Nev. March 30, 2018) (unpublished) (adopting standard from *Park v. Board of Trustees of Cal. State Univ.*, 2 Cal. 5th 1057 (2017)). Here, all of Ms. Smith's causes of action (for civil conspiracy, slander/slander per se, defamation/defamation per se, intentional infliction of emotional distress, and permanent injunctive relief) are based entirely upon written and/or oral statements made in direct connection with pending litigation under consideration by a judicial body. Indeed, Fennemore is counsel of record for Caesars Entertainment Corporation and PHWLV, LLC, and its attorneys were acting solely in their capacity as legal counsel regarding a lawsuit filed by Ms. Smith's mother whenever Fennemore's attorneys interacted with Ms. Smith. *See, e.g.,* Pl.'s Compl., ECF No. 1, at ¶¶ 4-7, 34-35; *see also* RJN Ex. A at pp. 9-12.

    Moreover, Fennemore's description, as counsel, of the threats its clients and its employees received was Fennemore's and its employees' honest opinion. Specifically, in the MPO, Fennemore attorney Shannon Pierce explained that Caesars Entertainment Corporation and PHWLV, LLC (and Ms. Pierce) believed Ms. Smith's threats of violence were credible since Ms. Smith had engaged in similar threatening conduct in the past. RJN Ex. B, MPO, at 1:24-2:3.

    A "sincere statement of pure opinion is not an 'untrue statement of material fact,'" even if others disagree. *See,* e.g., *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 135 S. Ct. 1318, 1327 (2015). Fennemore, in its capacity as counsel, believed and continues to believe that Ms. Smith poses a threat of physical violence to its employees and clients. RJN Ex. B, MPO, at 1:24-2:3. Indeed, the district court partially granted the relief sought in the MPO (with the exception of precluding Ms. Smith from public hearings), and each court petitioned entered an order protecting all five applicants (including Ms. Pierce and other Fennemore employees Wade Beavers and Shawna Braselton) who sought TPOs against Ms. Smith. *See* RJN Exs. D, F.

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

Fennemore's statements are thus quintessential good faith communications in furtherance of the right to petition. *See Allstate Ins. Co. v. Belsky*, 2017 WL 7199651, at *3 (D. Nev. Mar. 31, 2017) (holding that "petition[ing] a court for redress . . . qualifies as 'good faith communication in furtherance of the right to petition.'"). That is, Fennemore's statements are written or oral statements made in direct connection with an issue under consideration by a judicial body that are truthful or are made without knowledge of their falsehood. NRS 41.637(2), (4). An alternative holding would chill an aggrieved party's ability to seek redress and/or injunctive relief from the courts, and thus represents the very purpose for which NRS 41.650 exists. Permitting Ms. Smith's lawsuit to proceed would set a dangerous precedent, making recipients of threats apprehensive to seek redress from the courts in fear of a retaliatory and baseless lawsuit like the one here.

## B.    Ms. Smith Cannot Succeed on the Merits.

As discussed above, where, as here, an anti-SLAPP motion challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated. *Planned Parenthood Fedn. of Am., Inc.*, 890 F.3d at 834 (9th Cir. 2018). Therefore, whether the Court considers Fennemore's motion under NRS 41.660 or FRCP 12(b)(6), Ms. Smith's Complaint fails as a matter of law and the Court should dismiss it.

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Here, Ms. Smith's Complaint fails to contain sufficient factual matter to state a claim to relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

### 1.    Fennemore Is Immune from Liability Under NRS 41.650.

Under Nevada law, "[a] person who engages in a good faith communication in furtherance of the right to petition is immune from any civil action for claims based upon the communication." NRS 41.650.  This procedural mechanism "filters unmeritorious claims in an effort to protect citizens from costly retaliatory lawsuits arising from their right to free speech under both the Nevada and Federal Constitutions." *LHF Productions, Inc. v. Kabala*, 2:16-cv-02028-JAD-NJK,

Snell & Wilmer

L.L.P.

LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

1    2018 WL 4053324, at *2 (D. Nev. Aug. 24, 2018) (*quoting John v. Douglas County Sch. Dist.*, 219

2    P.3d 1276, 1282 (Nev. 2009)). Because Ms. Smith's claims are "based upon" Fennemore's

3    petitioning activity (either on behalf of its clients or on its individual employees' own behalf),

4    Fennemore is immune, and Ms. Smith has failed to state a claim for which relief can be granted.

    **2.      Ms. Smith's Complaint is Barred by the Absolute Litigation Privilege.**

6        The Nevada Supreme Court "has recognized the long-standing common law rule that

7    communications uttered or published in the course of judicial proceedings are absolutely privileged,

8    rendering those who made the communications immune from civil liability." *Greenberg Traurig v.*

9    *Frias Holding Co.*, 130 Nev. 627, 630, 331 P.3d 901, 903 (2014) (quotations omitted). The broad

10   scope of the absolute litigation privilege has been recognized to extend to causes of action in both

11   Nevada and federal courts. *Brekka v. Smith*, 2:08-cv-01429-RCJ-LRL, 2009 WL 10693603, at *3

12   (D. Nev. May 19, 2009) (citing *Crockett & Myers, Ltd. v. Napier, Fitzgerald & Kirby*, 440 F. Supp.

13   2d 1184, 1195 (D. Nev. 2006)).

14       "The policy behind the [litigation] privilege, as it applies to attorneys participating in

15   judicial proceedings, is to grant them as officers of the court the utmost freedom in their efforts to

16   obtain justice for their clients." *Greenberg Traurig*, 130 Nev. at 630 (quotations omitted, alteration

17   in original)." "The scope of the absolute privilege is quite broad." *Fink v. Oshins*, 118 Nev. 428,

18   433, 49 P.3d 640, 644 (2002). It "applies as long as the statements are in some way pertinent to the

19   subject of the controversy." *Greenberg Traurig*, 130 Nev. at 630 (quotations omitted). "[C]ourts

20   should apply the absolute privilege liberally, resolving any doubt in favor of its relevancy or

21   pertinency." *Fink* 118 Nev. at 433 (quotation omitted).

22       It is undisputed that Ms. Smith's only relation to Fennemore, and the entire basis for Ms.

23   Smith's claims against Fennemore, arise from Fennemore's role as counsel for Caesars

24   Entertainment Corporation and PHWLV, LLC in litigation brought by Ms. Smith's mother against

25   the companies. *See, e.g.,* § II A *supra*. The subject statements were either made by Fennemore

26   attorneys acting on behalf of Fennemore's clients, or Fennemore attorneys or employees acting on

27   their own behalf, in legal filings or open court. These statements are pertinent to Fennemore's

28   requests for an order enjoining Ms. Smith from attending case hearings, discovery, and conferences,

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

1    and an order barring Ms. Smith from future proceedings in the litigation instituted by Ms. Smith's

2    mother, as well as the individual employees' requests for temporary protective orders. *See*

3    *generally*, RJN Ex. B. These communications were part of Fennemore's advocacy in seeking

4    discretionary protective relief. Fennemore is thus immune from liability based on the reference to

5    the settlement agreement or other allegations made in the MPO, applications for temporary

6    restraining orders, or representation of Caesars Entertainment Corporation and PHWLV, LLC in

7    Ms. Smith's mother's lawsuit against them.

8          **3.     Ms. Smith Has Not Pleaded and Cannot Prove an Actionable Civil**
9                  **Conspiracy.**

10    An actionable civil conspiracy "consists of a combination of two or more persons who, by

11    some concerted action, intend to accomplish an unlawful objective for the purpose of harming

12    another, and damage results from the act or acts." *Consol. Generator-Nevada, Inc. v. Cummins*

