1   Alex L. Fugazzi (Nevada Bar No. 9022)
    Michael Paretti (Nevada Bar No. 13926)
2   SNELL & WILMER L.L.P.
    3883 Howard Hughes Parkway, Suite 1100
3   Las Vegas, Nevada 89169
    Telephone: 702.784.5200
4   Facsimile: 702.784.5252
    afugazzi@swlaw.com
5   mparetti@swlaw.com

6
    *Attorneys for Defendant Fennemore Craig*
7

8                   **UNITED STATES DISTRICT COURT**

9                        **DISTRICT OF NEVADA**

10

11  LATONIA SMITH,                          Case No.:   2:19-cv-00824-GMN-EJY

                    Plaintiff(s),
12
                                            **FENNEMORE CRAIG AND THE**
13           -vs-                           **NONPARTY FENNEMORE**
                                            **EMPLOYEES' EMERGENCY**
14  FENNEMORE CRAIG,                        **MOTION TO QUASH, OR IN THE**
                                            **ALTERNATIVE, MOTION FOR A**
15                  Defendant(s).           **PROTECTIVE ORDER**

16
                                            **ORAL ARGUMENT REQUESTED**
17

18
                                            **REDACTED**
19

20

21       Defendant Fennemore Craig ("Fennemore") and nonparties Brenoch Wirthlin, Shawna

22  Braselton, Brandi Planet, Wade Beavers, Shannon Pierce, Leslie Bryan Hart, and Janice Procter-

23  Murphy[1] (collectively, the "Fennemore Employees"), by and through their counsel of record, Snell

24  & Wilmer L.L.P., move on an emergency basis under Local Rule 7-4 to quash the subpoenas issued

25

26

27  _____
    [1] Ms. Procter-Murphy resides in Arizona but is willing to make herself available in Nevada for the
    limited purpose of appearing for deposition if this Court orders that her deposition will go forward.
28  By doing so, Ms. Procter-Murphy reserves all rights and waives none, including any other
    jurisdictional rights she has.

                                    - 1 -

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

1    by Plaintiff Latonia Smith ("Ms. Smith") pursuant to Federal Rule of Civil Procedure 45 or,

2    alternatively, for a protective order pursuant to FRCP 26 and LR 26-7 ("Motion").

3        Undersigned counsel certifies that counsel for Fennemore and the Fennemore Employees

4    have attempted to confer in good faith with Ms. Smith to resolve this dispute without judicial

5    intervention. *See* Fed. R. Civ. P. 26(c)(1); LR 7-4. Undersigned counsel also certifies that this

6    Motion should be heard on an emergency basis, as outlined in the Declaration of Alex L. Fugazzi

7    ("Fugazzi Decl."), attached as **Exhibit A**, because Ms. Smith served various document and

8    deposition subpoenas on numerous third parties, including the Fennemore Employees, which

9    demand document productions and/or depositions as early as August 20, 2019.

10       This Motion is made and based upon the following memorandum of points and authorities,

11    the attached Fugazzi Declaration, the pleadings and papers on file in this action, the accompanying

12    exhibits, together with any oral arguments the Court may entertain.

13

14

15    Dated: August 19, 2019.             SNELL & WILMER L.L.P.

16                            By: */s/ Michael Paretti*

17                            Alex L. Fugazzi, Esq. (NV Bar No. 9022)
                                Michael Paretti (NV Bar No. 13926)

18                            3883 Howard Hughes Parkway, Suite 1100
                                Las Vegas, Nevada 89169

19                            *Attorneys for Defendant Fennemore Craig*

20

21

22

23

24

25

26

27

28

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

4811-1773-0464

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.    INTRODUCTION

3      On August 1, 2019, despite the parties' mutual agreement to stay discovery, Ms. Smith

4   issued overly broad and onerous subpoenas directed at the Fennemore Employees (the

5   "Subpoenas"). With the Subpoenas, Ms. Smith improperly seeks to personally inspect Fennemore's

6   Nevada offices, depose the Fennemore Employees, forensically examine the Fennemore

7   Employees' *personal* computers and cellphones, and compel the production of privileged, work

8   product, and confidential documents. The Subpoenas not only demonstrate an abuse of the

9   discovery process, they also reflect a troubling pattern that cannot continue. Indeed, this very matter

10   stems from a series of protective orders that Fennemore sought, and for a time secured, against Ms.

11   Smith due to threats she made to Fennemore's clients and certain Fennemore Employees. The

12   Subpoenas are improper and should be quashed in their entirety. Alternatively, given Ms. Smith's

13   history of threatening and harassing behavior, the Court should enter a Protective Order in favor of

14   the Fennemore Employees limiting the scope of the depositions and imposing specific restrictions

15   because the Fennemore Employees reasonably fear for their safety and personal privacy if

16   compelled to comply with the Subpoenas.

17      Fennemore and the Fennemore Employees' Motion should be granted for the additional

18   reason that the Subpoenas are both substantively and procedurally defective. The Subpoenas plainly

19   seek information protected by the attorney-client privilege and attorney work-product doctrine.

20   Fennemore and the Fennemore Employees further object to the Subpoenas on the grounds that they

21   needlessly implicate the Fennemore Employees' privacy interests, are overbroad, unduly

22   burdensome, harassing, and not relevant to this litigation. Regarding the Subpoenas' procedural

23   defects, Ms. Smith's requests violate both FRCP 45(c)(1)(A) and FRCP 45(b)(1). Accordingly,

24   Fennemore and the Fennemore Employees move to quash the Subpoenas or, in the alternative,

25   move for a protective order.

