RILEY A. CLAYTON
Nevada Bar No. 005260
rclayton@lawhjc.com

**HALL JAFFE & CLAYTON, LLP**
7425 PEAK DRIVE
LAS VEGAS, NEVADA 89128
(702) 316-4111
FAX (702)316-4114

Attorneys for Non-Parties,
Samantha Radak, Deborah Gianini

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

LATONIA SMITH,

Plaintiff,

vs.

FENNEMORE CRAIG,

Defendants.

CASE NO.: 2:19-cv-00824-GMN-JDA

**NON-PARTY WITNESSES, SAMANTHA RADAK'S AND DEBORAH GIANINI'S, MOTION TO QUASH SUBPOENAS**

Non-Party witnesses, Samantha Radak and Deborah Gianini (collectively referred to as "Deponents"), hereby move this Court pursuant to Fed. R. Civ. P. 45 to quash the subpoenas served upon them on August 12, 2019 and August 13, 2019, respectively. After having conducted a good faith meet and confer with the propounding party, Latonia Smith ("Ms. Smith"), on the late afternoon of August 26, 2019, the parties could not reach an agreement on whether the depositions and document productions should move forward, thereby prompting the instant motion. (Declaration of Riley A. Clayton, attached as Exhibit "A").

As set forth in detail below, Deponents submit that the subpoenas are legally improper, violate agreements disallowing contact between Ms. Smith and at least one of the Deponents, seek information protected by the attorney-client privilege and/or work product doctrine, and, among other things, impose undue burdens upon the Deponents, particularly given the procedural posture of this case and the pendency of related motions to stay and consolidate discovery. To that end, Deponents respectfully request that this Court issue an order quashing the subpoenas, and preclude the depositions regarding

these witnesses or otherwise specifically tailor or limit the subpoenas given the unique circumstances of this case.

This motion is made and based upon the pleadings and papers on file herein, the attached memorandum of points and authorities, and any oral argument that the Court may entertain in this matter.

Dated this 27th day of August, 2019.

HALL JAFFE & CLAYTON, LLP

By [signature]
RILEY A. CLAYTON
Nevada Bar No. 005260
7425 Peak Drive
Las Vegas, Nevada 89128
Attorneys for Non-Party Deponents

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. FACTUAL BACKGROUND

This case is closely related to the other currently pending case filed by Ms. Smith against Caesars Entertainment Corp., PHWLV, LLC d/b/a Planet Hollywood Resort and Casino, Ethan Thomas (collectively "PHW"), and Shannon Pierce. (Case No. 2:19-cv-00856-GMN-JDA, the "Planet Hollywood Case"). Recognizing the interrelatedness between the two cases, the Planet Hollywood Case was reassigned from Judge Boulware to Judge Navarro. (Planet Hollywood Case, ECF No. 10). In fact, because the cases are factually and legally intertwined, the defendants in the Planet Hollywood Case have filed motions to consolidate, at least for pre-trial/discovery purposes, and have filed motions to stay discovery in light of the pending dispositive motions. (Planet Hollywood Case, ECF Nos. 48, 52, 43, 46).

As the defendants in the Planet Hollywood Case have pointed out in their recent motions, oppositions, and reply briefs, everything involving Ms. Smith's cases starts with Plaintiff's mother's, Annecer Peruzar's, termination from her employment after she allegedly misappropriated money of a guest at the hotel, and ends with Plaintiff's and her mother's misguided and improper attempts to retaliate against the defendants. Because the defendants in the Planet Hollywood case are not parties to

the instant lawsuit, Case No. 2:19-CV-00824-GMN-JDA, ("Fennemore Craig Case"), however, counsel for PHW is unable to participate in the Fennemore Craig Case with respect to any discovery, pending motions, etc. – unless and until this Court issues an order consolidating the cases for discovery purposes.

## II. FACTS RELEVANT TO THE INSTANT MOTION

1. Upon information and belief, Deponent Radak is an employee of Planet Hollywood, serving in the capacity of Assistant Director of Housekeeping for Planet Hollywood Hotel/Casino. She is not a party to the Fennemore Craig Case or Planet Hollywood Case. (Exhibit "A").

