# Exhibit B

# August 12, 2019 Letter from Alex Fugazzi, Esq. to Latonia Smith



LAW OFFICES

3883 Howard Hughes Parkway
Suite 1100
Las Vegas, NV 89169
702.784.5200
702.784.5252 (Fax)
www.swlaw.com

ALBUQUERQUE
BOISE
DENVER
LAS VEGAS
LOS ANGELES
LOS CABOS
ORANGE COUNTY
PHOENIX
RENO
SALT LAKE CITY
TUCSON
WASHINGTON DC

Alex L. Fugazzi
(702) 784-5202
afugazzi@swlaw.com

August 12, 2019

**VIA U.S. MAIL & EMAIL**

Latonia Smith
9748 Canyon Landing Ave.
Las Vegas, NV 89116

Re:   *Latonia Smith v. Fennemore Craig*,
      **Case No. 2:19-cv-00824-GMN-GWF**
      **Objection to Depositions and Subpoenas Duces Tecum**

Dear Ms. Smith:

I write on behalf of Fennemore Craig ("Fennemore"), as well as Brenoch Wirthlin, Shawna Braselton, Brandi Planet, Wade Beavers, Shannon Pierce, Leslie Bryan Hart, and Janice Procter-Murphy (collectively, the "Fennemore Employees") regarding your August 1, 2019 subpoenas for the inspection of Fennemore's Las Vegas and Reno offices and the deposition and production of various documents, as well as personal computers and cellphones, of the Fennemore Employees (the "Subpoenas").

The Subpoenas suffer both substantive and procedural defects, which bar enforcement. While we hope to resolve these defects through a meet and confer, Fennemore and the Fennemore Employees now state and preserve their objections to the Subpoenas in the event that we cannot fully reconcile our differing positions without judicial involvement. We, therefore, send this letter pursuant to FRCP 45(d)(2)(B) and FRCP 26(c). This letter is not meant to contain an exhaustive list of the many objections to the Subpoenas and by sending this letter, Fennemore and the Fennemore Employees preserve all rights and waive none. And, to be clear, due to the Subpoenas' substantive and procedural defects, we will not allow office inspections or produce the requested witnesses, documents, or electronic devices at the dates and times referenced in the Subpoenas.

As a threshold matter, all parties to this litigation agreed to stay discovery pending the resolution of Fennemore's Motion to Dismiss. *See* Defendant's Proposed Discovery Plan and Scheduling Order (July 26, 2019), ECF No. 16; Defendant Fennemore Craig's Motion to Stay Discovery Pending Resolution of Dispositive Motions (July 31, 2019), ECF No. 19; Plaintiff's Views on Proposed Discovery, Conference Agenda (Aug. 1, 2019), ECF No. 20. Indeed, your August 1, 2019 filing states, "**[d]isclosures and discovery**: to commence after resolution of defendant's anti-slapp/motion to dismiss . . ." ECF No. 20, at 5. Thus, given your prior statements

Snell & Wilmer
——— L.L.P. ———

Latonia Smith
August 12, 2019
Page 2

and the fact that the Court has not ruled on Fennemore's Motion to Dismiss, we are surprised by the timing of the Subpoenas.

Equally important, the Fennemore Employees are nonparties to the litigation. While we believe your discovery requests are inappropriate even when directed solely to parties in litigation, when discovery is requested from nonparties, discovery controls are particularly important. *See F.T.C. v. AMG Servs., Inc.*, 291 F.R.D. 544, 553 (D. Nev. 2013) ("[D]iscovery permissible from nonparties is narrower than that permissible from parties to the action."); *Laxalt v. McClatchy*, 116 F.R.D. 455, 458 (D. Nev. 1986) ("The standards for nonparty discovery . . . require a stronger showing of relevance than for simple party discovery."). Likewise, discovery restrictions are broader when a nonparty is the target of discovery. *See Dart Indus. Co., Inc. v. Westwood Chem. Co., Inc.*, 649 F.2d 646, 649 (9th Cir. 1980). Courts provide special protection in these circumstances. *Exxon Shipping Co. v. United States Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994). Thus, a court may forbid certain discovery or limit its scope to protect nonparties from "undue burden or cost." FRCP 26(c)(1); *see also* FRCP 45(d)(3).

