RILEY A. CLAYTON
Nevada Bar No. 005260
rclayton@lawhjc.com

**HALL JAFFE & CLAYTON, LLP**
7425 PEAK DRIVE
LAS VEGAS, NEVADA 89128
(702) 316-4111
FAX (702)316-4114

Attorneys for Non-Parties,
Samantha Radak, Deborah Gianini

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEVADA

| | |
|---|---|
| LATONIA SMITH,<br><br>           Plaintiff,<br><br>vs.<br><br>FENNEMORE CRAIG,<br><br>           Defendants. | CASE NO.:  2:19-cv-00824-GMN-JDA<br><br>**NON-PARTY WITNESSES, SAMANTHA RADAK'S AND DEBORAH GIANINI'S, REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO QUASH SUBPOENAS (ECF 59)** |

Non-Party witnesses, Samantha Radak and Deborah Gianini (collectively referred to as "Deponents"), hereby submit this Reply to Plaintiff's Opposition to Motion to Quash Subpoenas. As set forth below and as otherwise indicated in Deponents' related Opposition to Motion to Compel (ECF 58), which is incorporated in full by this reference, Plaintiff's Opposition (ECF 59) does nothing to advance her position because the information sought is: (1) protected by a Settlement Agreement, which prevents Plaintiff from interacting with at least one of the Deponents; (2) unduly burdensome and harassing; (3) protected by the attorney-client privilege and work-product doctrine; (4) not relevant nor proportional to the needs of the case. Therefore, Deponents' Motion to Quash should be granted.

### MEMORANDUM OF POINTS AND AUTHORITIES

**I.  FACTUAL BACKGROUND**

Plaintiff dedicates the first three pages of her Opposition to conveying a version of this case that is inaccurate and one-sided. (ECF 59, p. 2-4). Because the Court is now intimately familiar with the facts of the case, however, a point by point response to Plaintiff's "Factual Background" is not necessary

here. If anything, Plaintiff's "Factual Background" only supports the Deponents' Motion to Quash because it demonstrates the interrelatedness of the two pending federal lawsuits filed by Plaintiff (*Smith v. Caesars Entertainment Corp., PHWLV LLC, dba Planet Hollywood Resort and Casino, Ethan Thomas, and Shannon Pierce*, Case No. 2:19-cv-00856-GMN-JDA) (the "PHW Lawsuit") and instant lawsuit (the "Fennemore Lawsuit."), and supports the conclusion that the cases need to be consolidated for discovery purposes. Indeed, Plaintiff admits as much by stating: "The inextricable linkage between Mrs. Peruzar and Ms. Smith concerning background facts comes as a result of the defendants, themselves, who used Plaintiff as another pawn in their attempts to fire Mrs. Peruzar and prevent her from being reinstated." (ECF 59, 2:16-18). Suffice it to say that although Deponents may agree that Mrs. Peruzar was terminated from her employment, the Deponents otherwise disagree with the remainder of Plaintiff's "Factual Background".[1]

Likewise, the Deponents disagree with the inaccurate portrayal of the "meet and confer" between the Deponents' counsel and Plaintiff – inaccuracies that Plaintiff litters throughout her Opposition. (*See, e.g.*, ECF 59, 4:17-28; 8:20-27; 9:4-14; 11:20-21). For instance, Plaintiff suggests that Deponents counsel "had no idea what was going on" when, in fact, the opposite is true. Because Deponents counsel also represents the Caesars Entertainment Corp.; PHWLV, LLC; and Ethan Thomas ("PHW Defendants") in the PHW Lawsuit, he has been monitoring the related case – so much so that he joined the motion to consolidate the instant case with the PHW Lawsuit, and has even pointed out how interrelated the two cases are. (ECF 44). Moreover, during the "meet and confer," counsel for Deponents tried in good faith, as he is obligated to do under LR II 26-7, to avoid a discovery motion, attempted to secure reasonable accommodations in terms of dates and times from Plaintiff regarding the need to obtain the requested documents, review them for privilege, prepare the privilege log, prepare the witnesses for their depositions in light of the potential privileges available to them, and otherwise respond to the subpoena in a fair, complete, and reasonable fashion but Plaintiff would have nothing to do with such a request. (ECF 44, Exh. "A"). Rather, the true nature of the "meet and confer" discussion

---

[1] Indeed, as the Deponents pointed out in their Motion to Quash (ECF 44, 2:24-28), Plaintiff's pending cases "start with Plaintiff's mother's, Annecer Peruzar's, termination from her employment after she allegedly misappropriated money of a guest at the hotel, and ends with Plaintiff's and her mother's misguided and improper attempts to retaliate against the defendants."

