UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

LATONIA SMITH,

                    Plaintiff,

        v.

FENNEMORE CRAIG,

                    Defendant.

Case No. 2:19-cv-00824-GMN-EJY

**ORDER**

## I.    INTRODUCTION

Presently before the Court is Defendant Fennemore Craig's ("Fennemore" or "Defendant") Motion to Stay Discovery (ECF No. 19); Plaintiff Latonia Smith's ("Smith" or the "Plaintiff") Motion to Compel Attendance at Deposition, Production of Documents, and Forensic Examination (ECF No. 31); Defendant's Emergency Motion to Quash, or in The Alternative, Motion for A Protective Order (ECF Nos. 36, 37); Defendant and the Nonparty Fennemore Employees' Motion to Redact and Seal Documents (ECF No. 38); Plaintiff's Motion for Leave to Add Reply (ECF No. 42); Plaintiff's Motion to Compel Samantha Radak and Deborah Gianini to Attend Deposition and Produce Documents (ECF No. 43); Nonparties Deborah Gianini and Samantha Radaks' Motion to Quash Subpoenas (ECF No. 44); Plaintiff's Motion to Strike Defendant's Reply in Support of Emergency Motion to Quash (ECF No. 50); Nonparties Jerome Bowen and Brandon Trouts' Motion to Quash, or in the Alternative, Motion for Protective Order (ECF No. 52); Plaintiff's Motion to Hold Brandon Trout and Jerome Bowen in Contempt of Court (ECF No. 53); Plaintiff's Motion to Compel Brandon Trout and Jerome Bowen to Attend Deposition (ECF No. 54): and Defendant's Motion to Extend Discovery Deadlines (ECF No. 61).  For the reasons below, Defendant's Motion to Stay Discovery (ECF No. 19) is granted.  All other Motions (ECF Nos. 31, 36, 37, 38, 42, 43, 44, 50, 52, 53, 54, 61) pending before this Court are denied without prejudice as moot.

## II.    FACTUAL BACKGROUND

Plaintiff alleges that when litigating a complaint filed by her mother against Caesars Entertainment Corporation and Planet Hollywood Las Vegas in the Eighth Judicial District Court, various Fennemore attorneys improperly sought temporary protective orders ("TPOs") against Smith on behalf of Fennemore's employees and its clients. These TPOS arose from threats allegedly communicated by Smith to these entities and individuals. ECF No. 1 ¶¶ 7, 34, 43, 85. Obtaining TPOs, together with Smith's highly unusual allegations of improper conduct by Fennemore counsel during the course of state court litigation, form the basis for Smith's instant complaint.

Plaintiff alleges five causes of action against Fennemore including civil conspiracy, slander/slander per se, defamation/defamation per se, intentional infliction of emotional distress ("IIED"), and permanent injunctive relief against Defendant. *Id*. ¶¶ 62-82. In response to the Complaint, Fennemore filed its Motion to Dismiss pursuant to Fed. R. Civ. P. 12 and a Special Motion to Dismiss pursuant to Nevada's Anti-Strategic Lawsuit Against Public Participation ("SLAPP") statute, NRS 41.660. ECF Nos. 10 and 11. Thereafter, Defendant Fennemore moved to stay discovery in this action pending the disposition of its Motions to Dismiss. ECF No. 19.