13    *Engine Co., Inc.*, 971 P.2d 1251, 1256 (Nev. 1998); *Hilton Hotels v. Butch Lewis Productions*, 109

14    Nev. 1043, 1048, 862 P.2d 1207, 1210 (1993).

15    Ms. Smith's civil conspiracy claim fails because Fennemore, the sole defendant in this

16    action, is legally incapable of conspiring with itself. "It is fundamental to the law of conspiracy that

17    there must be at least two entities in order for there to be a conspiracy; a single entity cannot

18    conspire with itself." *Las Vegas Drive-in Theatre, Inc. v. Natl. Gen. Theatres, Inc.*, CIV. LV-1724

19    RDF, 1979 WL 1691, at *2 (D. Nev. Sept. 7, 1979) (analyzing a conspiracy claim under Section 1

20    of the Sherman Act, 15 U. S. C. § 1). "When individual officers are acting on behalf of the

21    corporation, they are merely parts of a single entity and are thus incapable of conspiring either with

22    each other or with the corporation." *Id.*

23    Moreover, Ms. Smith's civil conspiracy claim fails because Ms. Smith has not pleaded

24    sufficient factual matter to state a claim to relief that is plausible on its face. Ms. Smith's civil

25    conspiracy claim is supported by a sole, conclusory allegation that "The defendant(s) intended to

26    accomplish the unlawful objective of intimidating a witness in a current and separate litigation and

27    furthering their defendants' goal of retaliating against Mrs. Annecer Peruzar." Compl., ECF No. 1,

28

- 12 -

1  at ¶ 64. Ms. Smith does nothing to support or substantiate this allegation, which is nothing more

2  than a legal conclusions couched as fact.

3        Finally, even assuming, *arguendo*, that Fennemore was capable of conspiring with itself

4  (which it is not) and that Ms. Smith pleaded a claim for conspiracy that was plausible on its (which

5  she did not), Ms. Smith's allegations remain subject to the absolute litigation privilege since they

6  are directly pertinent to the subject of the underlying controversy. Therefore, Fennemore is immune

7  from liability. For each of these reasons, Ms. Smith's claim for civil conspiracy fails as a matter of

8  law and should be dismissed, with prejudice.

9        **4.**    **Ms. Smith Has Not Pleaded a Plausible Claim for Slander/Slander Per**

10               **Se or Defamation/Defamation Per Se.**

11        Ms. Smith also asserts causes of action for "slander/slander per se" (*see* Pl.'s Compl., ECF

12  No. 1, at ¶¶ 67-71) and "defamation/defamation per se" (*see* Pl.'s Compl., ECF No. 1, at ¶¶ 72-76)

13  related to statements allegedly made by Fennemore employees during or in direct relation to legal

14  proceedings. As a threshold matter, slander and defamation causes of action, as well as Ms. Smith's

15  allegations for each cause of action, are virtually identical. *Compare* Pl.'s Compl., ECF No. 1-1, at

16  ¶¶ 69-74 with ¶¶ 75-80. "Defamation is a publication of a false statement of fact." *Pegasus v. Reno*

17  *Newspapers, Inc.*, 57 P.3d 82, 87 (Nev. 2002) (*citing Posadas v. City of Reno*, 851 P.2d 438, 441–

18  42 (1993)). Defamation may be spoken or written. Generally, spoken defamation is slander, and

19  written defamation is libel. *See Flowers v. Carville*, 292 F. Supp. 2d 1225, 1232 (D. Nev. 2003)

20  (citing Restatement (Second) of Torts § 568 (1977)); *see also Ferm v. McCarty*, 2:12-cv-00782-

21  GMN, 2013 WL 800536, at *7 (D. Nev. Jan. 28, 2013), *report and recommendation adopted*, 2:12-

22  CV-00782-GMN, 2013 WL 800819 (D. Nev. Feb. 20, 2013).

23        To succeed on a defamation claim in Nevada, a plaintiff must prove: "(1) a false and

24  defamatory statement of fact by the defendant concerning the plaintiff; (2) an unprivileged