26

27

28

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada  89169
702.784.5200

4811-1773-0464

## II.   FACTUAL BACKGROUND

**A.    The Subpoenas and Fennemore's Attempt to Meet and Confer.**

Ms. Smith previously agreed to a stay of discovery in this action pending the Court's ruling on Fennemore's Motions to Dismiss [ECF Nos. 10, 11]. While the parties could not agree upon a stipulated discovery plan and scheduling order, Ms. Smith submitted her own "Plaintiff's Views on Proposed Discovery" stating, "[d]isclosures and **discovery: to commence after resolution of defendant's anti-slapp/motion to dismiss** . . ." ECF No. 20, at 5 (emphasis added).

Just days later, in a complete reversal, Ms. Smith issued nineteen subpoenas before this Court had the opportunity to consider Fennemore's Motion to Stay Discovery [ECF No 19].[2] Indeed, Ms. Smith issued these Subpoenas before even making her initial disclosures (which she still has not made) . And rather than serving her first discovery requests on Fennemore, fourteen of the nineteen Subpoenas target the Fennemore Employees. The Subpoenas seek to provide Ms. Smith access to inspect Fennemore's Las Vegas and Reno, Nevada offices, depose the Fennemore Employees, seize and forensically examine the Fennemore Employees' personal computers and cellphones (without even identifiable search terms or the disclosure of the alleged forensic expert), and compel the production of various documents and communications.

To illustrate, Ms. Smith requests that each Fennemore Employee produce:

> Personal computers and cell phone devices for forensic examination by a forensic expert. This is not a general search; the personal computer and cell phone devices will be examined for the date parameters 10/31/2017 to present; they will be examined for specific hits identifying information of Latonia (Toni) Smith and the matters listed in the lawsuit which are related to Latonia Smith or her mother Annecer Peruzar; privileged information will be excluded using search parameters.

Pl.'s Subpoenas, attached as **Exhibit B**. Ms. Smith also requests that when attending the noticed depositions, the Fennemore Employees bring:

> All correspondence between yourself and employees of CEC or PHWLV or any CEC entity [Fennemore Clients] regarding Latonia Smith or her mother Annecer Peruzar from 10/31/2017 to present; all correspondence between yourself and employees of Fennemore

---

[2] As a threshold matter, considering the history of this litigation and the continuous motion practice, Fennemore respectfully requests that the Court concurrently hear Fennemore's Motion to Stay Discovery [ECF No. 19] with the instant Motion to prevent further cost to the parties and burden on the Court.

Snell & Wilmer
L.L.P.
LAW OFFICES
1883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

4811-1773-0464

Craig regarding Latonia Smith or her mother Annecer Peruzar from 10/31/2017 to present.

*Id.*

On August 12, 2019, Fennemore and the Fennemore Employees objected to the Subpoenas with a detailed letter explaining the Subpoenas' substantive and procedural defects and requesting to meet and confer with Ms. Smith. *See* August 12, 2019 Letter from Alex Fugazzi, Esq. to Latonia Smith, attached as **Exhibit C**. Despite exchanging a series of emails and setting a time to meet and confer, the parties were unable to reach a resolution. *See* Fugazzi Decl., Ex. A; August 12-13, 2019 emails between Alex Fugazzi, Esq. and Latonia Smith, attached as **Exhibit D**. Unfortunately, Ms. Smith abruptly ended the meet-and-confer by hanging up the phone. Fugazzi Decl. at ¶ 6. The tenor of Ms. Smith's emails, the unjustifiably broad scope of the Subpoenas seeking privileged and personal information, the failure to even attempt to work with counsel on dates before issuing the Subpoenas for fast approaching deadlines, and Ms. Smith's refusal to meaningfully engage in the meet-and-confer support having this Motion heard on an expedited basis, after the Court hears from the parties at oral argument. *See* Ex. D.[3]

**B.    History of the Dispute.**

In 2018, Ms. Smith's mother, Annecer Peruzar, sued her former employers, Caesars Entertainment Corporation ("CEC") and PHWLV, LLC ("PHWLV"), in Nevada state court for alleged wrongful termination (the "Peruzar Litigation"). Fennemore Craig also represented Ms. Radak, Mr. Thomas, Ms. Pierce, Ms. Braselton and Mr. Beavers in getting personal orders of protection against Ms. Smith.  The present case is one of two related actions filed by Ms. Smith against her mother's former employers, CEC and PHWLV, and Ethan Thomas (CEC's former in-house counsel) and Fennemore attorney Shannon Pierce/Fennemore Craig (counsel for CEC and PHWLV in the litigation brought by Ms. Smith's mother).

---

[3] On August 14, 2019, Ms. Smith filed a Motion to Compel Attendance at Deposition, Production of Documents, and Forensic Examination [ECF No. 31]. Ms. Smith's motion contains a series of demonstrably false statements that further underscore the need for the Court to hear this motion on an emergency basis under LR 7-4.

4811-1773-0464

1    Fennemore sought and secured a protective order for Samantha Radak ("Ms. Radak") on

2  March 15, 2018, a CEC and PHWLV employee, after Ms. Smith sent Ms. Radak numerous emails

3  and social media messages insulting her and threatening her physical safety. *See* Defendants'

4  Emergency Motion for Protective Order to Exclude Latonia Smith from All Proceedings on an

5  Order Shortening Time in Eighth Judicial District Court Case No. A-18-784032-C ("MPO"),

6  attached as Exhibit B to Fennemore's Request for Judicial Notice ("RJN"), ECF No. 12, at 4:7-9.