2. Deponent Gianini is an employee of Caesar's Entertainment Services, serving in the capacity of Regional Vice President of Integrity, Performance, and Culture. She is not a party to the Fennemore Craig Case or Planet Hollywood Case, either. (*Id.*)

3. On the evenings of August 12, 2019 and August 13, 2019, respectively, Deponent Radak and Deponent Gianini were served with the subject subpoenas at their respective homes. (Exhibit "A"; and Subpoenas, attached as Exhibit "B"). The subpoenas seek the deposition of Deponent Radak on August 29, 2019 at 9:45 a.m., and the deposition of Deponent Gianini on August 30, 2019, at 9:45 a.m. (Exhibit "B").

4. In addition to seeking the testimony of the Deponents, the depositions also seek production of the following documents from each/both of the deponents. Specifically, the duces tecum components of the subpoenas state:

> All correspondence between yourself and employees of CEC or PHWLV or any CEC entity regarding Latonia Smith or her mother Annecer Peruzar from October 31, 2017 to present; all correspondence between yourself and employees of Fennemore Craig regarding Latonia Smith or her mother Annecer Peruzar from October 31, 2017 to present.

(*Id.*)

5. Given the pending related cases, which involve the Snell & Willmer law firm defending the Fennemore Craig law firm in the Fennemore Craig Case; the Snell & Willmer law firm defending Ms. Pierce in the Planet Hollywood Case; the Hall Jaffe & Clayton, LLP, firm defending PHW in the Planet Hollywood Case, and Ms. Pierce/Fennemore Craig defending against the wrongful termination claim of Ms. Peruzar; PHW internally evaluated which firm should represent the Deponents with respect to the subject subpoenas, or whether an additional law firm should be retained, given the unique

circumstances of this case. (Exhibit "A").

6. Ultimately, on August 22, 2019, PHW retained Riley A. Clayton, Esq., of Hall Jaffe & Clayton, LLP, to represent the Deponents with respect to the subpoenas. (Exhibit "A").

7. On Friday, August 23, 2019, Mr. Clayton prepared a formal written objection to the subpoenas and, with her permission, served the written objection upon Ms. Smith via email. (Exhibit "A"; and Objection, attached as Exhibit "C"). The Objection identified the factual and legal bases regarding why the Deponents objected to the subpoenas, why the depositions and document production should not go forward, and invited Ms. Smith to withdraw the subpoenas or otherwise conduct a "meet and confer." (*Id.*) A copy of the Objection was also served upon Ms. Smith via regular U.S. Mail on Monday, August 26, 2019. (*Id.*)

8. Later Friday evening, August 23, 2019, Ms. Smith sent a written response to the Objection via email, outlining, in general, her desire to move forward with the subpoenas. (Exhibit "A"; and Response to Objection, attached as Exhibit "D").

9. In an effort to determine whether there could be any potential way to avoid any motion work-up regarding the subpoenas, on Sunday, August 25, 2019, Mr. Clayton sent another email identifying potential dates and times in which to conduct a "meet and confer." (Exhibit "A"; and Email re Meet and Confer, attached as Exhibit "E"). Ms. Smith responded later that evening via email, acknowledging that she would participate in a meet and confer on Monday. August 26, 2019, at 5:00 p.m. (*Id.*)

10. On Monday, August 26, 2019, at 5:00 p.m., Mr. Clayton, along with his associate attorney, Kathy McCarthy, Esq., called Ms. Smith using a speaker phone to conduct the "meet and confer." (Exhibit "A"). Initially, Ms. Smith requested that Mr. Clayton and Ms. McCarthy call her back in 15 minutes, which they did. (*Id.*) Mr. Clayton, Ms. McCarthy and Ms. Smith then conducted a good faith and meaningful "meet and confer." During that conversation, the parties debated the merits of their respective positions. For instance, Mr. Clayton explained that the subpoenas violated a prior agreement between Ms. Smith and Deponent Radak, which disallowed contact between the parties. Mr. Clayton also explained that the subpoena expressly sought documents that were protected by the attorney-client privilege and work-product doctrine. Mr. Clayton also explained how the procedural posture of the

cases lent themselves to staying all discovery pending the outcome of dispositive motions, the motion to stay discovery pending those dispositive motions, and the motion to consolidate, and how undue burdens would be eased by not going forward with the subpoenas at this time. Ms. Smith, among other things, explained that in the Fennemore Craig Case there was no stay on discovery and that she was allowed to move forward with the subpoenas, that the Fennemore Craig Case and Planet Hollywood Case were different, and that because of alleged "fraud" and "crimes," the attorney-client privilege would not protect against the disclosure of the sought information. The parties also debated the timing of a potential document production as requested in the subpoenas, and Mr. Clayton explained that additional time would be needed for CEC and/or PHW and/or the Deponents to retrieve any requested documents, review them for purposes of privilege, and prepare the applicable privilege log. Unfortunately, however, and despite good faith efforts, the parties were not able to reach any substantive agreement on the requested discovery, and Ms. Smith understood that the Deponents would be filing a motion to quash the subpoena. (*Id.*)