In addition to the protections afforded to nonparties under the Federal Rules, Fennemore and the Fennemore Employees object to the Subpoenas to the extent they seek information and/or production of materials protected by the attorney-client privilege, the work product doctrine, or any other legally recognized privilege, immunity, or exemption from discovery.[1] Fennemore and the Fennemore Employees hereby claim such privileges and protections for themselves, and on behalf of each and every Fennemore client implicated by the Subpoenas and therefore object to the production of any information or materials subject thereto. Though privilege is discussed in more detail below, in an abundance of caution, this general objection is intended to prevent any waiver of these privileges or protections as to any specific request—whether the privilege belongs to Fennemore, the Fennemore Employees, or any client of Fennemore.

Further, the attorney-client privilege belongs to the client—not the attorney. *Exobox Techs. Corp. v. Tsambis*, No. 2:14-CV-501-RFB-VCF, 2014 WL 4987903, at *5 (D. Nev. Oct. 7, 2014) ("attorney-client privilege, the relevant legal interest[,] . . . belongs to the attorney's client.") (citing *Chirac v. Reinicker*, 24 U.S. 280 (1826); *United States v. Partin*, 601 F.2d 1000, 1009 (9th Cir.1979)). Accordingly, Fennemore and the Fennemore Employees cannot—and will not—disturb their clients' absolute right to the attorney-client privilege. *See* Nevada Rule of Professional Conduct 1.6 ("A lawyer shall not reveal information relating to representation of a client unless the client gives informed consent . . ."); *see also United States v. Jicarilla Apache Nation*, 564 U.S. 162, 169 (2011) ("The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law. Its aim is to encourage full and frank communication

---

[1] By way of example only, each Subpoena impermissibly seeks attorney-client privileged communication by asking for the production of "All correspondence between yourself and employees of [Fennemore client] CEC or PHWLV or any CEC entity regarding Latonia Smith or her mother Annecer Peruzar from 10/31/2017 to present."

4823-0543-1455



Latonia Smith
August 12, 2019
Page 3

between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."). And to the extent certain Subpoenas impact a privilege belong directly to Fennemore or the Fennemore Employees, Fennemore does and intends to assert it.

Because the Subpoenas are an improper invasion of the attorney-client privilege that primarily target Fennemore and its clients Caesars Entertainment Group ("CEG") and PHWLV, LLC ("PHWLV"), we have copied Riley Clayton, counsel for CEG and PHWLV in the related *Smith v. Caesars Entertainment Corporation, et al.* litigation, on this correspondence.

## I.  SUBSTANTIVE DEFECTS

### A.  Request for Examination of the Fennemore Employees' Personal Computers and Cellphones

Turning to the Subpoenas' substantive defects, foremost, your request to examine the Fennemore Employees' personal computers and cellphones is facially overbroad and unquestionably implicates the Fennemore Employees' privacy interests. Allowing access to an individual's personal computer or cellphone effectively grants the examiner an uncensored look into the most personal details of that person's life. Even more so, most personal computers and cellphones contain text messages, emails, documents, contact lists, photographs, and web browsing histories that are private to the owner, as well as everyone with whom the owner communicates. Thus, requesting a forensic inspection of the Fennemore Employees' personal computers and cellphones is a drastic measure that is plainly disproportionate to the needs of this case. *See, e.g., Henson v. Turn, Inc.*, No. 15-CV-01497-JSW (LB), 2018 WL 5281629, at *5 (N.D. Cal. Oct. 22, 2018) ("Courts and commentators have recognized that privacy interests can be a consideration in evaluating proportionality, particularly in the context of a request to inspect personal electronic devices."); *Tingle v. Hebert*, No. 15-626-JWD-EWD, 2018 WL 1726667, at *7–8 (M.D. La. Apr. 10, 2018) (finding that "Defendants have also made no showing that the requested forensic examination of Plaintiff's personal cell phone and personal email accounts are proportional to the needs of this case" and holding that "[t]he utility of permitting a forensic examination of personal cell phones must be weighed against inherent privacy concerns") (internal quotations omitted).