2

1 was, unfortunately, nothing short of Deponents proposing alternatives, but Plaintiff flatly rejecting every
2 point raised by Deponents without any potential willingness to engage in a reasonable "give and take."
3 *Id.* Indeed, because there was seemingly no interest or willingness on Plaintiff's part to work out a
4 reasonable and workable solution in light of the concerns raised by the Deponents, the only option
5 available to them was to file the instant Motion to Quash. *Id.* For that reason, Deponents cannot leave
6 Plaintiff's representations unchallenged, but must, instead, set the record straight concerning what took
7 place in the "meet and confer."

8 At the end of the day, the objections raised by the Deponents are well-grounded in fact and in
9 law, and ultimately support the conclusion that their Motion to Quash should be granted. Although
10 Plaintiff may disagree with the Deponents' position, the Deponents have, nevertheless, timely and
11 properly preserved their objections, and have now sought protection from the Court so that discovery, if
12 warranted and not otherwise stayed, may move forward consistent with the protections afforded to non-
13 parties under the Federal Rules.

**II.   LEGAL ARGUMENT**

   **A.   The Settlement Agreement Precludes Plaintiff From Interacting With Ms. Radak, Thereby Making Her Subpoena Void.**

Plaintiff argues that she can move forward with the deposition of Deponent Radak despite the fact that she voluntarily entered into an agreement, which precludes her from engaging **in any contact** with Deponent Radak, whatsoever. (ECF 44, Exh. "F"; ECF 48, Exh. "F"). Pursuant to the terms of the Settlement Agreement, Plaintiff has agreed to stay away from Deponent Radak through December 1, 2019, and to not contact her directly, or by an agent. *Id.* Yet despite that agreement, Plaintiff has violated it by serving the subpoena upon Deponent Radak, which seeks her personal presence at the deposition. *Id.* In fact, Plaintiff seems to argue that the very consideration and fundamental purpose of the Settlement Agreement, which precludes Plaintiff from engaging in any contact with Deponent Radak, should be ignored because that provision, purportedly, contravenes state law. (ECF 59, 5:10-16). In support of her position, Plaintiff erroneously relies upon Paragraphs 10 and 13 of the Settlement Agreement, which state:

   10.   Governing Law: The Agreement shall be governed by the laws of the State of Nevada, without any regard for any choice of law provision therein.

3

> \* \* \*
>
> 13. <u>Severability</u>: In the event that any provision hereof becomes or is declared by a court of competent jurisdiction to be illegal, unenforceable or void, this Agreement shall continue in full force and effect without said provision as long as the remaining provisions remain intelligible and continue to reflect the original intent of the parties.

(ECF 44, Exh. "F"; ECF 48, Exh. "F").

Conspicuously absent from Plaintiff's Opposition is any citation to any Nevada case, which purportedly invalidates Plaintiff's voluntary agreement to refrain from contacting Ms. Radak and PHWLV, LLC. (ECF 59). To the contrary, Nevada law routinely enforces restrictions on persons from contacting or coming within certain distances of other persons, thereby making the "no contact" provision of the Settlement Agreement enforceable and otherwise fully consistent with Nevada law. *See e.g.,* NRCP 65 (allowing for temporary restraining orders or injunction where there is no adequate remedy at law and the party would be exposed to irreparable harm).

Moreover, even if the "no contact" provision of the Settlement Agreement were, somehow, unenforceable and inconsistent with Nevada law (which it is not), the Severability provision does not support Plaintiff's position here. Indeed, the **very essence** of the Settlement Agreement was that Plaintiff would not engage in any contact with Deponent Radak. (ECF 44, Exh. "F"; ECF 48, Exh. "F"). Importantly, there was no payment of money or other consideration exchanged between the parties in connection with the Settlement Agreement; rather, the primary consideration given by Plaintiff in exchange for the dismissal of the lawsuit was Plaintiff's agreement to refrain from contacting Deponent Radak and the PHW Defendants through December 1, 2019. *Id.* Thus, the Severability provision, by its own terms, does not apply because removing the "no contact" provision would eviscerate the consideration exchanged, and does not "reflect the original intent of the parties," which is the only situation in which the Severability may apply. *Id.* Therefore, contrary to Plaintiff's unsupported position, the Settlement Agreement actually protects, at the very least, Deponent Radak from being forced to respond to the subpoena, at least until the expiration of the "no contact" period, i.e, December 1, 2019.