## III.    DISCUSSION

### A.    Defendant's Motion to Stay

Ordinarily, a dispositive motion does not warrant a stay of discovery. *Tradebay, LLC v. eBay, Inc.*, 278 F.R.D. 597, 601 (D. Nev. 2011). However, a Court may limit discovery for good cause and continue to stay discovery when it is convinced that the plaintiff will be unable to state a claim for relief. *Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981) (citing *B.R.S. Land Investors v. United States*, 596 F.2d 353 (9th Cir. 1978)). Under certain circumstances it is an abuse of discretion to deny discovery while a dispositive motion is pending (*Tradebay*, 278 F.R.D. at 602) and, for this reason, a party seeking a stay of discovery carries the heavy burden of making a strong showing why the discovery process should be halted. *Turner Broadcasting System, Inc. v. Tracinda Corp.*, 175 F.R.D. 554, 556 (D. Nev. 1997). When deciding whether to issue a stay, a court must take a "preliminary peek" at the merits of the dispositive motion pending in the case. *Buckwalter v. Nevada Bd. of Medical Examiners*, No. 2:10-cv-02034-KJD-GWF, 2011 WL 841391, at *1 (D. Nev.

1 March 7, 2011).  In doing so, the court must consider whether the pending motion is potentially

2 dispositive of the entire case, and whether that motion can be decided without additional discovery.

3 *Tradebay*, 278 F.R.D. at 602.

4    After taking a preliminary peek at the pending motions to dismiss, the oppositions to those

5 motions, and the replies, the Court grants Defendant's Motion to Stay Discovery because (1)

6 Plaintiff's Complaint is a SLAPP action; (2) Plaintiff's Complaint fails to state a claim for which

7 relief can be granted; (3) Defendant's motions to dismiss are potentially case dispositive; and (4)

8 Defendant's motions to dismiss can be decided without discovery.

9      **1.  Plaintiff's Complaint Is A SLAPP Action.**

10    "A Strategic Lawsuit Against Public Participation . . . is a meritless suit that seeks to use

11 costly, time-consuming litigation to chill a person's constitutionally protected right to free speech."

12 *Abbey Dental Ctr., Inc. v. Consumer Opinion LLC*, No. 2:15-cv-02069-GMN-PAL, 2017 WL

13 3444695, at *1 (internal citation and quotation marks omitted).  Nevada's Anti-SLAPP statute, NRS

14 41.660, "provides that a defendant may bring a special motion to dismiss within sixty days of the

15 complaint . . .." *Moonin v. Nevada ex rel. Dept' of Public Safety Highway Patrol*, 960 F. Supp. 2d

16 1130, 1146 (D. Nev. 2013).  For an Anti-SLAPP motion to be granted, the court first has to

17 "[d]etermine whether the moving party has established, by a preponderance of the evidence, that the

18 claim is based upon a good faith communication in furtherance of the right to petition . . . in direct

19 connection with an issue of public concern." *Las Vegas Sands Corp. v. First Cagayan Leisure &*

20 *Resort Corp.*, No. 2:14-cv-00424-JCM-NJK, 2016 WL 4134523, at *3 (D. Nev. Aug. 2, 2016)

21 (internal citation omitted).  "The defendant's conduct is a good[] faith communication if it falls

22 within one of the four categories enumerated in NRS 41.637[,] and is truthful or is made without

23 knowledge of its falsehood." *LHF Prod., Inc. v. Kabala*, No. 2:16-cv-02028-JAD-NJK, 2018 WL

24 4053324, *2 (D. Nev. Aug. 24, 2018).  If the moving party demonstrates that its claim is based upon

25 a good faith communication, the "burden then shifts to the plaintiff to establish by clear and

26 convincing evidence a probability of prevailing on the claim." *Id*. (internal citation omitted).

27    Defendant brought its Special Motion to Dismiss pursuant to NRS 41.660 less than sixty

28 days after Plaintiff filed her Complaint.  *Compare* ECF Nos. 1 *and* 10.  Further, the Court's

1  preliminary peek at the Motions to Dismiss shows that Defendant demonstrates, by a preponderance

2  of the evidence, that the Motion to Dismiss is based on good faith communications made in

3  furtherance of Defendant's right to petition the court for redress. That is, Fennemore makes clear

4  that it filed its Anti-SLAPP Motion because "[t]he entire basis for Ms. Smith's Complaint is that

5  Fennemore's Directors and employees, as counsel for Caesars Entertainment Corporation and

6  PHWLV, LLC, made communications to Ms. Smith during the pendency of active litigation,

7  distributed a confidential settlement agreement, and filed '[temporary protective orders] against Ms.