25  publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed

26  damages." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1148 (9th Cir. 2012) (*quoting Pope v. Motel*

27  *6*, 121 Nev. 307, 114 P.3d 277, 282 (Nev.2005)). To constitute slander per se or defamation per se,

28  the alleged defamation must be oral and must fall into one of four categories: (1) that the plaintiff

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

1  committed a crime; (2) that the plaintiff has contracted a loathsome disease; (3) that a woman is

2  unchaste; or, (4) the allegation must be one which would tend to injure the plaintiff in his or her

3  trade, business, profession or office. *Branda v. Sanford*, 97 Nev. 643, 637 P.2d 1223, 1225 (Nev.

4  1981).

5      To support these causes of action, Ms. Smith alleges that "The defendant(s) made

6  unprivileged false and defamatory statements about Ms. Smith including but not limited to accusing

7  her of the crimes of stalking, harassment, aggravated stalking, sending threatening messages,

8  calling her [the n-word], and calling her a 'schizophrenic,' to several third parties." Pl.'s Compl.,

9  ECF No. 1, at ¶¶ 68, 73. Ms. Smith further alleges that "The defendant(s) made false and

10  defamatory statements about Ms. Smith concerning settled matters contained in a confidential

11  settlement agreement, which all parties (including Fennemore Craig) agreed would cause

12  irreparable harm if exposed to outside parties." Pl.'s Compl., ECF No. 1, at ¶¶ 69, 74.

13      To the extent Ms. Smith references statements made in other lawsuits (such as by filing

14  applications for temporary protective orders), such communications were uttered or published in

15  the course of judicial proceedings, and are, therefore, absolutely privileged. *Greenberg Traurig v.*

16  *Frias Holding Co.*, 130 Nev. 627, 630, 331 P.3d 901, 903 (2014). Moreover, to the extent Ms.

17  Smith alleges a Fennemore employee used a word so degrading and derogatory in our society that

18  it would be considered defamation per se, Ms. Smith's claim fails. While again, Fennemore

19  **adamantly denies its employee ever made such comments**, the use of the racial slur outlined in

20  Ms. Smith's Complaint does not constitute defamation per se or slander per se. *See Bradshaw v.*

21  *Swagerty*, 563 P.2d 511, 514 (Kan. App. 1977) (holding that the use of the same racial slur alleged

22  in this action is not within any category recognized as slanderous per se); *Irving v. J. L. Marsh,*

23  *Inc.*, 360 N.E.2d 983, 985 (Ill. App. 3d Dist. 1977) (same).

24      Furthermore, Ms. Smith fails to sufficiently plead a plausible claim that Fennemore

25  published defamatory statements to a third person *outside the course of judicial proceedings*. Ms.

26  Smith's Complaint only alleges that Fennemore disclosed a confidential settlement agreement to

27  "Ethan Thomas [Fennemore's client's in-house counsel], Brandon Trout [former counsel for Ms.

28  Smith's mother], Jerome Bowen [former counsel for Ms. Smith's mother], Shawna Braselton

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

- 14 -

[Fennemore legal administrative assistant], and Wade Beavers [Fennemore attorney]." Pl.'s Compl., ECF No. 1, at ¶ 42.

First, each of the above-named individuals is an attorney related to the underlying litigation with the exception of Ms. Braselton, who is a legal administrative assistant at Fennemore. *See* February 19, 2019, Notice of Appearance of Counsel in Eighth Judicial District Court Case No. A-18-784032-C, attached to the RJN as Ex. G. The fact that each of these individuals is counsel or an agent of counsel underscores the fact that any such communications were directly in the course of judicial proceedings.