7    Since filing the first protective order against Ms. Smith, Ms. Smith has physically threatened

8  Fennemore attorney Shannon Pierce and Fennemore's client's in-house counsel, Ethan Thomas. *Id.*

9  at 6:16-7:8. Even more troubling, on April 25, 2019, Shawna Braselton and Wade Beavers, two of

10 the subpoenaed Fennemore Employees, received an anonymous threatening letter, which they

11 believe came from Ms. Smith. *See* April 25, 2019 Letter to Shawna Braselton and Wade Beavers,

12 attached as **Exhibit E**. The letter exclaims, "**IT'LL BE THE END OF LIVES** . . . **EMBODYING**

13 **THE RAGE OF ALL MASS MURDERERS** . . . **WILL NEVER SEE IT COMING** . . . **IT**

14 **WILL BE LIGHTS OUT**." Ex. D (capitalized and bolded in original). Equally concerning, the

15 letter ends with the following: "CONGRATULATIONS YOU HAVE JUST BEEN ADDED TO

16 THE HIT LIST . . . NO ONE IS WALKING AWAY UNSCATHED . . . P.S. CONGRATS ON

17 YOUR WEDDING SHAWNA. HOPEFULLY YOU WILL BE AROUND FOR MANY YEARS

18 TO ENJOY IT." *Id.* (capitalized in original).

19 ███████████████████████████████████████

20 ███████████████████████████████████████

21 ███████████████████████████████████████

22 ███████████████████████████████████████

23 ███████████████████████████████████████

24 ███████████████████████████████████████

25 ███████████████████████████████████████

26 ███████████████████████████████████████

27 ███████████████████████████████████████

28 █████████████████████████ Although Ms. Smith denies

4811-1773-0464

1  making these threats, the only known connection between Ms. Radak, Mr. Beavers and Ms.

2  Braselton is the Peruzar litigation and orders of protection were granted which just recently expired.

3                           III.     LEGAL ARGUMENT

4  **A.     Legal Standard.**

5         The court ***must*** quash or modify a subpoena if it "requires a person to comply beyond the

6  geographical limits specified in Rule 45(c)," "requires disclosure of privileged or other protected

7  matter[s]," or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(ii)-(iv). In claiming

8  privilege, the person or entity withholding subpoenaed information must (a) expressly make the

9  claim of privilege/work product; and (b) describe the nature of the withheld documents,

10 communications, or tangible things in a manner that, without revealing privileged or protected

11 information, will enable the parties to assess the claim. Fed R. Civ. P. 45(e)(2)(A)(i), (ii).

12        Federal courts enjoy broad discretion in overseeing discovery under FRCP 26. These

13 discovery controls are particularly important when the discovery is requested from nonparties. *See*

14 *Laxalt v. McClatchy*, 116 F.R.D. 455, 458 (D. Nev. 1986) ("The standards for nonparty discovery

15 . . . require a stronger showing of relevance than for simple party discovery.") Although discovery

16 is a valuable right, the Ninth Circuit has held that discovery restrictions can be broader when a

17 nonparty is the target of discovery. *See Dart Indus. Co., Inc. v. Westwood Chem. Co., Inc.*, 649

18 F.2d 646, 649 (9th Cir. 1980). Courts must provide special protection to nonparties against the time

19 and expense to comply with a subpoena. *Exxon Shipping Co. v. United States Dep't of Interior*, 34

20 F.3d 774, 779 (9th Cir. 1994). Therefore, a court may forbid certain discovery or limit its scope to

21 protect a nonparty from "undue burden or expense." Fed. R. Civ. P. 26(c).

22        Under FRCP 45(d)(3), a subpoena must be quashed if it does not allow reasonable time to

23 comply, requires disclosure of protected or privileged matters, or subjects a person to undue burden.

24 *See Mattel, Inc. v. Walking Mountain Prod*, 353 F.3d 792, 814 (9th Cir. 2003) (finding that the

25 district court did not abuse its discretion when applying FRCP 45 to quash a Rule 30(b)(6) subpoena

26 when the subpoena was overly burdensome and served an improper purpose).

27

28

Snell & Wilmer

L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

4811-1773-0464

**B.** **The Court Should Quash the Subpoenas under FRCP 45 Due to Their Substantive Defects.**

    **1.** **The Subpoenas seek disclosure of information protected by the attorney-client privilege.**

Rule 45(d)(3)(A)(iii) makes clear that a subpoena *must* be quashed or modified if it "requires disclosure of privileged or other protected matter, if no exception or waiver applies." "'The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice,' as well as an attorney's advice in response to such disclosures." *In re Grand Jury Investigation*, 974 F.2d 1068, 1070–71 (9th Cir. 1992) (quoting *In In re Grand Jury Subpoenas (Hirsch)*, 803 F.2d 493, 496 (9th Cir.1986); *In re Fischel*, 557 F.2d 209, 211 (9th Cir. 1977)).

"The party asserting the attorney-client privilege has the burden of proving that the privilege applies to a given set of documents or communications. To meet this burden, a party must demonstrate that its documents adhere to the essential elements of the attorney-client privilege adopted by this court." *In re Grand Jury Investigation*, 974 F.2d at 1071. The Ninth Circuit looks to eight elements when assessing the attorney-client privilege: "(1) where legal advice of any kind is sought (2) from a professional legal adviser in his/her capacity as such, (3) the communication relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived." *In re Fischel*, 557 F.2d at 211.