## II. LEGAL ARGUMENT

### A. Deponent's Written Objection Excuses Deponents From Producing Any Documents In Response To The Subpoena.

As noted above, the subpoenas served on the Deponents seek both their testimony and a production of documents. In response to the subpoenas, Deponents served a written Objection on Ms. Smith via email dated August 23, 2019, and also served a copy on her by U.S. Mail on August 26, 2019. (Exhibits "A", "B", and "C"). The Objection was timely served within 14 days of the service of the subpoena, and prior to the date set for the production of the documents. (*Id.*)

According to Ninth Circuit case law and the recent case law from this jurisdiction, "[a]" **nonparty served with a subpoena has three options**: it may (1) comply with the subpoena, (2) **serve an objection on the requesting party in accordance with Rule 45(c)(2)(B)**, or (3) move to quash or modify the subpoena in accordance with Rule 45(c)(3)." *Genx Processors Mauritius, Ltd. v. Jackson*, 2018 WL 5777485, *9 (D. Nev. 2018)(emphasis added), citing *In re Plise*, 506 B.R. 870, 878 (9th Cir. 2014). *See also*, *Forsythe v. Brown*, 281 F.R.D. 577 (D. Nev. 2012)(holding that a non-party may respond to a subpoena duces tecum with a written objection). "Timely written objections to a subpoena

in accordance with Rule 45(c)(2)(B) qualify as an 'adequate excuse' for noncompliance." *Genx*, 2018 WL 577485, at *9; citing *In re Plise, supra; DeGeer v. Gillis*, 755 F. Supp. 2d 909, 930 (N.D. Ill. 2010); and *In re Exxon Valdez*, 142 F.R.D. 380, 385 (D.C. 1992). "**When a nonparty raises timely objections to the subpoenas, the nonparty is not required to produce documents, or even search for them, until the propounding party obtains an order directing compliance**." *Genx, supra;* citing *Pennwalt Corp. v. Durand-Wayland, Inc.*, 708 F.2d 492, 494 & n.5 (9th Cir. 1983); and *In re Plise*, 506 B.R. at 878; *DeGeer*, 755 F. Supp. 2d at 930. [Emphasis added].

Given the clarity of the law regarding whether a written objection obviates the necessity of a non-party to respond to a subpoena duces tecum until the Court issues an order directing compliance with the same, the Deponents firmly stand on their Objection and will not be producing documents as requested in the subpoenas. Deponents have properly preserved any and all grounds to contest the same in the event Plaintiff intends to take further action. Until then, however, Deponents are not obligated to produce any documents.

**B. This Court Should Quash The Subpoenas.**

Although the timely written Objection to the subpoenas excuses their requirement to produce documents, by way of this motion to quash, Deponents are also seeking protection from being compelled to appear and give testimony. As outlined herein, the subpoenas should be quashed because they violate existing agreements, seek information that would be unduly burdensome, seek information that is protected by the attorney-client privilege and work-product doctrine, are unduly burdensome given the limited time in which to respond, and otherwise seek information that is neither relevant nor proportional to the needs of this case.

**1. An agreement between Deponent Radak prevents Ms. Smith from coming within 100 feet of Deponent Radak; thus, the subpoena would be in violation of that agreement.**

Initially, at least with respect to Ms. Radak, the subpoena relating to her should be quashed in its entirety because Ms. Smith, by way of an agreement executed by her, is already precluded from engaging in any contact with Ms. Radak, whatsoever. (Agreement executed June 6, 2018, attached as Exhibit

"F").[1] In other words, the very nature of the subpoena, which requires Deponent Radak's personal attendance to be examined by Ms. Smith, runs afoul of the agreement Ms. Smith executed. The specific terms of the Agreement state:

> The terms of the protective order shall permanently remain in full force and effect against Defendant [Ms. Smith] with respect to Samantha Radak until December 1, 2019. This includes, without limitation, the following:
>
> 1. <u>Terms and Conditions</u>: In order to settle this matter, Plaintiffs and Defendant agree to the following terms, conditions, and undertakings:
>
> a. <u>Protection of Ms. Radak</u>. The terms of the Protective Order shall permanently remain in full force and effect against Defendant with respect to Samantha Radak until December 1, 2019. This includes, without limitation, the following:
>
> i. **<u>Defendant is required to stay 100 feet away from wherever Ms. Radak is found</u>**, except that any inadvertent meeting between the parties, at any location, shall not be considered a violation of this agreement;
>
> ii. **<u>Defendant is prohibited, either directly or indirectly by an agent or otherwise from contacting</u>**, intimidating, harassing, using, attempting to use or threatening the use of physical force or otherwise interfering in any way with **<u>Ms. Radak, including but not limited to, in person, by writing</u>**, by telephone, by US Postal Service or other forms of mail delivery, through electronic mail (e-mail), instant messaging, text messaging, facsimile. This includes no communication through social media or any social media platform, without limitation, or through another person.

(Exhibit "F"). According to the foregoing, Ms. Smith entered into an agreement to stay away from Deponent Radak through December 1, 2019, and to not contact her directly, or by an agent. (*Id.*) Here, service of the subpoena already qualifies as an impermissible "contact" by an agent against Deponent Radak, and the subsequent appearance of Deponent Radak at a deposition conducted by Ms. Smith, would, likewise, violate the terms of the Agreement. Given Plaintiff's prior agreement to refrain from contacting Plaintiff, she should be precluded from now attempting to go around the same by seeking to depose her in this case. Therefore, on this basis alone, this Court should quash the subpoena as it relates to Deponent Radak in its entirety.

---

[1] As a preemptive strike against Ms. Smith's presumably forthcoming argument that Deponents are violating the terms of Section 4 Confidentiality of Agreement by referencing it herein, such an argument would have no merit. Specifically, the Agreement allows Deponent Radak to "disclose this Agreement to a court as a part of a request for protective order or other relief. . ." Therefore, there is no violation of the "confidentiality" provision of the Agreement by referencing it and producing it to the Court here. (Exhibit "F").

**2. Because motions to consolidate, motions to dismiss, and motions to stay discovery are pending in the related cases, requiring Deponents to submit to depositions now would create an undue burden and would generate duplicative/costly discovery.**

A cursory review of the docket in the related Planet Hollywood case will readily reveal that there are pending motions, which, once decided, may greatly affect the Fennemore Craig Case and Plaintiff's ability to move forward with discovery. Specifically, the defendants in the Planet Hollywood case have filed a motion to consolidate the Planet Hollywood Case with the Fennemore Craig Case (ECF Nos. 48, 52). The defendants in the Plaintiff Hollywood Case have painstakingly pointed out the identical factual and legal issues that support both cases, and why consolidation would be warranted, at least for discovery purposes. (*Id.*) Likewise, the defendants in the Planet Hollywood Case have established how consolidation for discovery purposes would promote "economy of time and effort" for the Court, counsel, and the litigants, and significantly diminish the likelihood of confusion and delay. (*Id.*), citing, *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 724 (1966); *Landis v. Amer. Co.*, 299 U.S. 248, 254 (1936); and 720 F. Supp. 805, 807 (N.D. Cal 1989). The fact that Plaintiff has filed literally dozens of related briefs, motions, oppositions, requests for discovery, etc. in the two cases, which establish the essentially identical nature of the cases, should prove that if any case warrants consolidation, at least for discovery purposes, it is certainly this one.

**Predicting the exact position in which the Deponents find themselves here**, the PHW defendants in the Planet Hollywood Case argued, in their Reply to Opposition to Motion to Consolidate, the reason why consolidation should be granted – i.e., to stave off costly, duplicative discovery in two essentially identical cases. (ECF No. 65) Specifically, the PHW defendants argued:

> [C]an Plaintiff legitimately contend that Ms. Pierce and her supervising attorneys at Fennemore Craig would not be deponents **in both** the Fennemore Craig Lawsuit and the instant lawsuit? Can Plaintiff legitimately contend that Mr. Thomas would not be a deponent **in both** the Fennemore Craig Lawsuit and the instant lawsuit? Can Plaintiff legitimately contend that she and her mother would not be deponents **in both** the Fennemore Craig Lawsuit and the instant lawsuit? Can Plaintiff legitimately contend that the PHWLV employees that Plaintiff has recently subpoenaed in the Fennemore Craig Lawsuit (Samantha Rudak and Deborah Gianini), would not, likewise, be deponents **in both** lawsuits? Would not motions for protective order/motions to quash be filed **in both cases** by Fennemore Craig, Ms. Pierce, and/or CEC and PHWLV seeking to limit or otherwise preclude the testimony of these hotel entity and lawyer witnesses, particularly given the attorney-client privilege and work product protections that exist between PHW and its outside and in-house counsel? As a party to the instant lawsuit but not the Fennemore Craig Lawsuit, would not PHW be unfairly prejudiced by being precluded from participating in the depositions in that case, simply because PHW is not a party to

> that case? PHW submits that the answer to these questions is readily apparent. In fact, these are only a few of the multiple obvious examples of how the common factual, discovery, economic, case management, and legal issues demonstrate why these cases should be consolidated, at least for discovery purposes at this stage. This case, particularly given the tremendous amount of costly and duplicative motion-work that has already occurred (which, unfortunately, is likely to continue in the foreseeable future if Plaintiff's claims survive), is the exact type of case that Rule 42 was designed to address. [Emphasis in original].

(ECF No. 65, pp. 4-5).

As a basis for quashing the subpoenas, the Deponents submit that it would be an undue burden on them to be forced to submit to two depositions in two separate cases, particularly where the issue of consolidation is pending, which if granted, would eliminate the potential burden to the Deponents. *See e.g.,* Fed. R. Civ. P. 45(d)(3)(A); and *see generally, Playstudios, Inc. v. Centerboard Advisors, Inc.,* 2019 WL 1995326, *2 (D. Nev. 2019)(citing the general rule that a court can quash a subpoena if it is unduly burdensome, which depends upon the facts of the specific case).

The specific facts of this case clearly demonstrate that there would be an undue burden if Deponents were required to submit for depositions. Respectfully, there likely would be nothing to prevent Ms. Smith to issue subpoenas on the Deponents in the Planet Hollywood Case. Moreover, because the PHW defendants are not yet parties to the Fennemore Craig Case, PHW's counsel would be precluded from participating in the same, thereby giving Ms. Smith an unfair advantage. Finally, the costs associated with filing two motions to quash, preparing the deponents two separate times, having them leave their places of employment for depositions on two separate occasions, is unduly burdensome, particularly when this legitimate concern can be resolved through consolidation of the cases, at least for discovery purposes. Therefore, given the palpable burden placed on the Deponents, the PHW defendants, and their counsel in this case, this Court should agree that the subpoenas should be quashed, or at least modified pending the outcome of the motion to consolidate.

**3. The very nature of the information sought through the subpoenas is protected by the attorney-client privilege and work product doctrine.**

Perhaps what is most telling about the information that Ms. Smith is seeking from the Deponents, and why the subpoenas should be quashed, is found in the very text of the duces tecum component of the subpoenas. (Exhibit "B"). Specifically, the documents that Ms. Smith wants Deponents to produce include correspondence between them and the lawyers from Fennemore Craig as it relates to the

underlying wrongful termination case involving Annecer Peruzar and the subsequent lawsuits involving Ms. Smith. (Exhibit "B"). In light of the foregoing, it is clear that Ms. Smith seeks to penetrate the attorney-client privilege and work-product doctrine through her examination of the Deponents regarding those communciations – privileges that Deponents (and the PHW defendants) intend to preserve and not waive. *See e.g., Casun Invest, A.G. v. Ponder*, 2019 WL 2358390, *6 (D. Nev. 2019)(quashing subpoenas because the information sought was "likely protected from disclosure by the attorney-client privilege and work-product doctrine).

Under most circumstances, attorney-client or work-product objections can be asserted during the deposition with an instruction not to answer and then, where necessary, the objections can be presented to the court to determine whether they should be sustained. *See e.g., In re Stratosphere Corp. Securities Litigation,* 182 F.R.D. 614, 619 (D. Nev. 1998)(holding that counsel can instruct a client not to answer, and then following the deposition, seek a ruling on the efficacy of the claim of privilege). However, this case is not the typical case, but is unique in light of the fact that Ms. Smith is representing herself and is not a lawyer, and may not be familiar with the extent of the benefits and protections afforded under the attorney-client privilege and work-product doctrines.