Moreover, your request to inspect the Fennemore Employees' personal computers and cellphones not only conflicts with FRCP 45(d)(3)(A)(ii), which protects nonparties from the "disclosure of privileged or protected matters," but the request also runs counter to FRCP 26(b)(2)(B) and well-established caselaw regarding the production of electronically stored information. That is, in 2015, FRCP 26(b)(2)(B) was amended to state that when a subpoena is otherwise proper (which is not the case here), "[t]he responding party may state that it will produce copies of documents or of electronically stored information instead of permitting inspection." "Direct access to a party's database systems is disfavored and has been granted over objection only in extraordinary circumstances." The Sedona Conference, *The Sedona Conference Database*

4823-0543-1455



Latonia Smith
August 12, 2019
Page 4

*Principles Addressing the Preservation & Production of Databases & Database Information in Civil Litigation*, 15 Sedona Conf. J. 171, 195 (2014). Specifically, "inspection or seizure is not permitted unless the moving party can demonstrate that the documents they seek to compel do, in fact, exist and are being unlawfully withheld." *Bethea v. Comcast*, 218 F.R.D. 328, 329–30 (D.D.C. 2003) (internal quotation marks omitted). No such demonstration has been made, and therefore this subpoena request is improper.

Markedly, though litigants have increasingly "sought access to . . . electronic devices to search for evidence, especially for deleted e-mails[,] [t]he federal courts have generally resisted such incursions." *Diepenhorst v. City of Battle Creek*, No. 1:05CV00734, 2006 WL 1851243, at *4 (W.D. Mich. June 30, 2006). As noted in the Advisory Committee Notes to the 2006 Amendment to FRCP 34(a), "[i]nspection or testing of certain types of electronically stored information or of a responding party's electronic information system may raise issues of confidentiality or privacy. . . . Courts should guard against undue intrusiveness resulting from inspecting or testing such systems."

Along with being overbroad and threatening the Fennemore Employees' privacy interests, the personal computer and cellphone requests are also unduly burdensome. FRCP 45(d)(3)(A)(iiii). Personal computers and cellphones are tools that people employ to coordinate and plan nearly every action they take. These electronic devices are not only essential to an individual's personal life, but they are also essential to a person's professional life—particularly for attorneys. Requiring the Fennemore Employees to relinquish their personal computers and cellphones "for forensic examination by a forensic expert" would result in the Fennemore Employees losing access to their electronic devices for an extended period of time. As a result, the examination would prevent the Fennemore Employees from performing their professional duties and communicating with their family members, friends, and colleagues. As nonparties, the Fennemore Employees cannot be compelled to endure this undue burden.

Lastly, the information sought from the Fennemore Employees' personal computers and cellphones implicates information protected by the attorney-client privilege and the attorney work-product doctrine. "The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice, as well as an attorney's advice in response to such disclosures." *In re Grand Jury Investigation*, 974 F.2d 1068, 1070–71 (9th Cir. 1992). Regarding the attorney work-product doctrine, FRCP 45, the rule that primarily focuses on protecting nonparties' interests during discovery, also safeguards "privileged and other protected matters," including information that is "privileged or subject to protections [such] as trial preparation material." FRCP 45(c)(3)(iii); FRCP 45(d)(2)(A). Equally troubling, providing carte blanche access to the Fennemore Employees' personal computers and cellphones also infringes on the privacy of countless Fennemore clients and implicates their rights under the attorney-client privilege. Fennemore will not—under any circumstances—betray their clients' trust.

4823-0543-1455



Latonia Smith
August 12, 2019
Page 5

### B.    Request for Production of Documents

Like your request to examine the Fennemore Employees' personal computers and cellphones, your request for documents reflecting Fennemore's interoffice correspondence, as well as correspondence between the Fennemore Employees and CEC, PHWLV, or any CEC entity, related to Ms. Smith and Ms. Peruzar is also substantively defective. As discussed above, if the Fennemore Employees have any interoffice correspondence, or any correspondence between themselves and CEC, PHWLV, or any CEC entity, related to Ms. Smith and Ms. Peruzar, that correspondence is protected by both the attorney-client privilege and the attorney work-product doctrine. The Federal Rules are clear: the requested information is unquestionably outside the bounds of discovery. FRCP 45(d)(3)(A)(iii) ("On timely motion, the court for the district where compliance is required *must* quash or modify a subpoena that: . . . (iii) requires disclosure of privileged or other protected matter[s]. . . .") (emphasis added).