Plaintiff cannot have it both ways – accept the terms and conditions of the Settlement Agreement on the one hand, and then reject those very terms when they are not convenient for her. Such selective

4

application of the Settlement Agreement should not be rewarded here; rather, this Court should agree that the Motion to Quash should be granted.

### B. Plaintiff Cannot Legitimately Argue That The Pending Motions To Consolidate, Motions to Dismiss, And Motions To Stay Discovery Must Be Disregarded In Favor Of Her Moving Forward With Her Subpoenas.

The Deponents have pointed out that the PHW Lawsuit and the Fennemore Lawsuit both include pending motions, which, once decided, would greatly impact Plaintiff's ability to move forward with her intended discovery. (ECF 44, p. 8). The defendants in the PWH Lawsuit have, likewise, pointed out the identical factual and legal issues that support both cases, and why consolidation would be warranted, at least for discovery purposes, and how consolidation for discovery purposes would promote "economy of time and effort" for the Court, counsel, and the litigants, and significantly diminish the likelihood of confusion and delay. (ECF 44, pp. 8-9). As a basis for quashing the subpoenas, the Deponents submit that it would be an undue burden on them to submit to depositions while dispositive motions and motions to consolidate are pending, which, if granted, would eliminate the depositions altogether, or at the very least, avoid having the Deponents submit to two depositions. *See e.g.,* Fed. R. Civ. P. 45(d)(3)(A); and *see generally, Playstudios, Inc. v. Centerboard Advisors, Inc.,* 2019 WL 1995326, *2 (D. Nev. 2019)(citing the general rule that a court can quash a subpoena if it is unduly burdensome, which depends upon the facts of the specific case).

In her Opposition, however, Plaintiff ignores the practical realities and procedural posture of these cases, and the potential impact on discovery that would necessarily occur if any or all of these pending motions are granted in the Defendants' favor. (ECF 59). Instead of addressing those legitimate concerns, Plaintiff implements her tired tactic of lobbing baseless accusations that the collective Defendants, who she claims are attempting to "gain an unfair advantage over Plaintiff in one fell swoop," given the Defendants' "only goal" of improperly seeking to limit discovery. (ECF 59, p. 6). Frankly, the opposite is true, noting that the very protections of which Deponents are availing themselves are found within the very rules under which the subpoenas were propounded. *See e.g.,* Fed. R. Civ. P. 45 ( c); and *Genx Processors Mauritius, Ltd. v. Jackson,* 2018 WL 5777485, *9 (D. Nev. 2018)(holding that a non-party has three options of responding to a subpoena: complying with it; serving a written objection; or moving to quash/modify it); citing *Ir re Plise,* 506 B.R. 870, 878 (9th Cir. 2014); *Forsythe*

*v. Brown*, 281 F.R.D. 577 (D. Nev. 2012)(holding that a non-party may respond to a subpoena duces tecum with a written objection). Indeed, there can be no "unfair advantage" when a non-party deponent seeks to preclude a deposition that is unduly burdensome and improperly invades the attorney-client privilege, particularly when the law allows those defenses/objections to be preserved. *Id.*

In support of her position, Plaintiff next argues that the Court "saw fit that discovery should go (sic) proceed." (ECF 59, 7:2-3). Respectfully, although discovery was not initially stayed in the Fennemore Lawsuit, the Court left the door open for a stay of discovery if circumstances warranted. In fact, because that door was left open Fennemore Craig has recently filed its motion to stay discovery pending the outcome of the pending dispositive motions and the other related proceedings. (ECF 19). Therefore, the fact that discovery may not have been stayed at the time Plaintiff issued her subpoenas does not mean that subsequent motions to stay discovery have not been filed and would not be granted, or that motions to stay discovery have not been filed in the related PHW Lawsuit, which will likely be consolidated with the instant lawsuit and granted at that time.