8  Smith in various location,'" all in the course of seeking redress from the Court. ECF No. 19 at 3:10-

9  14. Fennemore's statements to Smith during the pendency of active litigation, distribution of the

10  confidential settlement agreement, and filing of temporary protective orders against Plaintiff, are

11  protected, good faith communications as "[w]ritten or oral statement[s] made in direct connection

12  with an issue under consideration by a . . . judicial body . . . ." NRS 41.637.

13       Further, as discussed below, a review of Plaintiff's Complaint and opposition to this Motion

14  to Dismiss demonstrate Plaintiff fails to establish, by clear and convincing evidence, that she will

15  prevail on the merits of her claims. Accordingly, Plaintiff's Complaint against Fennemore violates

16  SLAPP, and will likely be dismissed. For this reason alone, Defendant's Motion to Dismiss is

17  potentially dispositive of the entire case.

18
19
       **2.    Defendant's Motion Demonstrates that Plaintiff's Complaint Fails to State A Claim Upon Which Relief Can Be Granted.**

20       The Court also took a "preliminary peek" at the merits of Defendant's Motions to Dismiss

21  and finds Defendant has made strong legal arguments that Plaintiff's Complaint fails to state claims

22  upon which relief can be granted. As Defendant demonstrates through its Motions, Smith's

23  Complaint is highly unlikely to survive for six reasons: (1) Fennemore is immune from liability

24  under NRS 41.650; (2) Plaintiff's claims are barred by the absolute litigation privilege; (3) Plaintiff

25  has not pleaded and cannot prove an actionable civil conspiracy; (4) Plaintiff has not pleaded a

26  plausible claim for slander/slander per se or defamation/defamation per se claim; (5) Plaintiff has

27  not pleaded a plausible claim for IIED; and (6) Plaintiff's cause of action for a permanent injunction

28  fails as a matter of law.

4

a.  There is a substantial likelihood that Defendant is immune from liability under NRS 41.650.

Defendant's immunity under NRS 41.650 is intertwined with Defendant's Anti-SLAPP Motion to Dismiss under NRS 41.660. Specifically, NRS 41.650 states that "a person who engages in a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern is immune from any civil action for claims based upon the communication." Relevant to this case, "petition[ing] a court for redress . . . qualifies as good faith communication in furtherance of the right to petition." *Allstate Ins. Co. v. Belsky*, No. 2:15-cv-02265-MMD-CWH, 2017 WL 7199651, at \*3 (D. Nev. Mar. 31, 2017) (internal citation and quotation marks omitted). Here, Defendant is substantially likely to be found immune from liability from all of Plaintiff's claims as each is based on Defendant's activity related to court proceedings (petitioning activity). Accordingly, Plaintiff's claims will likely fail because Defendant is immunized from civil liability for engaging in good faith communications in furtherance of its right to petition the Courts under NRS 41.650.

b.  Defendant's Motion demonstrates that the absolute litigation privilege likely bars Plaintiff's claims.

"The litigation privilege immunizes from civil liability communicative acts occurring in the course of judicial proceedings, even if those acts would otherwise be tortious." *Greenberg Traurig v. Frias Holding Co.*, 331 P.3d 901, 902 (2014). The privilege is absolute, and "precludes liability even where the defamatory statements are published with knowledge of their falsity and personal ill will toward the plaintiff." *Fink v. Oshins*, 49 P.3d 640, 643 (2002). "The scope of the absolute privilege is quite broad . . . it only need be in some way pertinent to the subject of controversy." *Id*. at 644.