Second, and more importantly, Ms. Smith does not identify with specificity the "false accusations" to which she refers, nor does she specify how or when Fennemore published these statements. Indeed, Ms. Smith fails to even allege the identity of the speaker of each purported defamatory statement, when the purported defamatory statement was made, and what exactly was said. This Court has dismissed similar allegations. *See Schaefer v. Diamond Resorts Intern. Mktg., Inc.*, 2:14-CV-01900-GMN, 2015 WL 1932196, at *7–8 (D. Nev. Apr. 28, 2015) (dismissing defamation and slander per se claims without prejudice with leave to amend). "These are crucial facts needed to satisfy the element of an unprivileged communication to a third person. Without such facts, Defendants are not put on notice as to their conduct so that they can adequately defend against the suit." *Id.*; *see also Blanck v. Hager*, 360 F.Supp.2d 1137, 1160 (D. Nev. 2005).

Because Ms. Smith has failed to allege that Fennemore published defamatory statements to third parties with the requisite specificity—including specifically to whom the statements were made, when the statements were made, and what specifically was said—the Court should dismiss her slander/slander per se and defamation/defamation per se claims.

### 5.  Ms. Smith Has Not Pleaded a Plausible Claim for Intentional Infliction of Emotional Distress.

Intentional infliction of emotional distress requires Ms. Smith to prove extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress. *Dillard Dep't Stores, Inc. v. Beckwith*, 115 Nev. 372, 989 P.2d 882, 886 (1999). "[E]xtreme and outrageous conduct is that which is outside all possible bounds of decency and is

regarded as utterly intolerable in a civilized community." *Maduike v. Agency Rent–A–Car*, 114 Nev. 1, 953 P.2d 24, 26 (1998). "The Court determines whether the defendant's conduct may be regarded as extreme and outrageous so as to permit recovery, but, where reasonable people may differ, the jury determines whether the conduct was extreme and outrageous enough to result in liability." *Chehade Refai v. Lazaro*, 614 F.Supp.2d 1103, 1121 (D. Nev. 2009). Therefore, in order to survive a motion to dismiss her intentional infliction of emotional distress cause of action, Ms. Smith must allege that Fennemore's purported actions were so "extreme and outrageous" that they transcend "all possible bounds of decency" and are regarded as "utterly intolerable in a civilized community." *Maduike,* 953 P.2d at 26.

Ms. Smith does not identify with specificity which alleged actions or statements caused her to suffer emotional distress such that Fennemore can reasonably defend this claim. Indeed, Ms. Smith only alleges that "the defendant(s) defamed, harassed, and intimidated Ms. Smith as stated in this lawsuit, which has caused Ms. Smith to (including but not limited to) continually seek mental health treatment, has caused Ms. Smith permanent harm to her reputation, and has caused Ms. Smith to fear for her life." Pl.'s Compl., ECF No. 1, at ¶ 78. Ms. Smith has not indicated any statements that are so "extreme and outrageous" that they transcend "all possible bounds of decency and is regarded as utterly intolerable in a civilized community."[3]

Instead, Ms. Smith broadly refers to the actions taken by Fennemore in its representation of Caesars Entertainment Corporation and PHWLV, LLC in Ms. Smith's mother's lawsuit against the them, or in the temporary protective orders sought by Fennemore employees. As discussed above, not only are the actions Fennemore took in litigation subject to the absolute litigation privilege,

---

[3] Ms. Smith also includes allegations in her Complaint, although not specifically alleged in her intentional infliction of emotional distress cause of action, regarding alleged racial slurs. *See* Pl.'s Compl., ECF No. 1, at ¶¶ 40, 68, 73. Although the racially charged statements alleged in Ms. Smith's Complaint are unquestionably vulgar and offensive (and **Fennemore adamantly denies its employee ever having made such comments**), such comments do not amount to the required "extraordinary transgression of the bounds of socially tolerable conduct." *See Harris v. Sutton Motor Sales & RV Consignments Corp.*, 406 Fed. Appx. 181, 183 (9th Cir. 2010) (unpublished) (holding that under Oregon law, use of a racial epithet on two occasions did not amount to an extraordinary transgression of the bounds of socially tolerable conduct required to state a claim for intentional infliction of emotional distress); *Irving v. J. L. Marsh, Inc.*, 360 N.E.2d 983, 986 (Ill. App. 3d Dist. 1977) (holding that under Illinois law, the use of a racial slur does not possess the degree of severity that is necessary to establish a cause of action for intentional infliction of emotional distress).