Additionally, in claiming privilege, the person or entity withholding subpoenaed information must (a) expressly make the claim of privilege; and (b) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing the privileged or protected information itself, enables the parties to assess the claim. FRCP 45(c)(2)(A)(i), (ii). In other words, the party asserting the privilege must make a prima facie showing that the privilege protects the information the party intends to withhold. A party may prove privilege through a privilege log with an accompanying affidavit or request that the court conduct an in-camera review of the documents. *Dole v. Milonas*, 889 F.2d 885, 890 (9th Cir. 1989). However, when the request for privileged documents is broad and the request fails to identify the

Snell & Wilmer

L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

1   exact documents desired—as with Ms. Smith's request—the Court may order the requesting party

2   to prepare a narrow, less extensive description before requiring the party claiming privilege to

3   present a privilege log and affidavit. *Id.*

4          Equally important, the attorney-client privilege belongs to the client—not the attorney.

5   *Exobox Techs. Corp. v. Tsambis*, No. 2:14-CV-501-RFB-VCF, 2014 WL 4987903, at *5 (D. Nev.

6   Oct. 7, 2014) ("attorney-client privilege, the relevant legal interest[,] . . . belongs to the attorney's

7   client.") (citing *Chirac v. Reinicker*, 24 U.S. 280 (1826); *United States v. Partin*, 601 F.2d 1000,

8   1009 (9th Cir.1979)). Accordingly, attorneys cannot disturb their clients' absolute right to the

9   attorney-client privilege. *See* Nevada Rule of Professional Conduct 1.6 ("A lawyer shall not reveal

10  information relating to representation of a client unless the client gives informed consent . . ."); *see*

11  *also United States v. Jicarilla Apache Nation*, 564 U.S. 162, 169 (2011) ("The attorney-client

12  privilege is the oldest of the privileges for confidential communications known to the common law.

13  Its aim is to encourage full and frank communication between attorneys and their clients and

14  thereby promote broader public interests in the observance of law and administration of justice.").

15         Here, the Subpoenas seek information protected by the attorney-client privilege and, on that

16  basis alone, they must be quashed. Foremost, Ms. Smith's request for the documents reflecting

17  Fennemore's interoffice correspondence, as well as correspondence between the Fennemore

18  Employees and CEC, PHWLV, or any CEC entity, related to Ms. Smith and Ms. Peruzar

19  undeniably implicates the attorney-client privilege. To the extent the privileged communications

20  Ms. Smith seeks are Fennemore's privilege, Fennemore asserts now and will continue to assert that

21  privilege. And to the extent Ms. Smith seeks privileged communications that belong to

22  Fennemore's clients, it is not Fennemore's or the Fennemore Employees' privilege to waive.[4] Put

23  simply, the privilege exclusively belongs to CEC and PHWLV. Fennemore and the Fennemore

24  Employees will not breach their ethical obligations by disclosing privileged information. *See* NRPC

25  1.6; *State Comp. Ins. Fund v. Drobot*, 192 F. Supp. 3d 1080, 1115 (C.D. Cal. 2016) ("The duty of

26

27

---

28  [4] Ms. Smith has categorically refused to allow the privilege holders to join any discussion about these issues.

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

1  loyalty to an existing client is so important, so sacred, so inviolate that not even by withdrawing

2  from the relationship can an attorney evade it.").

3      Finally, Brenoch Wirthlin, Leslie Bryan Hart and Janice Procter-Murphy's only role in any

4  of these matters was limited to serving as counsel for either CEC, PHWLV, Caesers/PHWLV

5  employees, Fennemore Craig, or the Fennemore Craig employees who received orders of protection.

6  Further, Ms. Pierce, Mr. Beavers, Ms. Braselton, and Ms. Planet were all involved in defending or

7  assisting in the defense of the Peruzar litigation and in participating either as counsel or witnesses

8  in the protective order hearings.

9      Like Ms. Smith's request for communications, Ms. Smith's request to forensically examine

10  the Fennemore Employees' personal computers and cellphones also implicates the attorney-client

11  privilege.[5] First, though the Subpoenas state that "privileged information will be excluded using

12  search parameters," the very information that Ms. Smith seeks is privileged. That is, any

13  electronically stored information in the Fennemore Employees' possession involving Ms. Smith,

14  Ms. Peruzar, and "the matters listed in this lawsuit" is immune from disclosure. Second, the

15  Fennemore Employees use their personal computers and/or cellphones for professional purposes.

16  Thus, granting Ms. Smith *carte blanche* access to the Fennemore Employees' electronic devices

17  not only implicates CEC's and PHWLV's attorney-client privilege, but also implicates the attorney-

18  client privilege for countless Fennemore clients.

19      Similarly, Ms. Smith's request to inspect Fennemore's offices during business hours would

20  inevitably compromise privileged and confidential information. Fennemore conducts sensitive and

21  confidential business throughout its offices, and Fennemore's offices are filled with materials

22  bearing clients' proprietary and confidential information. Indeed, "law office searches raise special

23  concerns, which impose a need for heightened care, due to the fact that law offices often contain

24  privileged attorney-client materials and work product." *United States v. Stewart*, No. 02 CR 395

25  (JGK), 2002 WL 1300059, at *3 (S.D.N.Y. June 11, 2002). Fennemore has an absolute obligation

26  to its clients to protect their privileged and confidential information. Even with notice of Ms.