As the Court is aware, however, the attorney-client privilege serves to protect confidential communications between a party and its attorney in order to encourage "full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Premiere Digital Access, Inc. v. Central Telephone Co.,* 360 F. Supp. 2d 1168, 1172 (D. Nev. 2005), citing *Upjohn Co. v. U.S.*, 449 U.S. 383 (1981). Similarly, the work-product doctrine generally protects from discovery by the opposing party information or documents that were prepared by or for a party in anticipation of litigation or for trial. *U.S. E.E.O.C. v. Pioneer Hotel, Inc.*, 2014 WL 4987418 (D. Nev. 2014), citing *Hickman v. Taylor*, 329 U.S. 495 (1947).

Here, Ms. Smith and her mother, Annecer Peruzar, have been embattled with the PHW defendants, the Fennemore Craig lawyers, and specific individuals at Planet Hollywood and Ceasars Entertainment since October 2017. Indeed, there can hardly be a scenario where the information sought by Ms. Smith from Deponents through their depositions would not involve confidential communications between the Deponents and their attorneys regarding litigation preparation strategies on how to respond

to the ongoing barrage of claims, lawsuits, TROs, etc. surrounding Ms. Smith and her mother. In fact, Ms. Smith even seems transparent about probing deeply into attorney-client privileged and work-product protected information by referencing the same in her subpoenas. (Exhibit "B").

In the meet and confer with Ms. Smith, Ms. Smith identified that the attorney-client privilege and work-product doctrines would not preclude her from seeking such testimony because the Deponents are purportedly committing a "fraud" or "crime." (Exhibit "A"). However, Ms. Smith was unable to provide any legal support at the time of the meet and confer to support her representation that she should be allowed to pursue such questioning, thereby prompting the need for this motion to quash. In sum, before Deponents are required to submit for any deposition, the Court (and the parties) need to be fully apprised of the legal grounds under which Ms. Smith intends to invade information protected by the attorney-client privilege and work-product doctrine. Until the same has transpired, however, Ms. Smith's subpoenas should be quashed.

**4. Given the limited time for Deponents to prepare for their depositions would be unduly burdensome and prejudicial.**

Fed. R. Civ. P. 45(c)(1) imposes a duty on parties to "take reasonable steps to avoid imposing undue burden or expense" on a person subject to a subpoena. *Painters Joint Committee v. Employee Painters Trust Health & Welfare Fund*, 2011 WL 4549232, *2 (D. Nev. 2011). Courts consider relevance as a factor when determining motions to quash a subpoena.:

> Specifically, under Rule 45(c)(3)(A), "[a]n evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party[,]" *Travelers Indem. Co.*, 228 F.R.D. at 113, and, in particular, requires the court to consider:'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.

*Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005). In this case, Ms. Smith has issued subpoenas that, on their face, require production of attorney-client privileged and work-product doctrine protected information. Deponents, as the holders of the attorney-client privilege at issue, are not intending to waive that privilege. *Montgomery v. eTreppid Technologies, LLC*, 548 F.Supp.2d 1175, 1177 (D. Nev. 2008)("Only the holder of the attorney-client privilege may waive it.") Thus, in order to comply with Plaintiff's subpoenas while maintaining attorney-client privilege, Deponents would be forced to gather and review nearly two years worth of communications among multiple parties in order

to determine which, if any, subpoenaed materials may be produced and which are subject to attorney-client privilege. Although Deponents understand that the majority of materials sought are likely subject to the privilege and that the subpoenas should be quashed on that basis, to the extent that compliance is mandated, Deponents will require significantly more time than that afforded by Plaintiff's subpoenas in which to respond while adequately protecting their interests.

Accordingly, additional time would also be required for Deponents to prepare to give testimony concerning the documents they are being required to produce, particularly in light of the privileged materials. When the effort that Deponents would be required to expend is weighed against the potential benefit of such information to Plaintiff, the burdensomeness of the subpoenas becomes clear. Deponents are employees of the PHW defendants who, apparently, have some familiarity with the circumstances surrounding the termination of Ms. Peruzar's employment. However, the Fennemore Craig Case is not concerned with the circumstances of Ms. Peruzar's termination, but rather Plaintiff's allegations that Defendants committed tortious acts against Ms. Smith following Ms. Peruzar's termination. As drafted, Ms. Smith's subpoena is exceedingly broad, seeking "all" correspondence regarding Ms. Smith or her mother, and clearly intending to elicit information that is not relevant or proportional to the needs of the case in the context of this litigation.