Fennemore further objects to the correspondence requests because they are overbroad, unduly burdensome, posed solely for the purposes of harassment, and unlikely to lead to the discovery of admissible evidence. When determining whether a subpoena is unduly burdensome, courts weigh the "burden to the subpoenaed party against the value of the information to the serving party." *Sci. Games Corp. v. AGS LLC*, No. 2:17-cv-00343-JAD-NJK, 2017 WL 3013251, at *2 (D. Nev. July 13, 2017) (quoting *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005) (granting defendant's subpoena to nonparty on relevance, overbreadth, and undue burden grounds)). Here, the undue burden the Subpoenas place on the Fennemore Employees—*who are nonparties*—greatly outweighs the issuing party's needs for the reasons set forth above.

### C.    Depositions of the Fennemore Employees

Your request to depose the Fennemore Employees is overbroad, unduly burdensome, intrusive, and largely irrelevant to the underlying litigation. Indeed, many of the Fennemore Employees have limited personal knowledge on the issues underlying this dispute. Even more so, you issued the Subpoenas prior to directly engaging in discovery with Fennemore. *See Sherrill v. DIO Transp., Inc.*, 317 F.R.D. 609, 615 (D.S.C. 2016) ("[i]f documents [or information] are available from a party, it is preferable to have them obtained under the rule governing production of documents [and information] belonging to a party rather than subpoenaing them from a nonparty witness").

Further, though the Subpoenas fail to disclose the proposed topics for the requested depositions—adding to their overbroad nature—from the electronically stored information requests and the document production requests, it appears that you intend to question the Fennemore Employees on topics that include CEC, PHWLV, Ms. Smith, and Ms. Peruzar. Again, this information is unequivocally protected by the attorney-client privilege. As explained above, to the extent the privileged communications you seek are Fennemore's privilege, Fennemore asserts now and continues to assert that privilege. And to the extent you seek privileged communications that belong to Fennemore's clients, it is *not* Fennemore's or the Fennemore



Latonia Smith
August 12, 2019
Page 6

Employees' privilege to waive. Put simply, the privilege belongs to CEC and PHWLV. Fennemore and the Fennemore Employees will not breach their ethical obligations by disclosing privileged information. *See* NRPC 1.6; *State Comp. Ins. Fund v. Drobot*, 192 F. Supp. 3d 1080, 1115 (C.D. Cal. 2016) ("The duty of loyalty to an existing client is so important, so sacred, so inviolate that not even by withdrawing from the relationship can an attorney evade it.").

As demonstrated by the analysis above, if this dispute comes before the Court, the Federal Rules and binding legal precedent wholly support the Court quashing or modifying the Subpoenas due to their extensive substantive defects.

### D. Inspection of Fennemore's Offices

As with the foregoing requests, your wholesale request to inspect Fennemore's offices in Las Vegas, Nevada and Reno, Nevada is overbroad, unduly burdensome, and entirely irrelevant to this litigation. Not only are the Subpoenas improperly silent on the contours of your proposed inspections, but you also seek to inspect Fennemore's offices during business hours, which is absolutely disproportionate to the needs of this case. Similarly, the inspection of Fennemore's offices could implicate privileged and work product materials and is objected to on that basis as well. As such, absent a court order, Fennemore will not allow the proposed office inspections to move forward.

## II. PROCEDURAL DEFECTS

In addition to suffering from substantive defects, the Subpoenas also suffer from procedural defects. First, in regard to Shawna Braselton, Wade Beavers, Shannon Pierce, Leslie Bryan Hart, and Janice Procter-Murphy, the Subpoenas violate FRCP 45(c)(1)(A). That is, the foregoing Fennemore Employees reside in and are employed at a location more than 100 miles from 400 S. 7th St., Suite 400, Las Vegas, NV 89101.