Plaintiff next argues that the Deponent's claim of "undue burden" is, merely, "hypothetical" because the pending motions to consolidate and/or dismiss have not been decided. (ECF 59, p. 7). Respectfully, the "undue burden" that Deponents have been subjected to is real and palpable. As the cases are postured, there is nothing preventing Plaintiff from issuing subpoenas on the Deponents in the PHW Lawsuit. Moreover, because the PHW defendants are not yet consolidated parties to the Fennemore Lawsuit, PHW's counsel is precluded from participating in the upcoming depositions of Fennemore employees, Attorney Bowen and Attorney Trout, thereby giving Plaintiff the unfair advantage. Further, the costs associated with filing two motions to quash, preparing the Deponents twice, and having them leave their places of employment for depositions twice, is real and legitimate, and exposes the undue burden imposed upon the Deponents, particularly when these legitimate concerns can be resolved through consolidation of the cases, at least for discovery purposes. Therefore, given the real (and not "hypothetical") undue burden placed on the Deponents, the PHW defendants, and their counsel in this case, this Court should agree that the subpoenas should be quashed, or at least modified pending the outcome of the motion to consolidate and motions to stay discovery.

6

1    Finally, Plaintiff argues that a purported "conflict of interest" should not serve as a basis to
2    prevent the depositions from going forward merely because Deponents retained the same counsel as the
3    PHW Defendants. (ECF 59, p. 7). This confusing argument should be rejected because: (1) there is no
4    "conflict of interest"; and (2) the purported "conflict" is due to Plaintiff filing two separate lawsuits even
5    though they are factually and legally intertwined.

6    Initially, it is important to point out that Plaintiff cites to no legal authority or Rule of
7    Professional Conduct, which would support her position that a "conflict of interest" exists by having the
8    same counsel represent the Deponents and the PHW Defendants in the related case. Indeed, there is
9    none. Here, the interests of the Deponents and PHW are perfectly aligned in all aspects. Secondarily,
10   the purported "conflict" that exists here, assuming it can be labeled as such, is counsel's inability to
11   participate in discovery in the Fennemore Lawsuit because his clients are not parties in the Fennemore
12   Lawsuit (at least until consolidation occurs). Instead, the Deponents are non-parties, and the PHW
13   Defendants were not sued in the Fennemore Lawsuit. Thus, whether by strategy or luck, Plaintiff has
14   placed the PHW Defendants and the Deponents at a distinct, legal disadvantage by filing separate
15   lawsuits, and then seeking discovery in the lawsuit in which the PHW Defendants' and Deponents'
16   counsel could not participate. Thus, because Deponents/PHW Defendants are placed at an unfair
17   disadvantage given the two related but separately filed lawsuits, this Court should agree that the
18   depositions should not go forward, at least until the motion to consolidate has been considered and
19   whether discovery, as a whole, should move forward in light of the pending dispositive motions.

**C.     Plaintiff Rejected Any Overture Of Providing A Reasonable Time For Deponents To Gather Documents, Review Them For Privilege, Prepare A Privilege Log And Then Prepare the Deponents For Their Depositions, Thereby Creating An Unreasonable And Undue Burden That Should Be Rectified.**

Plaintiff has issued subpoenas that, on their face, require discovery of materials and information that is protected by the attorney-client privilege and work-product doctrine. Deponents, as the holders of the attorney-client privilege, **have validly asserted the those privileges protections**, and are not waiving them here. *Montgomery v. eTreppid Technologies, LLC*, 548 F.Supp.2d 1175, 1177 (D. Nev. 2008)("Only the holder of the attorney-client privilege may waive it.") However, in order to comply with Plaintiff's subpoenas while maintaining attorney-client privilege, Deponents must, necessarily, collect

7

1    and review nearly two years worth of communications among multiple parties in order to determine
2    which, if any, subpoenaed materials may be produced and which are subject to attorney-client privilege
3    or work-product doctrine, and must be identified in a privilege log.  Because the Deponents were
4    involved in the underlying/related *PHW/Peruzar* matters, Deponents generally understand that the
5    majority of materials sought are likely subject to the privileges, and that the subpoenas should be
6    quashed on that basis.  Still, to the extent that documents and testimony are compelled, Deponents
7    would require significantly more time than 14 days as afforded under the subpoenas in which to respond
8    so that they can adequately protect their interests.  That is exactly what was communicated to Plaintiff
9    during the "meet and confer" (ECF 44, Exh. "A", p. 4) – a reasonable arrangement that Plaintiff flatly
10   rejected. (ECF 59, p. 9).  Thus, the Deponents were left with no choice but to seek protection under the
11   Rules by pointing out the various objections, which establish why the subpoenas must be quashed or
12   significantly limited.