Here, it is undisputed that "Fennemore's sole connection to . . . Smith is in its capacity as counsel to Caesars Entertainment Corporation and PHWLV, LLC in a lawsuit brought by . . . Smith's mother against" these entities. ECF No. 19 at 5:9-11, *citing* ECF No. 1 ¶¶ 4, 5-7, 34-35. As Defendant points out, the "subject statements [underlying Plaintiff's Complaint] were either made by Fennemore attorneys acting on behalf of Fennemore's clients[] or Fennemore attorneys or employees acting on their own behalf[] in legal filings or open court." *Id*. at 11:22-24. Specifically,

5

Defendant's "statements are pertinent to [its] requests for an order enjoining . . . Smith from attending case hearings, discovery, and conferences, and an order barring . . . Smith from future proceedings in the litigation instituted by . . . Smith's mother, as well as the individual employees' requests for temporary protective orders." *Id*. at 11:24-28 (internal citation omitted). Even if Defendant called Plaintiff a racial slur as she alleges in her Complaint (ECF No. 1 ¶ 68), the litigation privilege broadly immunizes from civil liability communications occurring in the course of judicial proceedings, including statements made with malice. Accordingly, the Court finds that Plaintiff's claims for relief are based on statements made by Defendant acting in its capacity as counsel on behalf of its clients or on its employees' behalf and, therefore, the litigation privilege will likely bar the entirety of Plaintiff's claims.

        c.        <u>Application of the law to Plaintiff's tort claims demonstrates they will not survive Defendant's Motions to Dismiss</u>.

        i.        *Civil Conspiracy*

"An actionable civil conspiracy consists of a combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another, and damage results from the act or acts." *Consol. Generator-Nevada, Inc. v. Cummins Engine Co., Inc.*, 971 P.2d 1251, 1256 (Nev. 1998) (internal citations and quotation marks omitted). "When two agents of the same legal entity make an agreement in the course of their official duties, however, as a practical and legal matter their acts are attributed to their principal. And it then follows that there has not been an agreement between two or more separate people." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017) (internal citation omitted). These principles, applied to the case at bar, shows that Defendant's Motions to Dismiss with respect to Plaintiff's civil conspiracy claim will succeed because Fennemore is legally incapable of conspiring with itself. *Collins v. Union Fed. Savings & Loan*, 662 P.2d 610, 622 (Nev. 1983).

Plaintiff's civil conspiracy claim also fails to plead sufficient facts, as evidenced by a review of the Motion to Dismiss, to state a claim that is plausible on its face. That is, apart from a conclusory allegation that "defendant(s) intended to accomplish the unlawful objective of intimidating a witness in a current and separate litigation and furthering their defendants' goal of retaliating against Mrs.

Annecer Peruzar," Plaintiff alleges no facts to support this claim. ECF No. 1 ¶ 64. Accordingly, Plaintiff's civil conspiracy claim will likely be granted because Smith fails to plead a plausible claim.

*ii.*     *Slander/Slander Per se and Defamation/Defamation Per Se*

"Defamation is divided into slander, spoken defamation, and libel, written defamation." *Flowers v. Carville*, 292 F. Supp. 2d 1225, 1232 n.1 (2003) (citing Restatement (Second) of Torts § 568). To establish a prima facie claim of defamation under Nevada law, a plaintiff must allege "(1) a false and defamatory statement of fact by the defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages." *Pacquiao v. Mayweather*, 803 F. Supp. 2d 1208, 1211 (D. Nev. 2011). To establish a case of slander per se or defamation per se in Nevada, the plaintiff must allege (1) that the plaintiff committed a crime, (2) that the plaintiff has contracted a loathsome disease, (3) that a woman is unchaste, or, (4) the allegation must be one that would injure the plaintiff's trade, business, profession or office. *Branda v. Sanford*, 637 P.2d 1223, 1225 (Nev. 1981).