Snell & Wilmer

L.L.P.

LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

they also cannot transcend all possible bounds of decency when the underlying courts granted the relief Fennemore sought on behalf of its clients or employees. As such, Ms. Smith's intentional infliction of emotional distress claim must fail.

### 6.    Ms. Smith's Cause of Action for a Permanent Injunction Fails.

Ms. Smith's final cause of action requests permanent injunctive relief against Fennemore. But a request for an injunction is not a cause of action. *See First 100, LLC v. Wells Fargo Bank, N.A.*, 2:13–CV–431–JCM–PAL, 2013 WL 3678111 (D. Nev. 2013). An injunction is a form of relief, and is an exercise of a court's equitable authority. *See Salazar v. Buono*, 559 U.S. 700, 714–15 (2010). And because each of Ms. Smith's causes of action fail, Ms. Smith is not entitled to injunctive relief.

Given that Fennemore's only connection to Ms. Smith is in its role as litigation counsel (and Ms. Smith's as a witness in that case), there is no injunctive relief that the Court could fashion which would not implicate principles of the of the absolute litigation privilege, public redress, and Nevada's anti-SLAPP laws.

## V.    CONCLUSION

The Court should grant Fennemore's special motion to dismiss pursuant to Nevada's Anti-SLAPP statute, NRS 41.660, and motion to dismiss Ms. Smith's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), dismiss Ms. Smith's Complaint in its entirety, with prejudice, and award Fennemore its attorneys' fees, costs, and a $10,000 penalty pursuant to NRS 41.670(1)(b). If the Court is inclined to grant fees, Fennemore will submit an affidavit of fees and costs in accordance with the federal and local rules.

Dated:  June 5, 2019.

SNELL & WILMER L.L.P.

By: _____
Alex L. Fugazzi, Esq. (NV Bar No. 9022)
Michael Paretti (NV Bar No. 13926)
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169

*Attorneys for Defendant Fennemore Craig*

## CERTIFICATE OF SERVICE

I, the undersigned, declare under penalty of perjury, that I am over the age of eighteen (18) years, and I am not a party to, nor interested in, this action. On this date, I caused to be served a true and correct copy of the foregoing **DEFENDANT FENNEMORE CRAIG'S SPECIAL MOTION TO DISMISS PURSUANT TO NRS 41.660 -AND- MOTION TO DISMISS PURSUANT TO FRCP 12(B)(6)** by method indicated below:

☐ **BY FAX:** by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m. pursuant to EDCR Rule 7.26(a). A printed transmission record is attached to the file copy of this document(s).

☒ **BY U.S. MAIL:** by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Las Vegas, Nevada addressed as set forth below.

> Latonia Smith (*in Pro Per*)
> 9748 Canyon Landing Ave.
> Las Vegas, NV 89166
> Tel:    (702) 521-3522

☐ **BY OVERNIGHT MAIL:** by causing document(s) to be picked up by an overnight delivery service company for delivery to the addressee(s) on the next business day.

☐ **BY PERSONAL DELIVERY:** by causing personal delivery by                , a messenger service with which this firm maintains an account, of the document(s) listed above to the person(s) at the address(es) set forth below.

☒ **BY ELECTRONIC SUBMISSION:** submitted to the above-entitled Court for electronic filing and service upon the Court's Service List for the above-referenced case.

☐ **BY EMAIL:** by emailing a PDF of the document listed above to the email addresses of the individual(s) listed below.

DATED this 5ᵗʰ day of June, 2019.

An employee of SNELL & WILMER L.L.P.

4843-7496-5143

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200