27

28  [5]  Even more importantly, there is no basis to search the Fennemore Employees' personal computers and cellphones as discussed *infra*, Section III.B.3.

4811-1773-0464

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

1  Smith's inspection, Fennemore cannot ensure that the inspection would not inadvertently disclose

2  privileged information. Thus, because the risks to attorney-client privilege far outweigh any benefit

3  Ms. Smith could obtain from the inspection, the Court should quash Ms. Smith's subpoena to

4  inspect Fennemore's Nevada offices.

5  Finally, though the Subpoenas are silent on proposed topics for the requested depositions,

6  from Ms. Smith's electronically stored information requests and her document production requests,

7  Fennemore believes that Ms. Smith intends to question the Fennemore Employees on topics that

8  include CEC, PHWLV, Ms. Smith, and Ms. Peruzar. As stated above, the attorney-client privilege

9  absolutely shields this information from disclosure. Consequently, because the Subpoenas seek the

10  disclosure of privileged information, the Subpoenas must be quashed.

11  **2.**   **The Subpoenas seek information protected by the attorney work-product doctrine.**

12  

13  The work-product doctrine protects any material obtained and prepared by an attorney in

14  anticipation of litigation or preparation for trial. *Hickman v. Taylor*, 329 U.S. 495, 509–12 (1947).

15  The doctrine is codified in FRCP 26(b)(3):

16  > Plaintiffs may not discover documents prepared in anticipation of
   > litigation by or for another party or its representative unless the party

17  > seeking discovery shows that it has substantial need for the materials
   > and cannot obtain the substantial equivalent by other means without

18  > undue hardship.

19  FRCP 45, which primarily focuses on protecting nonparties' interests, also safeguards

20  "privileged and other protected matters," including information that is "privileged or subject to

21  protections [such] as trial preparation material." FRCP 45(c)(3)(iii); FRCP 45(d)(2)(A). "Work

22  product protection is designed to preserve the privacy of attorneys' thought processes, and to

23  prevent parties from 'borrowing the wits of their adversaries.'" *Braun v. Agri-Sys.*, No. 1:02-cv-

24  06482-AWI-LJO, 2006 WL 278592, at *5 (E.D. Cal. Feb. 2, 2006) (quoting *Holmgren v. State*

25  *Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 576 (9th Cir. 1992)).

26  Here, to the extent that the Fennemore Employees are in possession of documents or

27  communications pertaining to Ms. Smith, Ms. Peruzar, CEC, and PHWLV, Fennemore or the

28  Fennemore Employees prepared all or virtually all of those documents in contemplation of very

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

-11-

active litigation, or litigation just recently completed (the orders of protection), making the documents immune from disclosure under the attorney work-product doctrine. Moreover, the Fennemore Employees' personal computers and cellphones also contain documents and communications protected by the attorney-work product doctrine. Ms. Smith's request to inspect the Fennemore offices during business hours is also improper under the work-product doctrine. Put simply, Ms. Smith is not entitled to these documents or communications.

### 3. The Subpoenas improperly implicate the Fennemore Employees' privacy rights.

Ms. Smith's request to forensically examine the Fennemore Employees' personal computers and cellphones is facially overbroad because the request unquestionably implicates the Fennemore Employees' privacy rights. When a subpoena requests the inspection of an individual's personal electronic devices, courts must consider that individual's privacy interests while assessing proportionality. *See, e.g.*, *Henson v. Turn, Inc.*, No. 15-CV-01497-JSW (LB), 2018 WL 5281629, at *5 (N.D. Cal. Oct. 22, 2018) ("Courts and commentators have recognized that privacy interests can be a consideration in evaluating proportionality, particularly in the context of a request to inspect personal electronic devices."); *Tingle v. Hebert*, No. 15-626-JWD-EWD, 2018 WL 1726667, at *7–8 (M.D. La. Apr. 10, 2018) (finding that "Defendants have also made no showing that the requested forensic examination of Plaintiff's personal cell phone and personal email accounts are proportional to the needs of this case" and holding that "[t]he utility of permitting a forensic examination of personal cell phones must be weighed against inherent privacy concerns") (internal quotations omitted).

In 2015, FRCP 26(b)(2)(B) was amended to state that when a subpoena is otherwise proper (which is not the case here), "[t]he responding party may state that it will produce copies of documents or of electronically stored information instead of permitting inspection." "Direct access to a party's database systems is disfavored and has been granted over objection only in extraordinary circumstances." The Sedona Conference, The Sedona Conference Database Principles Addressing the Preservation & Production of Databases & Database Information in Civil Litigation, 15 Sedona Conf. J. 171, 195 (2014). Specifically, "inspection or seizure is not permitted

4811-1773-0464

unless the moving party can demonstrate that the documents they seek to compel do, in fact, exist and are being unlawfully withheld." *Bethea v. Comcast*, 218 F.R.D. 328, 329–30 (D.D.C. 2003) (internal quotation marks omitted). "In the absence of a showing that plaintiff has destroyed evidence or has otherwise failed in her discovery obligations, the court is unwilling to expand the expense and burden of this case by ordering examination of the computers maintained by either party." *Diepenhorst v. City of Battle Creek*, No. 1:05CV00734, 2006 WL 1851243, at *4 (W.D. Mich. June 30, 2006).