Given the foregoing, it is clear that requiring Deponents to respond to the subpoenas without affording them ample time to prepare and protect the attorney-client privilege of the materials sought would be unduly burdensome and highly prejudicial. Therefore, the subpoenas should be quashed.

**5.     The information sought is not relevant nor proportional to the needs of the case, and should be disallowed.**

As noted above, Ms. Smith believes that Deponents have some knowledge of the circumstances surrounding the termination of Ms. Smith's mother, Annecer Peruzar. Although Ms. Smith suggests that such information is relevant in this litigation, it would appear to serve little purpose other than to provide background, which she can clearly obtain from her mother. Plaintiff's mother's termination is the subject of an ongoing lawsuit in which, presumably, the circumstances surrounding the termination are relevant. Here, such information is not relevant and, to the extent it may be minimally relevant, it does not comport with the requirement that it be proportional to the needs of the case:

> In addition to clarifying the standard for relevance, the drafters of the 2015 amendments also expressly provided that the scope of discovery must be defined in relation to the concept of proportionality. "**Relevancy alone is no longer sufficient–discovery must also be proportional to the needs of the case**." *Bard IVC*, 317 F.R.D. at 564. **To fall within the purview of appropriate discovery, the information sought must also be proportional to the needs of the case, including consideration of the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweigh its likely benefit**. Fed. R. Civ. P. 26(b)(1). Proportionality focuses on the marginal utility of the discovery being sought. In re *Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 180 F. Supp. 3d 273, 280 n.43 (S.D.N.Y. 2016). At bottom, proportionality is a "common-sense concept" that should be applied to establish reasonable limits on discovery. *See, e.g., Sprint Comm's Co. v. Crow Creek Sioux Tribal Court*, 316 F.R.D. 254, 263 (D.S.D. 2016).

*Guerro v. Wharton*, 2017 WL 7314240, *2 (D. Nev. 2017). (Emphasis added.) In this case, Plaintiff is seeking broad discovery that is not relevant to the claims she is asserting. Her allegations generally concern her mother's litigation and events that follow from that litigation, not the underlying termination of her mother that gave rise to her mother's litigation. There is no reason for Plaintiff to re-investigate the termination of her mother in pursuing her own claims that allegedly arise from subsequent events. Thus, the limited, if any, importance of the discovery sought in relation to resolving the issues before this Court in this litigation is vastly outweighed by the burden imposed upon Deponents.

## III. CONCLUSION

Deponents submit that their timely written Objection to the subpoenas excuses their requirement to produce documents. By way of this motion to quash, Defendants are also seeking protection from being compelled to appear and give testimony. As outlined above, the subpoenas should be quashed because they violate existing agreements, seek information that would be unduly burdensome, seek information that is protected by the attorney-client privilege and work-product doctrine, are unduly

/ / /

/ / /

/ / /

burdensome given the limited time in which to respond, and otherwise seek information that is neither relevant nor proportional to the needs of this case. Therefore, the subpoenas should be quashed.

Dated this 27th day of August, 2019.

HALL JAFFE & CLAYTON, LLP

By [signature]
RILEY A. CLAYTON
Nevada Bar No. 005260
7425 Peak Drive
Las Vegas, Nevada 89128
Attorneys for Non-Party Deponents

**CERTIFICATE OF SERVICE**

Pursuant to Rule 5(b) of the Federal Rule of Procedure, I hereby certify under penalty of perjury that I am an employee of HALL JAFFE & CLAYTON, LLP, and that on the 27th day August, 2019, the foregoing **NON-PARTY WITNESSES, SAMANTHA RADAK'S AND DEBORAH GIANINI'S, MOTION TO QUASH SUBPOENAS** was served upon the parties via the Court's CM/ECF e-filing and service program, and via U.S. Mail, addressed as follows, noting that Plaintiff is in proper person:

Latonia Smith
9748 Canyon Landing Ave.
Las Vegas, NV 89166
***Plaintiff in Proper Person***

Alex L. Fugazzi, Esq.
Michael Paretti
SNELL & WILMER, LLP
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
Attorneys for Defendant, Fennemore Craig

An Employee of
HALL JAFFE & CLAYTON, LLP