Second, the Subpoenas violate FRCP 45(b)(1). Under FRCP 45(b)(1), "if the subpoena requires that person's attendance, [the serving party is required to tender] the fees for 1 day's attendance and the mileage allowed by law." As of the date of this correspondence, the Fennemore Employees have neither received fees for one day's attendance nor fees for mileage. Additionally, as of this letter's date, several Fennemore Employees have not been served in accordance with FRCP 45(b)(1), which requires delivery of a copy of the subpoena to the named person. Merely mailing the documents to Snell & Wilmer is insufficient to effectuate service, and this letter in no way waives your obligations to properly serve all individuals subject to the Subpoenas. Given these procedural defects, on a timely motion from Fennemore, the Federal Rules require the Court to quash the Subpoenas.



Latonia Smith
August 12, 2019
Page 7

### III. SANCTIONS & ATTORNEYS' FEES

"The Ninth Circuit has long held that nonparties [like the Fennemore Employees] subject to discovery requests deserve extra protection from the courts." *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 2012 WL 4846522, at *4 (N.D. Cal. Aug. 7, 2012). This is because "nonparty witnesses are powerless to control the scope of litigation and discovery." *United States v. CBS, Inc.*, 666 F.2d 364, 371–72 (9th Cir. 1982). Accordingly, FRCP 45 provides that a court ***must*** impose sanctions if it finds a party misuses the discovery process and fails to take reasonable steps to avoid imposing an undue burden on a non-party. FRCP 45(d)(1); *see also NCAA*, 2012 WL 4846522, at *4 ("Rule 45 imposes a ***mandatory responsibility*** on this court to protect nonparties from unduly burdensome discovery") (emphasis added).

Further, the Ninth Circuit has held "the court has discretion over the type and degree of sanction imposed," and "***[p]ayment of opposing counsel's attorneys' fees is one form of permissible sanction***." *Mount Hope Church v. Bash Back!*, 705 F.3d 418, 425 (9th Cir. 2012) (citation omitted) (emphasis added). Notably, "[a] court may . . . impose sanctions when a party issues a subpoena in bad faith, for an improper purpose, or in a manner inconsistent with existing law." *Id.* at 428 (citing *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 814 (9th Cir. 2003)).

### IV. MEET & CONFER

To avoid judicial intervention, which would include a request by us for sanctions and an award of attorneys' fees, we would like the opportunity to meet and confer with you telephonically on the matters discussed above. Our availability is as follows:

- Monday, August 12th between 1:00 p.m. and 4:00 p.m.;
- Tuesday, August 13th between 9:00 a.m. and 11:00 a.m. and 2:30 p.m. and 6:00 p.m.; and
- Wednesday, August 14th between 9:00 a.m. and 12:00 p.m.

Finally, the foregoing is not an exhaustive list of the Subpoenas' substantive and procedural defects. If we are unable to reach a resolution, and you do not withdraw the Subpoenas and vacate the depositions of the Fennemore Employees, we will move forward with a motion to quash under FRCP 45(d)(3) and a motion for a protective order under FRCP 26(c)(3).

To be clear, absent a court order, the Fennemore Employees will not appear for the noticed depositions, forensic examinations, or document productions at the dates and time referenced in your Subpoenas, and Fennemore will not grant access for the proposed office inspections. We therefore suggest that you take whatever steps are necessary to reduce the expense you may incur by having reserved those dates.



Latonia Smith
August 12, 2019
Page 8

   I look forward to speaking with you on these meet-and-confer issues.

               Very truly yours,

               Snell & Wilmer

               Alex L. Fugazzi

ALF
cc: *Riley Clayton, Esq., counsel for CEC and PH.*

4823-0543-1455

NEOPOST
08/12/2019
US POSTAGE $001.15
FIRST-CLASS MAIL
ZIP 89169
041M11455803

**Snell & Wilmer**
L.L.P.
LAW OFFICES
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169

*To:*

Latonia Smith
9748 Canyon Landing Avenue
Las Vegas, NV 89116