13   Moreover, the cases cited by Plaintiff suggesting that one week, eight days, or even fourteen days
14   is, somehow, sufficient time for Deponents to produce documents and provide testimony given the
15   unique context/posture of this case, particularly where the Deponents have timely filed a motion to quash
16   the subpoenas, simply do not apply here given the vast differences between the instant case and the facts
17   of the cases she cites. *See e.g., Paige v. Commissioner,* 248 F.R.D. 272, 275 (C.D. Cal. 2008)(holding
18   that 14 days may be a reasonable time in a situation where the plaintiff/deponent first did not timely file
19   a motion for protective order and counsel otherwise engaged in a non-cooperative meet and confer);
20   *Jones v. United States*, 720 F. Supp. 355, 366 (S.D. N.Y. 1989)(the deponent in that case, a treating
21   doctor, did not object to the eight day's notice); and *In re Sulfuric Acid Antitrust Litigation,* 231 F,R. D.
22   329, 327 (N.D. Ill. 2005)(the court actually held that 10 day notice **was not a reasonable time** to
23   conduct depositions of persons whose identities were known throughout discovery but only noticed for
24   deposition two weeks before the close of discovery).  Therefore, this string of legal authority does not
25   support Plaintiff's position and should be rejected.

26   Here, Deponents have timely issued written objections, timely filed their motion to quash, and
27   have otherwise articulated, in detail, the facts and reasons why the time frame unilaterally imposed by
28   Plaintiff to conduct the depositions is unreasonable.  As drafted, Plaintiff's subpoena is exceedingly

8

broad, seeking "all" correspondence regarding Plaintiff or her mother, and clearly intending to elicit information that is not relevant or proportional to the needs of the case in the context of this litigation. Specifically, Plaintiff's subpoenas seek information from October 31, 2017, the time of the events giving rise to the termination of Plaintiff's mother up to, essentially, the present day. Because of the fact the subpoenas failed to allow Deponents a reasonable time to comply, thereby placing an undue burden on Deponents, the Motion to Quash should be granted.

Plaintiff argues that it is improper for Deponents to claim the attorney-client privilege and work product doctrine because Deponents' counsel has not yet seen the documents. It is true that Deponents' counsel is only recently coming into the *Smith/Peruzar/PHW* line of cases, and now, even more recently, the Fennemore Lawsuit, whereas Plaintiff has been living and breathing this matter since October 2017. Thus, the Court would not reasonably expect new counsel to have all of the documents and other information at his immediate disposal, particularly where the *Smith/Peruzar/PHW* matters were being handled by different counsel. Thus, it is reasonable and proper for Deponents counsel to claim these privileges without first having seen all of the documents, which, contrary to Plaintiff's assertions, is not as "perplexing" a proposition as she contends. (ECF No. 49, 8:19-21). For that reason, the Deponents would legitimately need additional time to sort through all of these documents and determine how the attorney-client privilege and work product doctrine would specifically apply. Unfortunately, during the "meet and confer" Plaintiff failed to grant a reasonable extension of time to allow Deponents to conduct this process, leaving Deponents with no other alternative but to file the Motion to Quash. In all candor, the requests are likely not proportional to the needs of this case and fee-shifting may be warranted.

Moreover, Plaintiff inaccurately portrays what occurred during the "meet and confer" by arguing that Plaintiff asked defense "multiple times to confirm that if Plaintiff agreed to an open extension of time, documents would be produced." (ECF 59, 9:4-7). What Plaintiff conveniently omits from this representation, however, is the key position taken by Deponents' counsel during the "meet and confer": i.e., that even with an extension, not all documents would be produced if such documents were protected by the attorney-client privilege or work-product doctrine. In response to that position, Plaintiff argued that the "crime and fraud" exception eliminated the application of the attorney-client privilege altogether, thereby, again, leaving the Deponents with no alternative but to bring the Motion to Quash.