In her Complaint, Plaintiff alleges that the Defendant made unprivileged, false and defamatory statements about her, including, but not limited to, "accusing her of the crimes of stalking, harassment, aggravated stalking, sending threatening messages, calling her . . . [the n-word], . . . calling her a 'schizophrenic' to several third parties . . . [and] ma[king] false and defamatory statements about Ms. Smith concerning settled matters contained in a confidential settlement agreement . . ." ECF No. 1 ¶¶ 68-69, 73-74. As Defendant correctly points out in its Motion to Dismiss, these statements, made in other lawsuits, "were uttered or published in the course of judicial proceedings, and are, therefore, absolutely privileged." ECF No. 19 at 14:9-11, *citing Greenberg*, 331 P.3d at 903. Moreover, while denying its employees made such derogatory comments, Defendant cites two cases for the proposition that "the use of the racial slur outlined in Ms. Smith's Complaint does not constitute defamation per se or slander per se." *Id.* at 14:16-19, *citing Bradshaw v. Swagerty*, 563 P.2d 511, 514 (Kan. App. 1977); *Irving v. J. L. Marsh, Inc.*, 360 N.E.2d 983, 985 (Ill. App. 3d Dist. 1977). While these cases are from outside our jurisdiction and are not binding authority, the reasoning is sound and likely to be adopted by Nevada as its state law.

1    Defendant next argues that "[Plaintiff] fails to sufficiently assert a plausible claim that

2    Fennemore published defamatory statements to a third person *outside the course of judicial*

3    *proceedings*." ECF No. 19 at 14:20-21 (emphasis in original). Indeed, Plaintiff only alleges that

4    "Fennemore disclosed a confidential settlement agreement to Ethan Thomas [in-house counsel for

5    Fennemore's client's], Brandon Trout [former counsel for Smith's mother], Jerome Bowen [former

6    counsel for Smith's mother], Shawna Braselton [Fennemore legal administrative assistant], and

7    Wade Beavers [Fennemore attorney]." ECF No. 1 ¶ 42. Each of these individuals falls within the

8    judicial proceedings in which Plaintiff participated. Further, Plaintiff fails to identify how or when

9    Defendant published these alleged false and defamatory statements as she is required to do. *See*

10   *Schaefer v. Diamond Resorts Intern. Marketing, Inc.*, No. 2:14-cv-01900-GMN-CWH, 2015 WL

11   1932196, *8 (D. Nev. Apr. 28, 2015) ("Plaintiff does not indicate to whom these false statements

12   were made and when they were made. These are crucial facts needed to satisfy the element of an

13   unprivileged communication to a third person."). Accordingly, Defendant's argument that Plaintiff

14   fails to state plausible claims for slander/slander per se or defamation/defamation per se for which

15   relief can be granted is persuasive and likely to be one upon which dismissal may be based.

16                           *iii.    Intentional Infliction of Emotional Distress*

17        "The elements of a cause of action for intentional infliction of emotional distress are (1)

18   extreme and outrageous conduct with either the intention of, or reckless disregard for, causing

19   emotional distress; (2) the plaintiff's having suffered severe or extreme emotional distress and (3)

20   actual or proximate causation." *Dillard Dep't Stores, Inc. v. Beckwith*, 989 P.2d 882, 886 (1999).

21   "[E]xtreme and outrageous conduct is that which is outside all possible bounds of decency and is

22   regarded as utterly intolerable in a civilized community." *Maduike v. Agency Rent-A-Car*, 953 P.2d

23   24, 26 (1998) (internal citations and quotation marks omitted).

24        A review of Plaintiff's Complaint together with Defendant's Motions to Dismiss

25   demonstrates that Plaintiff never identifies what alleged actions or statements caused her to suffer

26   emotional distress, apart from a blanket allegation that "the defendant(s) defamed, harassed, and

27   intimidated Ms. Smith as stated in this lawsuit, which has caused Ms. Smith to (including but not

28   limited to) continually seek mental health treatment, has caused Ms. Smith permanent harm to her

8

reputation, and has caused Ms. Smith to fear for her life." ECF No. 1 ¶ 78. In addition, Plaintiff does not reference any extreme and outrageous statements Defendant made that exceeds all possible bounds of decency and is regarded as utterly intolerable in a civilized community. *Maduike*, 953 P.2d at 26. Accordingly, Defendant's argument that Plaintiff fails to state a plausible claim for IIED for which relief can be granted is likely to succeed, and this claim will be dismissed.