Similarly, a plaintiff's "conjecture does not warrant the compelled inspection of a computer system that contains voluminous information relating to many topics other than" those related to the plaintiff's claims. *Bethea*, 218 F.R.D. 328, 330 (D.D.C. 2003). And while litigants have increasingly "sought access to the opponent's computer or other electronic devices to search for evidence, especially for deleted e-mails[,] [t]he federal courts have generally resisted such incursions." *Diepenhorst*, 2006 WL 1851243, at *2. As noted in the Advisory Committee Notes to the 2006 Amendment to FRCP 34(a), "[i]nspection or testing of certain types of electronically stored information or of a responding party's electronic information system may raise issues of confidentiality or privacy. . . . Courts should guard against undue intrusiveness resulting from inspecting or testing such systems."

Here, Ms. Smith's overreaching Subpoenas needlessly invade the Fennemore Employees' privacy interests. The Federal Rules and corresponding caselaw recognize that allowing access to an individual's personal computer or cellphone effectively grants the examiner an uncensored look into the most personal details of that person's life. Indeed, as stated by the United States Supreme Court, cellphones "hold for many Americans the privacies of life" so that searching a modern cellphone "implicate[s] privacy concerns far beyond those implicated by the search of a cigarette pack, wallet, or purse." *Riley v. California*, 573 U.S. 373, 375 (2014) (assessing cellphone privacy in the context of the Fourth Amendment). This is because personal computers and cellphones contain text messages, emails, documents, contact lists, photographs, and web browsing histories that are private to the owner, as well as everyone with whom the owner communicates.

Snell & Wilmer

L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

Snell & Wilmer

L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

1    In other words, relinquishing control of the computers and cellphones sought by Ms. Smith

2    would expose the personal data of countless nonparties. Ms. Smith does not even attempt to

3    articulate how her improper searches would be restricted to limit and safeguard these privacy and

4    privilege concerns. Ms. Smith does not identify any search terms, nor does she identify her

5    purported forensic expert. Rather, all Ms. Smith says is that: "[t]his is not a general search; the

6    personal computer and cell phone devices will be examined for the date parameters 10/31/2017 to

7    present; they will be examined for specific hits identifying information of Latonia (Toni) Smith and

8    the matters listed in the lawsuit which are related to Latonia Smith or her mother Annecer Peruzar;

9    privileged information will be excluded using search parameters."[6] Ex. B. The foregoing language

10   is simply not enough to ensure protection of the Fennemore Employees' privacy interests. Further,

11   due to innumerable privacy concerns, requesting wholesale access to personal electronic devices is

12   almost unheard of and issued rarely, if at all, after a finding of gross wrongdoing by the opposing

13   party. No such finding has been made, and therefore such an invasion into the Fennemore

14   Employees' personal communications and activities is completely unwarranted and improper.

15       **4.    The Subpoenas impose an undue burden on the Fennemore Employees.**

16       "On timely motion, the court . . . ***must*** quash or modify a subpoena that: . . . subjects a

17   person to an undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). To determine whether a subpoena is

18   unduly burdensome, a court should weigh "the burden to the subpoenaed party against the value of

19   the information to the serving party." *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal.

20   2005) (granting defendant's motion to quash subpoena to nonparty on relevance, overbreadth, and

21   undue burden grounds). When balancing parties' competing interests, courts assess: (a) the

22   relevance of the sought-after evidence; (b) the issuing party's need for the evidence; (c) the breadth

23   of the request; (d) the time period covered by the request; (e) the adequacy of the description of the

24   evidence sought; and (f) the burden imposed. *Concord Boat Corp. v. Brunswick*, 169 F.R.D. 44, 49

25   (S.D.N.Y. 1996). Additionally, FRCP 26(b)(2)(C) provides that the court must limit the frequency

26   or extent of discovery otherwise allowed by the Federal Rules if it determines that the discovery

27

28   [6] Fennemore Craig and its employees are currently and actively involved in defending the Peruzar litigation as well as the current litigation.

sought can be obtained from some other source that is more convenient, less burdensome, or less expensive. And as previously explained, discovery should be even more restricted to protect nonparties "from harassment, inconvenience, or disclosure of confidential documents" or information. *Dart Indus. Co.*, 649 F.2d at 649.

Here, the burden of the Fennemore Employees surrendering their personal electronic devices vastly outweighs the value of the Fennemore Employees' personal information to Ms. Smith. This is all the more true when considering the fact that Ms. Smith has not even attempted to propound proper, narrow, and relevant discovery requests on Fennemore. Moreover, personal computers and cellphones are tools that people employ to coordinate and plan nearly every action they take. These electronic devices are not only essential to an individual's personal life, but they are also essential to a person's professional life—particularly for attorneys.

Requiring the Fennemore Employees to relinquish their personal computers and cellphones "for forensic examination by a forensic expert" would result in the Fennemore Employees losing access to their electronic devices for an extended period of time. As a result, the examination would prevent the Fennemore Employees from performing their professional duties and communicating with their family members, friends, and colleagues. *See Marchionda v. Embassy Suites Franchise, LLC*, No. 4:15-CV-00479-JEG-SBJ, 2018 WL 8458792, at *5 (S.D. Iowa July 10, 2018) ("In today's society, the absence of movants' personal phones and devices will likely have a significant negative impact on their daily lives. Moreover, a potential vast amount of irrelevant personal information of not only the movants, but also their friends and families, will be unnecessarily exposed outside the control of movants."). As nonparties, the Fennemore Employees cannot be compelled to endure this undue burden. The Subpoenas are also unduly burdensome for the separate reason that the they are posed solely for the purposes of harassment and unlikely to lead to the discovery of relevant or admissible evidence.