(ECF 44, Exh. "A", p. 3). Thus, Plaintiff's representation that she "never disagreed to providing counsel more time to produce the requested documents" (ECF 59, 9:12-16) is, respectfully, disingenuous, and should not preclude the Deponents from timely and properly asserting their objections and seeking protection from this Court. Thus, Deponents Motion to Quash should be granted.

### D. Plaintiff's Reliance On The Crime And Fraud Exceptions To The Attorney Client Privilege Are Misplaced And Should Be Rejected.

Plaintiff does not hide the fact that she is seeking attorney-client and work-product protected information through her subpoenas, (ECF 59, 9:24-26), but claims that such information should be produced because of the "crime-fraud" exception. *Id.* In light of the foregoing, it is clear that Plaintiff is attempting to penetrate the attorney-client privilege and work-product doctrine through her examination of Deponents regarding those communications – privileges that Deponents (and the PHW defendants) intend to preserve and not waive. *See e.g., Casun Invest, A.G. v. Ponder*, 2019 WL 2358390, *6 (D. Nev. 2019)(quashing subpoenas because the information sought was "likely protected from disclosure by the attorney-client privilege and work-product doctrine.")

It is true that the crime-fraud exception may provide that attorney-client privilege ceases to operate when the desired legal advice concerns not prior, but future, wrongdoing. *U.S. v. Zolin*, 491 US 554, 562-563, 109 S. Ct. 2619, 2626 (1989). The purpose of the crime-fraud exception is to assure that the "seal of secrecy," between lawyer and client does not extend to communications "made for the purpose of getting advice for the commission of a fraud or crime. *Id.* A party alleging that the crime-fraud exception applies, however, must (i) show that the client was engaged in or planning a criminal or fraudulent scheme when it sought the advice of counsel to further that scheme, and (ii) demonstrate that the attorney-client communications for which production is sought are 'sufficiently related to' and were made 'in furtherance of [the] intended, or present, continuing illegality.' *Lewis v. Delta Airlines, Inc.*, 2015 WL 9460124, *2 (D. Nev. 2015)(citations omitted). In civil actions, where outright disclosure of the attorney-client communication is sought, as is the case here, the party asserting the crime-fraud exception has the burden of proving that the exception applies by a preponderance of the evidence. *Id.*

Plaintiff has failed to prove, at all, and certainly not by a preponderance of the evidence, that the crime-fraud exception applies here. In fact, Plaintiff even concedes as much in her Opposition. (ECF

10

59, 10:7-8 "[E]ven if defense's arguments [that the crime-fraud exception] were considered, conclusory allegations of a privilege is insufficient. . ."). [2] Notably, Plaintiff has cited no evidence in her Opposition to establish the application of the crime-fraud exception under *Lewis v. Detla, supra.* (ECF 59). Instead, Plaintiff relies upon her Motion to Compel (ECF 43), which the Deponents have already debunked. (ECF 58, pp. 8-9). For instance, although Plaintiff asserted in her Motion to Compel that she has provided "evidence" that the Deponents, with the help of Fennemore Craig, intended to commit fraud/crime, including the fabrication of evidence that was then used to target Plaintiff through use of the judicial system (ECF No. 43, 5:27-6:5), Plaintiff does not specify the nature of this purportedly fabricated evidence, nor does she (nor could she) indicate how such evidence was purportedly used to target her through use of the judicial system. *Id.* To the contrary, Plaintiff's bald allegations compared with the actual evidence already in existence establish that Plaintiff was the one harassing Deponent Radak and others, through use of the judicial system, as she continues to do. Indeed, the Settlement Agreement confirms this exact point. (ECF 44, Exh. "F", Exh. 48). Therefore, because Plaintiff has failed to establish an exception to the attorney-client privilege, Deponents Motion to Quash should be granted.

### E. Plaintiff Seeks Irrelevant Information That Is Disporportionate To The Needs Of The Case; Thus, The Subpoenas Should Be Quashed.