*iv.    Permanent Injunction*

"An injunction is a remedy, not a separate claim or cause of action. A pleading can . . . request injunctive relief in connection with a substantive claim, but a separately pled claim or cause of action for injunctive relief is inappropriate." *Jensen v. Quality Loan Service Corp*., 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010). Because each of Plaintiff's claims are likely to be dismissed for the reasons stated above, Plaintiff's request for a permanent injunction will also fail.

Moreover, Defendant persuasively argues that "there is no injunctive relief that the Court could fashion which would not implicate principles of the absolute litigation privilege, public redress, and Nevada's Anti-SLAPP laws." ECF No. 19 at 16:11-14. For this independent reason, Plaintiff's request for permanent injunctive relief will not likely survive Defendant's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

**3.    Defendant's Motions to Dismiss Are Potentially Case Dispositive.**

Defendant's Motions to Dismiss will likely dispose of the entire case, which satisfies the first prong of the *Tradebay* test for granting a motion to stay discovery pending a dispositive motion. 278 F.R.D. at 608. While it is true that "[t]he fact that a non-frivolous . . . motion is pending is simply not enough to warrant a blanket stay of all discovery," here, the Court believes the Defendant has sufficiently carried its heavy burden to show why discovery should be stayed. The Court is confident that Defendant's Motions to Dismiss will be granted for the reasons stated above. Accordingly, a stay of discovery is favored. *Tradebay*, 278 F.R.D. at 608.

**4.    Defendant's Motions to Dismiss Can Be Decided Without Discovery.**

Defendant's Motions to Dismiss can be decided without additional discovery, which satisfies the second prong of the *Tradebay* test for granting a motion to stay discovery pending a dispositive motion. *Tradebay*, 278 F.R.D. at 608. Indeed, "Fennemore bases its Motions to Dismiss on the

1  allegations in the Complaint and the legal—not factual—insufficiency of Ms. Smith's claims." ECF

2  No. 19 at 17:5-6. Specifically, Defendant's Motions to Dismiss can be decided purely on the legal

3  sufficiency of Plaintiff's claims, pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 34 at 3:13-18.

4  "Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief

5  can be granted." *Id*. at 3:19-21, *citing* Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S.

6  544, 555 (2007).

7       In Plaintiff's Response, she argues that "Fennemore's motion contains so many factual

8  contentions that is nearly impossible to decide their motion without discovery. Fennemore further

9  includes exhibits, . . . essentially converting their motion into a summary judgment motion which

10 automatically requires that Ms. Smith be allowed to conduct discovery." ECF No. 26 at 2:24-3:1.

11 This argument lacks merit for two reasons. First, Defendant's Motions to Dismiss can be decided

12 purely based on the Complaint itself and the legal standard set forth in Rule 12(b)(6). Second, the

13 documents attached to Defendant's Request for Judicial Notice, filed concurrently with its Motions

14 to Dismiss, are "appropriate, as they consist of matters of public record, including publicly filed

15 documents and pleadings in [the] related [state court] case." ECF No. 12 at 1:21-22.

16      At the parties' Motion Hearing on September 25, 2019, Plaintiff represented to this Court

17 that she believes Defendant filed its Motion to Stay Discovery as a "hollow" means to avoid the

18 unnecessary costs of discovery. ECF No. 65. Plaintiff is missing the critical, second component of

19 Defendant's reasoning underlying its Motions to Dismiss: "Fennemore seeks to avoid the

20 unnecessary costs of discovery *when each of Ms. Smith's claims fails as a matter of law*." ECF No.