**5.**     **The Subpoenas seek irrelevant information.**

Where a subpoena seeks documents that are not relevant to the claims or defenses at issue, the subpoena poses an undue burden, and the Court should quash the subpoena. Fed. R. Civ. P. 45(c)(3)(A)(iv); *Mattel Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 813 (9th Cir. 2003). When

-15-

4811-1773-0464

a subpoena is not directed at obtaining relevant evidence and constitutes a "fishing expedition," the subpoena is improper. *Roberts v. Shawnee Mission Ford, Inc.*, 352 F.3d 358, 361–62 (8th Cir. 2003) (affirming district court's order granting motion to quash). Here, Ms. Smith's request to inspect Fennemore's offices is entirely irrelevant to this litigation and, by extension, not reasonably calculated to lead to the discovery of admissible evidence. Any conclusions that Ms. Smith might draw from her inspection would have no bearing on this litigation. Thus, Ms. Smith's request to have unfettered access to Fennemore's offices is merely a fishing expedition that this Court should not entertain.

**C.    The Court Should Quash the Subpoenas Due to Their Procedural Defects.**

In addition to suffering from substantive defects, the Subpoenas also suffer from procedural defects. First, in regard to Shawna Braselton, Wade Beavers, Shannon Pierce, Leslie Bryan Hart, and Janice Procter-Murphy the Subpoenas violate FRCP 45(c)(1)(A). That is, the foregoing Fennemore Employees reside in and are employed at a location more than 100 miles from 400 S. 7th St., Suite 400, Las Vegas, NV 89101. Ms. Smith is aware that the foregoing Fennemore Employees do not reside or work in Las Vegas as she served Ms. Braselton, Mr. Beavers, Ms. Pierce, and Ms. Bryan Hart in Reno, Nevada.

Second, Ms. Smith's subpoena to depose Ms. Braselton violates FRCP 45(b)(1). Under FRCP 45(b)(1), "if the subpoena requires that person's attendance, [the serving party is required to tender] the fees for 1 day's attendance and the mileage allowed by law." Ms. Braselton is not an attorney; thus, the rules required Ms. Smith to tender Ms. Braselton's attendance fee with service of process. As of the date of this Motion, Ms. Braselton has neither received fees for one day's attendance nor fees for mileage.

**D.    In the Alternative, if the Court Is Not Inclined to Quash the Subpoenas, the Court Should Issue a Protective Order.**

FRCP 26(b)(2)(C) provides that "on motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by [the] rules or by local rule if it determines that (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery

-16-

4811-1773-0464

has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed

discovery is outside the scope permitted by Rule 26(b)(1)." *See also Cranney v. Carriage Servs.*,

No. 2:07-cv-01587-RLH-PAL, 2008 WL 2457912 at *15 (D. Nev. June 16, 2008).

When responding to a subpoena that seeks information that violates FRCP 26(b), the

recipient may move for a protective order under FRCP 26(c) in combination with a motion to quash.

As with motions to quash, the subpoena participant bears the burden of proof in seeking a protective

order. *Parrot, Inc. v. Nicestuff Distributing Intl., Inc.*, No. 06-cv-61231, 2009 WL 197979 at *3

(S.D. Fla., Jan. 26, 2009). FRCP 26(b)(C)(1) provides, in pertinent part:

> The court may for good cause issue an order to a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>> (A) forbidding the disclosure or discovery;
>> (B) specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery;
>> (C) prescribing a discovery method other than the one selected by the party seeking discovery;
>> (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;
>> (E) designating the persons who may be present while the discovery is conducted;

Though it is the moving party's burden to show that good cause exists by demonstrating a particular

need for the protection sought, this Court has broad discretion to decide when a protective order is

appropriate and what degree of protection is required. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20,

36 (1984).

Here, for the reasons set forth in the analysis of the Subpoenas' procedural and substantive

defects, good cause exists for the Court to issue a Protective Order withdrawing the Subpoenas.

Even more so, good cause also exists based on the Fennemore Employees' reasonable fear if forced

to comply with the Subpoenas. ███████████████████████████, her

past threats to Ms. Radak and the physical threats to a Fennemore Employee, and the anonymous

letter received by Ms. Braselton and Mr. Beavers fully support the Fennemore Employees'

reasonable fears. Indeed, in the last two years alone, Ms. Radak, Ms. Braselton, and Mr. Beavers

rightfully believe that Ms. Smith has subjected them to the following threats:

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

4811-1773-0464

- "No matter how much you (and your little friends) feel like a dictator b[*]tch at work, you are not untouchable c[**]t. Karma will be waiting for you around the corner." Exhibit C to RJN [ECF 12-3].

- "Just a pathetic, hateful, lonely loser. And a total racist. Middle finger to you, your racist friends at work…." *Id.*

- "samantha jean radak who lives in rhodes ranch. how's your new place? dumb b[*]tch. in life you only life because others let you." *Id.*

- "NOT A KILLER BUT DON'T PUSH IT . . . NO ONE WILL BE SAFE . . . MOVING UP ON THE HIT LIST . . . 6 FEET UNDER OR BURNED . . . MIDDLE FINGER TO THE AMERICAN JUSTICE SYSTEM . . . IT WILL BE THE END OF LIVES . . . EMBODYING THE RAGE OF ALL MASS MURDERS . . . WILL NEVER SEE IT COMING . . . IT WILL JUST BE LIGHTS OUT . . . ALL CAN ANSWER TO WHATEVER F[***]ING DEITY THE WISHED . . . OR JUST BURN" Ex. E.