Plaintiff baldly argues that the information she seeks is relevant and proportional to the needs of the case. (ECF 59, p. 11). In reality, the information she seeks would serve no other purpose than to obtain information in support of her mother's related case, or if not, serve to only confirm information that she can obtain directly from her mother. As this Court is aware, Plaintiff's mother's termination is the subject of an ongoing lawsuit. Here, the circumstances supporting or negating Plaintiff's mother's termination are not relevant and, to the extent they may be minimally relevant, discovery on this issue

---

[2] Plaintiff cites to various cases, including *Holifield v. U.S.,* 909 F.2d 201 (7th Cir. 1990); *U.S. v. Lawless,* F.2d 485 (7th Cir. 1983); *U.S. E.E.O.C v. Caesars Enter.,* 237 F.R. D. 428 (D. Nev. 2006); *Phoenix Solutions Inc. v. Wells Fargo Bank, N.A.,* 254 F. R. D. 568 (N.D. Cal. 2008) for the general propositions that discovery may be had on any information that is reasonably calculated to lead to the discovery of admissible evidence, and that "blanket assertions" of the attorney-client privilege do not apply. Notably, these cases were decided before the Federal Court adopted the new changes to discovery based upon proportionality, thereby making them distinguishable. Moreover, the Deponents are not making "blanket objections" based upon attorney-client privilege in a vacuum, rather, the Plaintiff is unabashedly forthcoming in her desire to probe deeply into such privileged communications, arguing that the crime-fraud exception applies. Thus, the so-called "blanket" objection applies to Plaintiff's transparent intent to uncover privileged information.

does not comport with the requirement that discovery be proportional to the needs of the case:

> In addition to clarifying the standard for relevance, the drafters of the 2015 amendments also expressly provided that the scope of discovery must be defined in relation to the concept of proportionality. "**Relevancy alone is no longer sufficient–discovery must also be proportional to the needs of the case.**" *Bard IVC*, 317 F.R.D. at 564. **To fall within the purview of appropriate discovery, the information sought must also be proportional to the needs of the case, including consideration of the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweigh its likely benefit**. Fed. R. Civ. P. 26(b)(1). Proportionality focuses on the marginal utility of the discovery being sought. In re *Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 180 F. Supp. 3d 273, 280 n.43 (S.D.N.Y. 2016). At bottom, proportionality is a "common-sense concept" that should be applied to establish reasonable limits on discovery. *See, e.g., Sprint Comm's Co. v. Crow Creek Sioux Tribal Court*, 316 F.R.D. 254, 263 (D.S.D. 2016).

*Guerro v. Wharton*, 2017 WL 7314240, *2 (D. Nev. 2017). (Emphasis added.) In this case, Plaintiff is seeking broad discovery that is not relevant to the claims she is asserting. Her allegations generally concern her mother's litigation and events that follow from that litigation, not the underlying termination of her mother that gave rise to her mother's litigation. There is no reason for Plaintiff to re-investigate the termination of her mother in pursuing her own claims that allegedly arise from subsequent events. Thus, the limited, if any, relevance of the discovery sought in relation to resolving the issues before this Court in this litigation is vastly outweighed by the burden imposed upon Deponents and its lack of proportionality. Therefore, the Motion to Quash should be granted.

### III. CONCLUSION

Deponents' Motion to Quash should be granted. The subpoenas violate the existing Settlement Agreement; improperly seek information that is protected by the attorney-client privilege and work product doctrine; are unduly burdensome, particularly given the limited time in which to respond; and seek information that is not relevant and not proportional to the needs of the case.

Dated this 17th day of September, 2019.

HALL JAFFE & CLAYTON, LLP

By /s/ Riley A. Clayton
RILEY A. CLAYTON
Nevada Bar No. 005260
7425 Peak Drive
Las Vegas, Nevada 89128
Attorneys for Non-Party Deponents

## CERTIFICATE OF SERVICE

Pursuant to Rule 5(b) of the Federal Rule of Procedure, I hereby certify under penalty of perjury that I am an employee of HALL JAFFE & CLAYTON, LLP, and that on the 17th day September, 2019, the foregoing **NON-PARTY WITNESSES, SAMANTHA RADAK'S AND DEBORAH GIANINI'S, REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO QUASH SUBPOENAS (ECF 59)** was served upon the parties via the Court's CM/ECF e-filing and service program, and via U.S. Mail, addressed as follows, noting that Plaintiff is in proper person:

Latonia Smith
9748 Canyon Landing Ave.
Las Vegas, NV 89166
***Plaintiff in Proper Person***

Alex L. Fugazzi, Esq.
Michael Paretti
SNELL & WILMER, LLP
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
Attorneys for Defendant, Fennemore Craig

_____
An Employee of
HALL JAFFE & CLAYTON, LLP