21 34 at 3:26-27 (emphasis added). Accordingly, a stay of discovery is favored because Defendant's

22 Motions to Dismiss can be decided without discovery. *See Tradebay*, 278 F.R.D. at 608.

23      Finally, Plaintiff claims that she will be prejudiced if the Court does not proceed with

24 discovery, because "[t]he potential for witness' memories to fade or evidence to be destroyed . . .

25 necessitates timely discovery consistent with the rules." ECF No. 26 at 4:10-12. In its Reply,

26 Defendant argues that Plaintiff will not be prejudiced if the Court enters a brief stay while the Court

27 considers and rules upon the Motions to Dismiss. ECF No. 34 at 4:4-14. Here, the likelihood of

28 dismissal is high. When this outcome is coupled with the fact that the Motions to Dismiss were only

10

1  fully briefed as of mid-August, there is no prejudice that can yet to be said to have occurred and

2  none can be presumed by the Court given the short delay in commencement of discovery that may

3  occur in the future. *F.I.M. v. U.S. Dept. of the Interior*, No. 3:14-cv-00630-MMD-WGC, 2015 WL

4  2165274, *2 (D. Nev. Sept. 9, 2016) ("[a]ny potential prejudice to Plaintiffs from the stay and

5  commensurate delay in discovery would be minimal in light of the stay's short duration").

6  **III. CONCLUSION**

7  Accordingly,

8  IT IS HEREBY ORDERED that Defendant's Motion to Stay Discovery (ECF No. 19) is

9  GRANTED. The effective date of the stay is September 25, 2019.

10  IT IS FURTHER ORDERED that Plaintiff's Motion to Compel Attendance at Deposition,

11  Production of Documents, and Forensic Examination (ECF No. 31) is DENIED without prejudice.

12  IT IS FURTHER ORDERED that Defendant's Emergency Motion to Quash, or in the

13  Alternative, Motion for a Protective Order (ECF Nos. 36, 37) are DENIED without prejudice.

14  IT IS FURTHER ORDERED that Defendant and the Nonparty Fennemore Employees'

15  Motion to Redact and Seal Documents (ECF No. 38) is DENIED without prejudice.

16  IT IS FURTHER ORDERED that Plaintiff's Motion for Leave to Add Reply (ECF No. 42)

17  is DENIED without prejudice.

18  IT IS FURTHER ORDERED that Plaintiff's Motion to Compel Samantha Radak and

19  Deborah Gianini to Attend Deposition and Produce Documents (ECF No. 43) is DENIED without

20  prejudice.

21  IT IS FURTHER ORDRED that Nonparties Deborah Gianini and Samantha Radak's Motion

22  to Quash Subpoenas (ECF No. 44) is DENIED without prejudice.

23  IT IS FURTHER ORDERED that Plaintiff's Motion to Strike Defendant's Reply in Support

24  of Emergency Motion to Quash (ECF No. 50) is DENIED without prejudice.

25  IT IS FURTHER ORDERED that Nonparties Jerome Bowen and Brandon Trouts' Motion

26  to Quash, or in the Alternative, Motion for Protective Order (ECF No. 52) is DENIED without

27  prejudice.

28

1    IT IS FURTHER ORDERED that Plaintiff's Motion to Hold Brandon Trout and Jerome
2  Bowen in Contempt of Court (ECF No. 53) is DENIED without prejudice.
3    IT IS FURTHER ORDERED that Plaintiff's Motion to Compel Brandon Trout and Jerome
4  Bowen to Attend Deposition (ECF No. 54) is DENIED without prejudice.
5    IT IS FURTHER ORDERED that Defendant's Motion to Extend Discovery Deadlines (ECF
6  No. 61) is DENIED without prejudice.
7    DATED THIS 30th day of September, 2019.
8
9
10                                               ELAYNA J. YOUCHAH
                                               UNITED STATES MAGISTRATE JUDGE
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28