- "CONGRATULATIONS YOU HAVE JUST BEEN ADDED TO THE HIT LIST . . . NO ONE IS WALKING AWAY UNSCATHED . . . FROM THE VERY TOP . . . TO THE VERY BOTTOM . . . P.S. CONGRATS ON YOUR WEEDING SHAWNA. HOPEFULLY YOU WILL BE AROUND FOR YEARS TO ENJOY IT" *Id.*

"Good cause can include preventing the intimidation of a witness at a deposition." *Wesselmann v. Tyson Foods, Inc.*, No. 15-CV-4247-LTS, 2016 WL 6986683, at *2 (N.D. Iowa Nov. 28, 2016) (excluding plaintiff from deposition because witness was fearful of the plaintiff because the plaintiff allegedly assaulted the witness in the past); *In re Shell Oil Refinery*, 136 F.R.D. 615, 617 (E.D. La. 1991) (granting protective order to exclude party from deposition). Here, based on the foregoing threats and Ms. Smith's past in-person threats to Ms. Pierce, the Fennemore Employees have demonstrated good cause. Thus, if forced to comply with the requested depositions, the Fennemore Employees request that the Court enter a protective order mandating video or telephonic depositions. If video or telephonic depositions are not permitted, the Fennemore

-18-

1    Employees ask that the depositions be conducted at the federal courthouse, behind metal detectors

2    and with a strong security presence.

3           Based on the good cause demonstrated above, the Fennemore Employees further request

4    that the Court issue a Protective Order limiting the deposition topics to only those that are relevant

5    to this litigation and non-privileged. As plainly stated by FRCP 26(b)(C)(1)(D), for good cause, the

6    Court may **forbid** inquiry into certain matters. Here, the Fennemore Employees respectfully request

7    that the Court enter a protective order that expressly limits Ms. Smith's line of questions to relevant

8    evidence and explicitly precludes Ms. Smith from asking for any kind of personal information

9    including, but not limited to, home addresses, personal phone numbers, social security numbers,

10   information about family members, religion,[7] national origin, or ethnicity.

11                                    **IV.    CONCLUSION**

12          For the foregoing reasons, Fennemore and the Fennemore Employees respectively request

13   that the Court quash Ms. Smith's Subpoenas or, in the alternative, enter a protective order

14   prohibiting discovery pursuant to the Subpoenas. If the Court is not inclined to quash or withdraw

15   the Subpoenas, the Fennemore Employees request that the Court enter a protective order setting the

16   guidelines for depositions and forbidding the disclosure of matters beyond the scope of discovery.

17

18   Dated:  August 19, 2019.                       SNELL & WILMER L.L.P.

19

20                                                  By: */s/ Michael Paretti*
                                                    Alex L. Fugazzi, Esq. (NV Bar No. 9022)
21                                                  Michael Paretti (NV Bar No. 13926)
                                                    3883 Howard Hughes Parkway, Suite 1100
22                                                  Las Vegas, Nevada 89169
                                                    *Attorneys for Defendant Fennemore Craig*

23

24

25

26

27

---

28   [7] In a recent deposition in the Peruzar litigation, Ms. Smith's mother asked the witness questions about Ms. Pierce, including if he knew Ms. Pierce's religion.

4811-1773-0464

**CERTIFICATE OF SERVICE**

I, the undersigned, declare under penalty of perjury, that I am over the age of eighteen (18) years, and I am not a party to, nor interested in, this action.  On this date, I caused to be served a true and correct copy of the foregoing **FENNEMORE CRAIG AND THE NONPARTY FENNEMORE EMPLOYEES' EMERGENCY MOTION TO QUASH, OR IN THE ALTERNATIVE, MOTION FOR A PROTECTIVE ORDER** by method indicated below:

☐    **BY FAX:**  by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m. pursuant to EDCR Rule 7.26(a). A printed transmission record is attached to the file copy of this document(s).

X    **BY U.S. MAIL:**  by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Las Vegas, Nevada addressed as set forth below.

> Latonia Smith (*in Pro Per*)
> 9748 Canyon Landing Ave.
> Las Vegas, NV 89166
> Tel: (725) 203-2455 or (702) 521-3522

☐    **BY OVERNIGHT MAIL:**  by causing document(s) to be picked up by an overnight delivery service company for delivery to the addressee(s) on the next business day.

☐    **BY PERSONAL DELIVERY:**  by causing personal delivery by, a messenger service with which this firm maintains an account, of the document(s) listed above to the person(s) at the address(es) set forth below.

☐    **BY ELECTRONIC SUBMISSION:**  submitted to the above-entitled Court for electronic filing and service upon the Court's Service List for the above-referenced case.

☐    **BY EMAIL:**  by emailing a PDF of the document listed above to the email addresses of the individual(s) listed below.

DATED this 19th day of August, 2019.

_____
An employee of SNELL & WILMER L.L.P.

Snell & Wilmer
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
702.784.5200

4811-1773-0464

### INDEX OF EXHIBITS

| Exhibit No. | Description | No. of Pages |
|---|---|---|
| A | Declaration of Alex L. Fugazzi | 4 |
| B | Plaintiff's Subpoenas | 58 |
| C | August 12, 2019 Letter from Alex Fugazzi, Esq. to Latonia Smith | 10 |
| D | August 12-13, 2019 emails between Alex Fugazzi, Esq. and Latonia Smith | 8 |
| E | April 25, 2019 Letter to Shawna Braselton and Wade Beavers | 4 |

4811-1773-0464