

LATONIA SMITH
9748 CANYON LANDING AVE.
LAS VEGAS, NV 89166
725-203-2455
PLAINTIFF IN PROPER PERSON

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

LATONIA SMITH,

                Plaintiff(s),

       -vs-

FENNEMORE CRAIG,

                Defendant(s).

CASE NO. 2:19-cv-00824-GMN-EJY

**MOTION TO VACATE ORDER OF MAGISTRATE JUDGE AND LIFT STAY**

Well, Plaintiff received a myriad of letters from the Court with multiple authors. Overall, the Court seems to take issue with the Plaintiff filing an emergency motion due to the essence of the motion being bogged down by red tape and bureaucratic rules (nothing like using your own rules, when convenient, to justify injustices). There are instances when issues should be heard on an emergency basis and since most humans are not robots, those issues can be interpreted in context and can be heard. Nevertheless, Plaintiff files a "regular" motion too, for the record. In one of the many letters, the Court cites that the Plaintiff does not have proof that defendants are deleting and altering evidence, which is a very interesting statement from the Court, go figure (please provide your suggestions on that). As a premise, the Court's assertion actually prove that no one actually reads anything because the Plaintiff's wording only cites to the Court allowing defendants time to delete and alter evidence/testimony, which is true. The Court has allowed defendants time to delete and alter evidence/testimony by imposing a retroactive stay and to suggest otherwise is incredibly naïve and/or just

completely ignorant. Instead of gaslighting the Plaintiff by stating that she has no proof of the defendants deleting evidence when it is evident that the Court is aiding defendants, the Court should realize that Plaintiff's motion is really about the unethical order put out by the new magistrate. Anyway, whatever; trying to go through the court and legal system is a pointless game.

The following is a refiling (absent the declaration):

Plaintiff incorporates her objections to the magistrate judge's report and recommendations listed herein as Exhibit 1. Plaintiff's motion is mainly based on those objections and Plaintiff adds a few more commentary concerning this instant motion below.

# MEMORANDUM OF POINTS AND AUTHORITIES

The Federal Rules of Civil Procedure do not provide for automatic or blanket stays of discovery when a potentially dispositive motion is pending. *See Skellerup Indus. Ltd. V. City of L.A.,* 163 F.R.D. 598, 600-1 (C.D. Cal. 1995). Ordinarily, a dispositive motion does not warrant a stay of discovery. See *Twin City Fire Insurance v. Employers of Wausau,* 124 F.R.D. 652, 653 (D. Nev. 1989). See also *Turner Broadcasting System, Inc. v. Tracindal [] Corp.,* 175 F.R.D. 554, 556 (D. Nev. 1997). The moving party carries the heavy burden of making a strong showing of why discovery should be denied. *Kor Media Group, LLC v. Green*, 294 F.R.D. 579, 581 (D. Nev. 2013). See *Kabo Tools Co. v. Porauto Indus. Co., Ltd.,* 2013 U.S. Dist. Lexis 156928, *1 (D. Nev. Oct. 31, 2013) (citing *Holiday Sys., Int'l of Nev. V. Vivarelli, Scharwz, and Assocs.,* 2012 U.S. Dist. Lexis 125542, *5 (D. Nev. Sept. 5, 2012)).

The Plaintiff does not agree that the magistrate judge had authority to stay discovery that had already properly commenced under the direction of Judge George Foley.

Plaintiff does not agree that magistrate judge who is not deciding the motions to dismiss or the opposition thereto should use the "preliminary peek" test when deciding on a motion to stay; the balancing test, which should have been used was not used, which led to the magistrate judge prejudging the motion and incorrectly jumping to a personal opinion that discovery should be stayed. In addition, the magistrate judge only reviewed defendant's motion to dismiss in making her decision as clearly evidenced in her answers (as found in Plaintiff's objections). The magistrate judge's order to stay discovery and apply that stay retroactively is a judicial error and an intentional abuse of discretion that only serves to prejudice the Plaintiff in this case.

## THERE ARE GENUINE DISPUTES OF FACT

Revisiting some of the main disputes of fact which are the basis of defendant's entire erroneous motions to dismiss, one of the assertions which defendants raise in their motion to dismiss include the capacity in which defendant's entities and/or any extensions of defendants were operating under (which was not an attorney capacity as cited by defendants themselves and addressed in Plaintiff's objections attached as Exhibit 1; this simply cannot be ignored). Defendants also assert that they only communicated about the Plaintiff and/or interacted with the Plaintiff in their capacities as attorneys. Again, this was refuted by the defendants themselves and it is obviously not true given the evidence submitted by Plaintiff in her opposition. The defendants conspired with separate entities to target and defame the Plaintiff. Plaintiff's opposition also lays out how defendants fail to meet the standards to classify Plaintiff's lawsuit as a SLAPP suit. Plaintiff has a right to gather all documentary and testimonial evidence concerning these facts which are genuinely disputed and cannot be the basis of a motion to dismiss under the standards of the rules. Another contention raised by defendants cite that they only made their defamatory statements in a court of law, thus the absolute litigation privilege applies to their statements made to third parties. Well,

Plaintiff has clearly opposed this assertion by defendants with factual and witness evidence. Defendants made nasty and untruthful statements concerning the Plaintiff outside of any court of law (and, no, the Plaintiff does not only cite to the defendants calling her a 'nigga' as the defamatory statement at subject outside of court, which the magistrate judge also erroneously cited to—because she did not look beyond the defendant's motion to dismiss). From the very beginning of these issues, defendants were involved in making defamatory statements to third parties concerning unfounded accusations of Plaintiff engaging in criminal activity, unfounded accusations concerning Plaintiff's mental status (which truly illustrated their complete ignorance), and disgusting threats made directly to the Plaintiff in the presence of third parties. Every single other point made in defendant's motion is a factual contention that they have not substantiated with evidence one way or another; they simply state that "they didn't do it," which also clearly show that what they characterize as a "motion to dismiss," is not. The defendants then add a bunch of filings as exhibits which also does not support any of the factual contentions raised in their motion to dismiss one way or another (and are contentious and self-serving in and of themselves) and asks that the Court take judicial notice of the documents, even while requesting that discovery be stayed. In other words, defendants are asking this Court to give them an unfair advantage in ruling on their motions. Defendant's motions to dismiss are motions for summary judgments wrongfully characterized as motions to dismiss and it is grave error for this court to rule on such motions and deny the Plaintiff discovery in this matter. In fact, such a stay is unprecedented, supports denial of defendant's motion, and further support that evidence put forth by Plaintiff suggest that defendant's attorney-client and work product assertions are subject to the crime-fraud exception. It was judicial error for the magistrate judge to rule that discovery should be stayed since her "preliminary peek" only consisted at looking at defendant's motions to dismiss and did not involve any type

of balancing of the interests of both parties. Most notably, the magistrate judge cited she could be wrong. Her "unsure" order presents a prejudice to the Plaintiff. During the time that Judge Foley's orders were in effect, the Plaintiff sought discovery from key witnesses (not all witnesses) and sought key documentary evidence; defendants did not and cannot cite to any extreme burden that this discovery, which was limited at that point in time, imposed.

Based on all of the facts and case law before the court, including the fact that discovery had already commenced, Plaintiff requests that the order of magistrate judge Yuchah be vacated and that the stay be lifted on an emergency basis in order to discontinue the gross amount of prejudice that it has already caused to the Plaintiff. Plaintiff also requests that the motions that were set before the magistrate judge be decided by the trial judge and/or remanded to the magistrate judge for further action.

Dated this 14th day of October 2019

/s/ Latonia Smith
LATONIA SMITH
9748 CANYON LANDING AVE.
LAS VEGAS, NV 89166

1
2
3

## CERTIFICATE OF SERVICE

4
5
I certify that I am serving a true and correct copy of the attached MOTION TO VACATE

MAGISTRATE JUDGE'S ORDERS AND LIFT STAY on the parties set forth below by:

6
7
_____        placing an original or true copy thereof in a sealed envelope with the correct prepaid

8                 postage affixed for collection and mailing in the United States Mail, at Las Vegas,

9                 Nevada.

____X____        Certified Mail, Return Receipt Requested of the document(s) listed above to the

10                person(s) at the address(es) set forth below

11
_____        E-service

12
_____        Personal delivery through a process server of the document(s) listed above to the

13                person(s) at the address(es) set forth below

14
Alex Fugazzi and Michael Paretti

15
SNELL AND WILMER

16
3883 Howard Hughes Parkway Suite 1100

17
Las Vegas, NV 89169

18
702-784-5200

19
afugazzi@swlaw.com

20
mparetti@swlaw.com

21
22                                              /s/ Latonia Smith

23                                              Plaintiff, In Proper Person

Dated this 14th day of October 2019
24
25
26
27
28

# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA
LAS VEGAS DIVISION

| | | |
|---|---|---|
| LATONIA SMITH, | ) | CASE NO:  2:19-CV-00824-GMN-EJY |
| | ) | |
| Plaintiff, | ) | CIVIL |
| | ) | |
| vs. | ) | Las Vegas, Nevada |
| | ) | |
| FENNEMORE CRAIG, | ) | Wednesday, September 25, 2019 |
| | ) | |
| Defendant. | ) | (1:04 p.m. to 2:15 p.m.) |

MOTION HEARING

BEFORE THE HONORABLE ELAYNA J. YOUCHAH,
UNITED STATES MAGISTRATE JUDGE

Appearances:            See next page

Court Recorder [ECRO]:  Digital

Courtroom Administrator: E. Garcia

Transcribed by:         Exceptional Reporting Services, Inc.
                        P.O. Box 8365
                        Corpus Christi, TX 78468
                        361 949-2988

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

2

**APPEARANCES FOR:**

Plaintiff:                          LATONIA SMITH, PRO SE
                                    9748 Canyon Landing Ave.
                                    Las Vegas, NV 89166

Defendant:                          ALEX FUGAZZI, ESQ.
                                    MICHAEL PARETTI, ESQ.
                                    Snell & Wilmer
                                    3883 Howard Hughes Pkwy., Suite 1100
                                    Las Vegas, NV 89169

                                    RILEY A. CLAYTON, ESQ.
                                    Hall Jaffe & Clayton
                                    7425 Peak Drive
                                    Las Vegas, NV 89128

                                    JEROME R. BOWEN, ESQ.
                                    9660 W. Cheyenne Ave., Suite 250
                                    Las Vegas, NV 89129

3

1    **Las Vegas, Nevada; Wednesday, September 25, 2019; 1:04 p.m.**

2                          **(Call to Order)**

3          THE CLERK:  This is attendance in the case of 2:19-

4    CV-824-GMN-EJY, Latonia Smith versus Fennemore Craig.

5          Counsel, please enter your appearance for the record.

6          MR. FUGAZZI:  Good morning, your Honor, Alex Fugazzi

7    and Michael Paretti on behalf of Fennemore Craig and the seven

8    Fennemore Craig employees that are subpoenaed by plaintiff.

9    And I have with me my client representative, Janice Proctor-

10   Murphy (phonetic) who is the assistant general counsel of

11   Fennemore.

12         THE COURT:  Thank you.  And you are, I assume, Ms. --

13         MS. SMITH:  Yeah, I'm the plaintiff.  Yes.

14         THE COURT:  Okay.  Well, we have before us today a

15   variety of motions that have been filed by the parties.  And I

16   think that the best way to go through this to make the record

17   clear is motion by motion.  Although I do understand that that

18   will take some time, I'd rather make sure that the record is

19   clear and that everybody has had an opportunity to provide me

20   with the information if they would like to do so.

21         So we will start with the Motion to Stay filed by the

22   defendants.  And Mr. Fugazzi, are you going to be arguing?

23         MR. FUGAZZI:  Yes, your Honor, I am.

24         THE COURT:  Okay.  And I have read everything.  I do

25   understand the issues that are before the Court, thoroughly

4

1   read all of the pending motions and exhibits, and have looked

2   at the complaint.  So -- and the amended complaint, so I have

3   that ground.  You don't need to come up to the podium.  But if

4   there's anything you'd like to add or emphasize to the Court

5   regarding your Motion to Dismiss, I'm happy to listen to that.

6              **MR. FUGAZZI:**  Thank you, your Honor.  The Motion to

7   Stay -- and I appreciate your telling me in advance as I

8   expected, you had read everything.  I will not go through all

9   the briefs.

10             The Motion to Stay requires a sneak peek analysis for

11  the Court which requires a look at the Motion to Dismiss to

12  determine whether or not there is a likelihood that the dispute

13  could be resolved in its entirety if the Motion to Dismiss is

14  granted.

15             So I wanted to very briefly touch on a few highlights

16  of that standard, your Honor, because I understand it is our

17  burden and there are several grounds under which I think the

18  Court should be convinced that the Motion to Dismiss can be

19  resolved in its entirety and in the interim the case should be

20  stayed.

21             The two overarching defenses really are the anti-

22  SLAPP and the litigation privilege.  And that covers the bulk

23  of the allegations in plaintiff's complaint.  And to the extent

24  either of those defenses -- or they're actually immunities, the

25  extent either of those immunities don't apply.  The individual

5

1   claims themselves fail under 12(b)(6) standards.

2          So the anti-SLAPP as you know provides for immunity

3   for civil liability based on good faith communications.  And

4   the right to petition and issues of public concern and judicial

5   proceedings are in fact considered issues of public concern

6   under NRS 41.650.

7          So the filings, the proceedings, the petitions, all

8   the things surrounding the underlying litigation -- and not

9   just this dispute and not just the prior disputes with

10  Ms. Smith, but also the disputes with her mother that Fennemore

11  Craig has been defending Caesar's Planet Hollywood in the

12  underlying litigation.

13         And if you look at her own complaint in paragraph 6,

14  she defines the alleged improper conduct by Fennemore Craig as

15  occurring in the confines of her mother's litigation, paragraph

16  6 says, "during the course of this litigation that began on

17  November 5, 2018, employees of Fennemore Craig began harassing,

18  intimidating, and defaming Ms. Smith who is a witness in the

19  current pending litigation."

20         So clearly squarely within the context of the anti-

21  SLAPP statute, and I think that also is helpful to pivot when

22  looking at the equally broad litigation privilege that applies.

23  And there's a slew of cases, probably the Greenberg Traurig is

24  the most seminal one on that, but that Court really emphasized

25  the breadth of that privilege and how it applies to attorneys

6

1   participating in judicial proceedings and granting those

2   Officers of the Court the utmost freedom in their efforts to

3   obtain justice for the clients.

4          And again, paragraph 6, I think is equally helpful to

5   both the anti-SLAPP and the litigation privilege defense

6   because by her own allegations the alleged improper conduct all

7   occurred within the confines of litigation, the Parazar

8   (phonetic) litigation.

9          But the claims themselves individually fail as well.

10  And very briefly, the conspiracy claims, there's only one

11  defendant in this lawsuit, it can't be a conspiracy with one

12  defendant.  And the Case Law we cited for you supports that

13  proposition even if you allege individual employees within the

14  one defendant or agents such as lawyers of that one defendant,

15  it can't conspire.  So the conspiracy claim, even putting aside

16  the anti-SLAPP and litigation privilege, fails on that ground.

17         Similarly the slander and defamation claims also fail

18  on a 12(b)(6) standard.  I know, Judge, that you can't take --

19  and we're not going to dispute fact issues, but I would be

20  remiss if I didn't say again on the record that Fennemore Craig

21  and the seven individuals who have been subpoenaed adamantly,

22  adamantly deny ever making any type of racial slur to Ms. Smith

23  in lieu of the allegation of the complaint.

24         I understand that's not here for you decide that,

25  Judge, but because of the explosive nature of those comments, I

1    really would be remiss if I didn't at least make that record.

2    So I'll move on from that and I appreciate you allowing me to

3    make that statement.

4            Their allegations of the settlement agreement being

5    produced improperly and in violation, but under the terms of

6    the settlement agreement themselves, there are times -- this is

7    still under the slander and defamation to the extent the claim

8    is based upon disclosure of a settlement agreement.  The

9    settlement agreement within the definition and confines of the

10   settlement agreement itself allow it to be disclosed under

11   certain circumstances, and the alleged disclosure that occurred

12   in March of 2019 was equally within litigation.

13           In fact, this cover letter -- and that's going to be

14   the subject of another motion before the Court because it's our

15   position that that is a fabricated document.  But again, even

16   if you take that document on its face, that is within the

17   confines of the underlying Parazar - Caesar's litigation.  The

18   folks who were provided with the cover letter and that

19   agreement were lawyers.  They were all lawyer either in the

20   mother's litigation or lawyers defending Caesar's.

21           So the intentional infliction of emotional distress

22   claim, the last one, also again fails on its own.  We cited for

23   you cases that although abhorrent the language that Ms. Smith

24   alleges my client used, which again it did not -- do not

25   constitute intentional infliction of emotional distress.

1          The last thing I'll point out to you, your Honor, and

2  then I'll stop unless you have questions for me, is I would

3  suggest that looking at the anti-SLAPP statute itself might be

4  -- give you some guidance as to whether or not a Stay should be

5  granted.

6          I understand very clearly that Ninth Circuit says the

7  procedural requirements of the SLAPP statute are not binding

8  upon Federal Courts, and I'm not saying that the SLAPP statute

9  is.  But NRS 41.6603(e)(1) provides that if a special Motion to

10 Dismiss is filed pursuant to subsection 2, the Court shall Stay

11 discovery pending ruling by the Court's own motion.

12         Again, I know that doesn't directly apply to you,

13 that's not binding on you, but I think it's helpful to see how

14 the Nevada legislature contemplated the anti-SLAPP statutes

15 when such a motion was brought how its citizens would be

16 protected and how the Stay would be an option.

17         And in State Court it would be an easy argument for

18 me to simply say shall or shall, your Honor.  But I understand

19 I'm not in State Court.

20         So with that, unless the Court has any questions for

21 me?

22         **THE COURT:**  I don't have any questions for you.

23 Thank you.

24         **MR. FUGAZZI:**  Thank you.

25         **THE COURT:**  Ms. Smith, do you want to be heard on

1   your opposition to the Motion to Stay Discovery which was filed

2   by defendant?

3           **MS. SMITH:**  Yes.  But do I have to stand or can I

4   sit?

5           **THE COURT:**  You can sit.  That's fine.

6           **MS. SMITH:**  Cool.  So I opposed their motion because

7   I feel like they're trying to hide behind their title as

8   attorneys.

9           But basically when it comes to the Motion to Dismiss

10  what I replied is that a lot of the issues in the Motion to

11  Dismiss are factual contentions, number one, that I feel

12  requires discovery.

13          **THE COURT:**  Ms. Smith, I'm just going to interrupt

14  you.  I may have said Motion to Dismiss.  I meant Motion to

15  Stay.  If I misspoke, I apologize.  Their Motion to Stay

16  Discovery.

17          **MS. SMITH:**  Okay.

18          **THE COURT:**  So --

19          **MS. SMITH:**  And he just argued like some of the stuff

20  in the Motion to Dismiss --

21          **THE COURT:**  Well he was --

22          **MS. SMITH:**  -- so I was going to respond to it.

23          **THE COURT:**  -- he was talking about the underlying

24  claims, but I am not going to decide the Motion to Dismiss

25  today.  I just want to make sure you understand that.

1           MS. SMITH:  Yes.

2           THE COURT:  He'll -- okay.  Then go ahead.

3           MS. SMITH:  So with my case, number one, I'm not a

4    part of my mom's litigation, and they keep trying to tie me to

5    that.

6           But everything that happened, the defamation, the

7    slander, the distribution of the settlement agreement, all of

8    that is outside of my mom's case.  And really when I -- when I

9    say that they were conspiring, meaning it was themselves and

10   Caesar's and Planet Hollywood that conspired to target me.

11          And that was all in an attempt to fire my mom and/or

12   prevent her from getting her job back.  So they used me to

13   create, you know, these anonymous messages, I guess, and that's

14   when the attack against me began with them using the judicial

15   system to target me.  That's basically the overview of what the

16   lawsuit is about.

17          As far as the Motion to Stay Discovery that

18   Mr. Fugazzi filed, basically he just says that the motion

19   should be -- I mean, the motion should be granted because they

20   would incur costs and that there's a pending Motion to Dismiss

21   on the table.

22          But both of those are not reasons to stay discovery

23   and that was talked about a little bit in the -- in the Trade

24   Bay (phonetic) case and in the Turner case from Nevada 1977,

25   where the Court rejected the argument that a Motion to Stay

1   should be granted because the other party might incur costs.

2   And that's basically in their motion.  What they argue is that

3   because I want to take the deposition of the seven individuals

4   that were involved or mostly involved, that discovery should be

5   stayed because they would incur costs associated with that.

6           And like I said in my opposition to their Motion to

7   Dismiss, their Motion to Dismiss is just filled full of factual

8   contentions.  All they say is, "Oh, we didn't do that."  So I

9   make a claim, and they basically say, "No, they didn't do it."

10  But they don't present any evidence to oppose my claims which I

11  do.

12          **THE COURT:**  Your motion, number 31, is the next

13  motion on the calendar which is a Motion to Compel Discovery.

14          **MS. SMITH:**  Correct.

15          **THE COURT:**  You mentioned some of that in what you

16  just said.  Would you like to argue that motion now, tell me

17  why you believe that motion should be granted?

18          **MS. SMITH:**  Yes.  So the Motion to Compel Attendance

19  at Deposition is for the -- some of the Fennemore employees.

20  And then I think the other -- there is other Motions to Compel

21  on that, but as far as the Fennemore employees' Motion to

22  Compel on -- so Fennemore was the one involved with Caesar's

23  with creating these documents that they have been distributing

24  and using to get TPOs against me, to defame me, basically

25  saying that I, you know, distributed threats.

12

1        And some of these -- some of these defamation claims

2  that they made about me were outside of any type of litigation.

3  Like I said, I'm not involved in my mom's litigation, and as

4  shown in the exhibit I'm not even mentioned in my mom's

5  litigation.  So they took it upon themselves to bring me into

6  that litigation later on, which that's another issue.

7        But as far as compelling the employees that were

8  involved, they were the ones involved in distributing the --

9  either the agreements which the -- another thing about the

10  agreement, the agreement does not provide for them to -- they

11  didn't provide for them to distribute it whenever they saw fit.

12  There were other aspects of the agreement which stated that

13  before they even distributed such an agreement to whoever,

14  which it would only -- it should have only been to a Court.

15  But before they even distributed such an agreement they had to

16  contact my attorney who represented me in that matter, and

17  present evidence showing that those -- what they were saying or

18  what they were trying to get was actually factual.  So that --

19        **THE COURT:**  Tell me why these seven people should be

20  compelled to attend depositions when they are not parties to

21  this case?

22        **MS. SMITH:**  So I believe -- so Ms. Pierce, she was

23  one of the employees of theirs that went ahead and distributed

24  the confidential settlement agreement.  She also sent a letter

25  to my mom's previous attorneys, I'm not sure why, but she sent

13

1  a letter basically saying that I'm a danger, that I've issued

2  threats in the past, those type of things which I consider

3  defamation.  That was Shannon --

4          THE COURT:  Can you tell me about Leslie Bryant-Hart

5  (phonetic) Janice Proctor-Murphy (phonetic)?

6          MS. SMITH:  Yes, Leslie Bryant-Hart and Janice

7  Proctor-Murphy, so they were involved in the -- so I guess if

8  he doesn't want to call it conspiracy or whatever, Shannon

9  Pierce is the one who initiated it.  She called her other

10  members of her firm in Reno, told them to go file a TPO against

11  me based on another one of their anonymous letters that they

12  created.

13          Leslie Bryant-Hart and Janice Proctor-Murphy were

14  involved in basically getting or helping Shannon Pierce, Wade

15  Beavers (phonetic) and some of their other employees to go

16  ahead and get a TPO based off of messages that they created and

17  you know, the statements that they made concerning the fact

18  that I was a threat, that I sent threats in the past, that I'm

19  a danger, stuff like that.

20          THE COURT:  And would -- is that the same argument

21  you would make with respect to Bernak Ruben Worthland

22  (phonetic), Shanna Brazelton (phonetic), and Randy Planet

23  (phonetic), and Wade Beavers?

24          MS. SMITH:  So I dropped the one against Wade Beavers

25  for now because there's other things going on.

14

1          **THE COURT:**  What's going on?

2          **MS. SMITH:**  So I dropped that one.  But --

3          **THE COURT:**  What about the other three?

4          **MS. SMITH:**  So Bernak Worthland and the other lady,

5    I'm not -- I can't remember her name --

6          **THE COURT:**  Shanna Brazelton?

7          **MS. SMITH:**  So Shanna Brazelton, she was involved in

8    the Reno one.

9          The other -- the other two, they were involved in the

10   2017 Las Vegas one where they had their employees or whatever,

11   create messages so that they could basically defame me, get

12   TPOs against me that -- and all of this is based -- I -- all of

13   this was because they wanted to fire my mom and/or prevent her

14   from getting her job back.  And so that's the issues that

15   Fennemore and Caesar's conspired with one another to do that.

16         **THE COURT:**  And then tell me, in this Motion to

17   Compel you also seek documents from the law firm Fennemore

18   Craig, recall that?

19         **MS. SMITH:**  Yes, the production of -- I basically

20   just asked for any documents in their possession from 2017 to

21   now because 2017, November of 2017 is when this whole thing

22   began really to present.  And I sought documents either

23   pertaining to myself specifically, meaning my name, my social,

24   whatever information they have on me, and/or documents

25   pertaining to my mom.

1          Since I was brought into this because of them wanting

2     to go ahead and fire my mom and prevent her from getting her

3     job back, that is why I sought the documents from specifically

4     2017 to now, currently.  I am not seeking documents before

5     then.

6          I -- you know, they make an argument that it's broad

7     and it's, you know, a burden for them to get those documents,

8     and it's really just hollow arguments.  I think one of the

9     arguments they made is attorney/client privilege.  And I

10    specifically asked about this, like, how can you assert a

11    privilege over documents that you don't know, that you haven't

12    reviewed.  And they didn't say anything, they just -- they're

13    just asserting a broad -- they're asking for a broad protective

14    order and asserting a broad privilege over any documents, you

15    know, that have to do with myself and my mom.

16          **THE COURT:**  Mr. Fugazzi, I -- if you want to add

17    something to this motion, you can, but if you'd like to move on

18    to your Motion to Quash or in the alternative for a protective

19    order, that would be fine.

20          **MR. FUGAZZI:**  I think it makes sense, your Honor, for

21    me in one sitting or one stand to take on both because they're

22    very similar, if that's okay with the Court?

23          **THE COURT:**  Okay.

24          **MR. FUGAZZI:**  The briefs, and I believe what you just

25    heard from plaintiff, reaffirm our belief that what she is

1  asking for are active litigation files from the law firm.

2          She's asking for the active litigation file in her

3  mother's law suit with Caesar's, and she's asking for the

4  litigation file surrounding all the TPOs that we just walked

5  through.  That's the involvement of the Fennemore lawyers.

6          She wants active litigation files that are clearly

7  privileged, that are clearly subject to work product.  And

8  other than a 22 month time range, there's nothing really done

9  to limit the scope of those.  There's no effort to try and

10 exclude privileged or work product documents.  In fact, when

11 you look at the subpoenas themselves they reference requests

12 for materials that have to do with the matters listed in the

13 lawsuit which are related to Latonia Smith or her mother,

14 Anasar (phonetic) Parazar.

15         The face of the subpoenas themselves are asking for

16 privileged work product protection.  The other part of the

17 subpoenas are asking for forensic copies and images of personal

18 computers and personal cell phones of all of the seven

19 Fennemore witnesses.

20         Three of those people that she's asking for have

21 already secured temporary protective orders against her.  So in

22 other words, she is asking the very people that a Court agreed

23 with us that she had threatened to turn over a forensic image

24 and a forensic copy of their personal computers, their personal

25 cell phones.  And all of us know the layers of relevant and

1   personal information that's contained in a cell phone that most

2   of us would not want to turn over to anyone, never mind a

3   litigant, never mind someone who we have a good faith basis to

4   believe they either physically threatened or worse to them.

5          So that's what's being asked here, active or dormant

6   litigation files of a law firm.  The arguments that these

7   requests are somehow tailored or narrowed is just not reflected

8   in the subpoenas or the briefs themselves.  There's a reference

9   to an identification of a forensic examiner, but there's no

10  identity of who that person would be.  There's a general

11  discussion of possible search terms, but those search terms

12  aren't disclosed.

13         And then there's a reference that the privilege will

14  be protected.  But when you read the briefs and you hear the

15  argument, there's no effort to protect privilege.  Ms. Smith

16  doesn't believe there is a privilege.  She believes the crime

17  fraud exception applies and that as a result there simply is no

18  privilege.

19         But that's a burden on her.  That's a preponderance

20  of the evidence standard, the crime fraud exception, that

21  requires her to actually show with evidence that there is an

22  ongoing or future crime that a client is using a lawyer to help

23  perpetrate.  And there's no evidence of that fact.  Argument

24  and speculation don't equal evidence, your Honor.

25         So the other issue about her comments that we didn't

18

1    -- we don't know what documents exist, I think that was a

2    comment that another lawyer made to her not me.  Because my

3    efforts to meet and confer with her never came to fruition.  We

4    did not meet and confer because I had requested that

5    Mr. Clayton, counsel for Caesar's be there.

6              The bulk of the privilege she's asking for is

7    Caesar's privilege.  Caesar needs to be involved in the

8    evaluation of any privilege.  And to be clear, Caesar's has

9    made clear to me that they are not waiving privilege or any

10   other protection that they have.

11             And then also, your Honor, Rule 45(d)(1) puts the

12   onus on the subpoenaing party to make sure that it is not -- it

13   says that this party has to take steps to avoid imposing undue

14   burden or expenses on the parties subject to the subpoena.  And

15   it can apply a sanction if those efforts are not met.

16             So it is not -- I think that's the prism from which

17   the Court needs to look at this.  It can't be for us to prepare

18   a privilege log on an entire litigation file when there's been

19   no effort whatsoever to try and narrow the scope and the burden

20   of the subpoena as Rule 45(d)(1) requires.

21             Similarly, 45(d)(3)(a)(3) provides that the subpoena

22   must be quashed if it "requires disclosure privilege or other

23   protected matter".

24             So that's why we're before the Court.  I know there

25   have been some allegations that we were in violation of

1   thumbing our nose at Judge Foley's orders.  That's simply not

2   the case.  We took pains to send a lengthy letter, meet and

3   confer letter, before the first deposition of the first

4   production was made available.  We moved to -- we filed our own

5   motion.  Ms. Smith also filed her own motion as well.

6          So that really is the quash arguments.  To the extent

7   the Court is considering any of these depositions going forward

8   in any fashion, we would request that a protective order is

9   required.  These are people who have legitimate concerns about

10  being in the same room with Ms. Smith, and the Court has

11  options from written depositions, to video, to telephonic, to

12  allowing it to occur in court when -- where you have

13  protections that I simply don't have in conference rooms or

14  court reporters.

15         So in a nut shell, this to me is not the type of

16  subpoena that can really be modified by the Court, you know,

17  where there's eight requests, three of which are too broad so

18  you strike those, you narrow two of them and we go.  This just

19  is overly broad from the beginning to end, and I don't -- I

20  don't think there's a way for the Court to modify.  I think

21  these have to be quashed.

22         **THE COURT:**  Thank you, Mr. Fugazzi.  Ms. Smith, do

23  you want to respond?  This is, again, on the defendant's Motion

24  to Quash and Seal and for a protective order.  There --

25         **MS. SMITH:**  Yeah, so their emergency Motion --

20

1          THE COURT:  They're numbers 36 --

2          MS. SMITH:  -- to Quash?

3          THE COURT:  -- 37, and 38.

4          MS. SMITH:  Okay.  I don't think I got 36 from the

5    defense and I didn't see UFC -- ECF, is that what it's called?

6          THE COURT:  But they're all related and you may not

7    have gotten some sealed documents, but the --

8          MR. FUGAZZI:  It was mailed.

9          THE COURT:  -- the import of the motion, I think you

10   are familiar with through the Motion to Quash, you were

11   seeking?

12         MS. SMITH:  Yes, they want to quash the subpoena,

13   basically preventing me from getting evidence that's at the

14   heart of this case.

15         And I also filed a motion, a response to them asking

16   for injunctive relief in a protective order because they seek

17   to continually include my medical history.  Now they're

18   including it as an excuse to prevent me from either doing

19   depositions or getting the documents that's at the center of

20   this case.

21         Just to point out, when Mr. Fugazzi emailed me to do

22   a meet and confer over the subpoenas, most of his objections

23   were attorney/client, work product, those type of things.

24         And then in his emergency motion, now he throws in my

25   medical records to say, "Oh, look, she's crazy, we don't want

1  her taking depositions or getting documents."  That's basically

2  the argument that he was making which I find highly, highly

3  inappropriate.

4         But as far as the subpoenas being able to take the

5  depositions of the seven people who were involved, which I

6  believe in creating these messages and defaming me, I think

7  that's necessary, that's important.  And I don't see any

8  grounds -- and I haven't heard any grounds for which I should

9  be prevented from questioning these seven individuals who were

10  either involved in creating documents or -- and/or involved in

11  trying to use the Court to -- or abuse the court system to

12  target me in 2017 and thereon, and even still today.

13         As far as the -- he made an argument about the crime

14  -- or he brought up the crime fraud exception that I argued.

15  And I did present evidence to -- at least some evidence that I

16  have my hands on at this moment to kind of show that Caesar's

17  and themselves, Fennemore Craig, were involved in what I would

18  consider a crime and a fraud on the Court in trying to target

19  me, namely in creating messages.

20         And I believe in the exhibits to the opposition to

21  the Motion to Dismiss, there is testimony from a third-party

22  individual citing that the parties contacted her telling her

23  that I was sending these messages that they created themselves,

24  and that I was threatening others.

25         And then there's an audio, an internal audio from, I

22

1  believe, their defendants, Caesar's, basically stating that

2  they would target me and saying that I created these messages,

3  same thing, the defamation.

4       And so for me not to be able to depose their

5  attorneys who were involved in creating the messages, I think

6  that's just wrong and I didn't see any grounds for --

7       THE COURT:  Tell me, you filed a motion, and it's

8  number 43, seeking to compel the depositions of Ms. Radak and

9  Ms. Gianini.

10      MS. SMITH:  Right.

11      THE COURT:  Why don't you explain to me what the

12  basis for that is?

13      MS. SMITH:  So Ms. Radak and Ms. Gianini, so they

14  were involved in -- I basically I believe Ms. Radak is my mom's

15  former boss and right after she was -- or they used the

16  messages basically to further -- to terminate her and then to

17  prevent her from getting her job back.  And how they did that,

18  I have no idea.

19      But Ms. Radak contacted that third party.  That third

20  party testified to that, that Ms. Radak specifically contacted

21  her and other members of Caesar's Entertainment which is in

22  another separate case.  But that they contacted her to

23  basically state that I was the one sending these messages,

24  blah, blah, blah, blah

25      Well, Samantha Radak was involved with conspiring

1   with Fennemore Craig because they helped her to get the

2   messages and then secure the TPO against me.  I'm not sure how

3   they did that with anonymous messages but that's another issue.

4           And then -- and then Fennemore Craig helped them with

5   also filing a lawsuit against me putting me in a lawsuit, again

6   based off of the anonymous messages and 50 doe defendants.  So

7   that was, like I said, a huge burden on me trying to defend

8   that.

9           And so Samantha Radak and Deborah Gianini were

10  involved in that earlier scheme in 2017 which involved creating

11  the messages, targeting me, and all this was surrounding or at

12  the heart of my mom not getting her job back and/or being

13  terminated.

14          And then he briefly mentioned about the document

15  requests that I did, that they were broad or subject to their

16  attorney/client privilege, which I didn't quite finish the

17  crime fraud argument with them creating the messages and then

18  using those messages to secure TPOs, which is in furtherance of

19  a fraud.  The crime fraud exception to attorney/client

20  privilege, which is why I'm seeking partly, documents, anything

21  that concerns myself, number one and/or my mom starting in 2017

22  when that crime fraud began up until now.

23          Because a few months ago they did, you know, I guess

24  revamp or restart this whole TPO thing with targeting me and

25  getting the courts here in Reno, and as I stated in my motion,

24

1    I'm sure if I didn't file a lawsuit it would have been at where

2    -- at the locations that their firms are located, meaning

3    Arizona and other places because they conspired and asked their

4    employees to begin filing TPOs against me.

5            So that is in furtherance of a fraud.  That is why I

6    asserted the crime fraud exception to any attorney/client

7    privilege that they are now trying to claim to prevent me from

8    getting evidence that might implicate them in the fraud that

9    has occurred since 2017.

10           So I don't believe those documents are privileged at

11   all.  Any documents concerning myself, any documents concerning

12   my mom because I'm connected to her, I don't believe that those

13   are privileged in this case especially where the heart of the

14   case really is about, you know, the defamation, about them

15   creating documents, about them distributing confidential

16   settlement agreement which their prior TPOs and their prior

17   lawsuit was dismissed.

18           So all of that is at the center of the -- of this

19   current lawsuit.  And so to tailor it anymore means that I

20   don't get evidence that is at the heart of this case, meaning,

21   you know, there -- how much more can you tailor it?  I'm asking

22   for documents concerning just myself, my mom, from 2017 to now.

23           And another thing he brought up was the protocol.  I

24   was going to discuss it more in detail with Mr. Fugazzi at a

25   meet and confer.  I told him I will not confer with Mr. Clayton

1  because Mr. Clayton is representing Caesar's in a separate case

2  that has really nothing to do with this case.

3       And at the meet and confer I was going to further

4  specify what the protocols would be or the ones that I came up

5  with.  And basically how I did that is I looked at other

6  jurisdictions and other courts and the protocols that they

7  implemented when a plaintiff or a defendant has requested

8  forensic examination of computer evidence or cell phone

9  evidence, things of that nature.

10       There are specific protocols that can be followed

11  that, you know, where, you know, I'm not going to get -- not

12  that I even care, but documents concerning other people or

13  documents that don't fall into the scope of concerning myself,

14  my mom from 2017 to now.  I mean, there are parameters that a

15  forensic examiner can, you know, just specifically search for

16  those documents that are in their possession.

17       And the reason that I wanted a forensic examination

18  is number one, these people are creating documents in my humble

19  opinion, and number two, then they're using these documents to

20  then petition courts for TPOs, for lawsuits, things of that

21  nature.

22       And so the evidence really at the heart of this case

23  is contained in either their phones that they used, you know,

24  to conduct their work, and/or the computers that they used to

25  conduct their work and communicate with other third parties who

26

1 | were involved.  I can't remember --

2 |          **THE COURT:**  Mr. Fugazzi, an opportunity to respond --

3 |          **MS. SMITH:**  Sure.

4 |          **THE COURT:**  -- to your arguments regarding motion --

5 | ECF number 43, which is Ms. Smith's Motion to Compel the

6 | Depositions of Ms. Radak and Ms. Gianini, if there's anything

7 | else you want to add, that's fine, but --

8 |          **MR. FUGAZZI:**  Your Honor, actually Mr. Clayton is

9 | counsel for Radak and Gianini, so I think those are probably

10 | arguments best left for -- he has briefed the issue, he was the

11 | one who moved, and it's probably best for him to respond to

12 | those.

13 |          **THE COURT:**  Certainly.  To the extent that you feel

14 | is necessary, I'm happy to listen.

15 |          **MR. CLAYTON:**  Your Honor, I appreciate your comments.

16 | It's a quick one.  May I approach the podium for --

17 |          **THE COURT:**  Certainly.

18 |          **MR. CLAYTON:**  Okay.  I'll just take --

19 |          **MR. FUGAZZI:**  Just take my seat.

20 |          **MR. CLAYTON:**  No, that's all right.  Thank you.  Your

21 | Honor, just a couple of quick points.

22 |          **THE COURT:**  You can come to the podium please.

23 |          **MR. CLAYTON:**  That all right?  Okay.  Thank you.

24 |          **THE COURT:**  Mm-hmm.  Yes.

25 |          **MR. CLAYTON:**  I appreciate that.

1          **THE COURT:**  I'm sorry I couldn't tell that you

2   weren't up there.

3          **MR. CLAYTON:**  All right.  I'm not sure if there's an

4   issue on this, but I think she raised it in her briefs that

5   there was an untimeliness issue on filing the written objection

6   or the Motion to Quash.  The rule says that you get the earlier

7   of 14 days from the time of the service or up to the time when

8   you're supposed to have compliance, and we complied with that.

9   So I just want to make sure that the dates are accurate.

10          Now, what's different -- I appreciate the arguments

11   of counsel and I'm going to join them because they inure to our

12   benefit.  In this particular case here, I represent Ms. Radak

13   and Ms. Gianini, the deponents.

14          What's unique for my client, at least one of them, is

15   the existence of the settlement agreement.  Now in the

16   settlement agreement that she signed, and it occurred after the

17   -- when she said she was involved in a lawsuit, well that

18   lawsuit resulted in a no contact agreement between her,

19   Ms. Radak, and my other defendants in the other case.  So now

20   she's being selective as to how to enforce that particular

21   document.

22          It says thou shalt not come within 100 feet of my

23   clients.  Yet then it said by service by agent or otherwise.

24   So it is pretty broad the nature of the no contact prohibition.

25   By serving these subpoenas on my client, that's -- they've

1   already violated that particular provision.  She suggested it's

2   somehow unenforceable yet cites to no case or no legal

3   authority to support that position.

4          MS. SMITH:  It's in the document itself.

5          THE COURT:  It's all right, Ms. Smith, I'll give you

6   an opportunity to respond to what Mr. Clayton has to say.  So

7   why don't you let him speak uninterrupted as they have allowed

8   you to do.  Thank you.  Go ahead.

9          MR. CLAYTON:  Thank you, your Honor.

10         The agreement itself says it's going to be governed

11  by Nevada law.  Nevada law under Rule 65 allows for injunctions

12  or temporary restraining orders to be issued day in and day out

13  when there's a potential harm that can come to somebody.  That

14  was -- that was the consideration that my clients were seeking

15  in having this particular document, this settlement agreement

16  reached in this case.  They wanted freedom from being harassed

17  and being pursued and being intimidated.  That was the

18  consideration of the agreement.

19         The severability clause in that agreement, and I

20  think we pointed this out pretty vividly, it says, "If some of

21  these provisions are declared unenforceable, it can only happen

22  if it doesn't undercut the essence of the contract."  And the

23  essence of the contract here is to give my clients some

24  protection from the threats, the intimidation, and the

25  harassment.  So this agreement is enforceable.  It would

1  preclude the type of conduct she is seeking here through the

2  court issued subpoena at least through December 1.  That's when

3  the timeframe --

4           THE COURT:  I've heard the --

5           MR. CLAYTON:  -- ends on that.  So I appreciate that,

6  Judge.

7           THE COURT:  (indisc.)

8           MR. CLAYTON:  The other issue that I want to hit,

9  there was the suggestion that I hadn't seen the documents and

10 yet I was making objection of attorney/client privilege.

11          She is correct that I have not been living and

12 breathing this unfortunate case for two years like she has.  So

13 I am unaware of the volumes of documents that may exist.  But I

14 do know that my client was previously represented by the

15 Fennemore Craig team in the Parazar versus Fennemore -- or

16 excuse me, Parazar versus the Caesar's Entertainment and Planet

17 Hollywood matters.  That by its very nature and given the

18 specific language of the documents she's seeking in this

19 subpoena would be protected by the attorney/client privilege.

20          Third point and the work product document.  One of

21 the points that I've raised and I want to simply reiterate

22 here, and I think it's been reconfirmed in a very acute

23 fashion, that these cases are inter-related, and that the

24 information she is seeking through the deponents and my clients

25 and the other various deponents in this case would be

30

1 absolutely duplicative of what she's seeking in the

2 concurrently pending Smith versus Caesar's Entertainment Planet

3 Hollywood case which is the companion.

4       Now the Court has allowed these to come to Judge

5 Navarro as a single. There are motions to consolidate pending.

6 We have joined those and the parties have outlined in specific

7 detail the interrelatedness between those two.

8       We think it would be a waste of judicial, client, and

9 personal resources to allow this type of discovery to move

10 forward when there's those types of motions that are pending

11 that can resolve a lot of this particular -- the state of

12 affairs that we're finding ourselves here today.

13       We joined that motion to consolidate. We think that

14 there's clearly ample room. She argues that it may not. She

15 believe that it doesn't exist, but there's point by point

16 allegations of each complaint identified.

17       We have likewise filed motions to dismiss and anti-

18 SLAPP motions in the related case. Those motions are

19 dispositive in nature. She's also filed a Motion for Remand in

20 the other case. So if all these cases are consolidated and

21 those motions are pending, I think there would be a

22 considerable conservation, and the court has seen the

23 extensiveness of the documents --

24       **THE COURT:** It has.

25       **MR. CLAYTON:** -- by respectfully placing a hold on

1   what she's seeking in this case so that Judge Navarro and the

2   other magistrate or however it's going to be resolved can

3   resolve these issues.

4          Our clients can take a breath and allow for the Court

5   to do what it needs to do in these particular situations.  So I

6   think there's clearly the economics and those things that

7   motions to consolidate are trying to conserve, they're being

8   sidestepped or pushed away by the arguments that the plaintiff

9   is advancing.

10          Thank you, your Honor.

11          **THE COURT:**  Thank you.  Ms. Smith, please feel free

12   to respond.

13          **MS. SMITH:**  Okay.  Yes, I wanted to talk about the

14   agreement that -- really he was arguing about Ms. Radak because

15   there is an agreement, "Oh, okay, stay away from this person

16   that you don't know for -- until December 1, 2019."  And sure

17   that was signed, but there's also a part in the agreement that

18   allows for that to be severable.  There's actually two parts, I

19   believe it's number 7 and 14, I believe it's -- that it allows

20   that -- for that agreement to be severable when it -- if it's

21   in contradiction of any kind of Nevada law or judicial

22   proceeding like now with the subpoenas for Ms. Radak.

23          Even then I think it's only until December 1, 2019,

24   but I didn't see any reason why Ms. Radak who was involved

25   actually in creating her own messages can't be just -- can't be

1   deposed as to number one, how she got those messages, why she

2   distributed it, and why she spoke to another third party

3   basically accusing me of these messages before she even created

4   them.

5          So those are issues that I believe she should be

6   deposed about as well as Ms. Gianini who was involved in

7   helping her.  And so this Court actually can order Ms. Radak to

8   attend deposition as well as Ms. Gianini.

9          And then like, the defense for Ms. Radak and Gianini,

10  he said he doesn't know what documents he's asserting an

11  attorney/client privilege over.

12         Even though I'm arguing for crime fraud, it still

13  goes to show that he's just trying to get a broad protective

14  order over documents that he doesn't know about.  And I really

15  think the Court should deny that argument and deny his request

16  for a protection order over documents that he's never even seen

17  or had the time or whatever, the care to look at or look up.

18         Another thing that he argued is that because there

19  are other pending motions that the depositions of Radak and

20  Gianini, and I think Fennemore makes the same argument, that

21  because there are pending motions that these depositions should

22  be Stayed and not -- they shouldn't have to produce these

23  documents before these motions are decided.

24         And the thing about that, okay, Judge Foley had the

25  motions to dismiss on the table before he made the decision to

1  go ahead and allow discovery.  So even with those motions on

2  the table, the motions to dismiss, those pending motions on the

3  table, he still decided, "Hey it's okay go ahead," and he, you

4  know, ordered for discovery to begin.  So it began.

5          And you know, I subpoenaed the individuals who were

6  likely at the heart of the case.  And the Motion to Remand

7  that's in the separate case that they're trying to consolidate,

8  it's because that lawsuit really is in the Eighth Judicial

9  District Court or it's supposed to be.  They removed it here

10  because they want to get it to be heard here so they can

11  consolidate their cases.

12          Obviously there are issues with consolidation as I

13  explained.  As far as you know, when you they argue that they

14  only want to consolidate it for pretrial matters but that's

15  rarely ever the case.  Is that it's just consolidated for

16  pretrial matters.  But like I said, that -- the Caesar's case,

17  the pending Motion to Remand, and the reason why discovery has

18  not even began in that case yet is because there was a Stay

19  filed because of the Motion to Remand.

20          And when it comes to a jurisdiction issue, usually a

21  Motion to Stay is, you know, necessary or the Courts grant a

22  Motion to Stay if it's based on venue jurisdiction, that type

23  of stuff.  But when it's based on, "Oh, there -- well, there's

24  a pending motion to dismiss on the table or there's a pending

25  dispositive motion to dismiss," as it was done in Trade Bay,

34

1   the Courts said that a case shouldn't be Stayed just because

2   there's a dispositive motion on the table.

3             And again, their Motion to Dismiss is just laden,

4   laden with factual contentions that I point out in my

5   opposition.  All of which should be resolved either by through

6   discovery, deposing the individuals gathering the documents and

7   information that are in their possession, especially the

8   documents that they created, and having the Court also consider

9   those.

10            Because honestly, I really believe that their Motion

11  to Dismiss, and it's really hard to tell because of the factual

12  contentions.  And the -- then the evidence that they ask to be

13  judicially noticed by the Court, which is also improper, brings

14  up also a lot of factual contentions, again, which is resolved

15  through discovery.

16            And so they want to basically put a Stay or stop me

17  from getting those documents and doing discovery.  And at the

18  same time have the Court rule on their motions which

19  essentially are summary judgment motions, or they function as

20  motions for summary judgment as well.  And so they want to

21  basically hamstring me and say, "Hey, no.  Not going to let you

22  depose anyone, not going to let you get documents, but rule on

23  these motions to dismiss so this case could be over."  And

24  that's basically what they want.

25            **THE COURT:**  Thank you.  I believe the only other

1  motions that are pending are motions filed by another party --

2  or a nonparty, excuse me, law firm that was subpoenaed and some

3  individuals that -- or an individual that was subpoenaed

4  (glitch in audio) quash and a Motion to Compel and a motion to

5  hold that third party in contempt.  Those parties are not here

6  today -- or they are?  Okay.  Sorry.  I wasn't sure I was going

7  to say if there are then I'm happy to consider those as well.

8          Ms. Smith, we're talking about the documents that

9  were filed by Mr. Bowen's office, it's ECF number -- meaning

10  the file number, is electronic case file number is 52, is a

11  Motion to Quash.  And then you filed in response two motions, a

12  Motion to Hold the Law Firm in Contempt and a second Motion to

13  Compel the Depositions.  So I am --

14          **MS. SMITH:**  Yes.

15          **THE COURT:**  -- if Mr. -- are you Mr. Bowen?  I'm

16  sorry.  If you would like to be heard on your Motion to Quash,

17  I'd be happy --

18          **MS. SMITH:**  And sorry, your Honor, I also had a

19  Motion to Strike Their Reply -- that they would --

20          **THE COURT:**  On number 37?

21          **MS. SMITH:**  My Motion to Strike Their Reply which

22  included new evidence, was number 50.

23          **THE COURT:**  Thank you.  Number 50.  Right.  I misread

24  my own handwriting.  I will hear you on that as well.  So --

25          **MS. SMITH:**  Okay.

1          THE COURT:  -- why don't you go ahead since you had

2    come up, Mr. Bowen.

3          MR. BOWEN:  Thank you, your Honor.

4          THE COURT:  Okay.  Plaintiff (indisc.)

5          MR. BOWEN:  Your Honor, I don't have much to add.  I

6    -- going in the arguments of my learned counsel, we -- this --

7    these two matters are related.  Your nonparties to either of

8    them or to both of them rather and we represented Ms. Parazar

9    for literally weeks, and two or three of those weeks we were

10   attempting to withdraw.  No good deed goes unpunished.

11         But since that time we have been asked to -- we have

12   been -- we have received, Mr. Trout (phonetic) and myself, have

13   received subpoenas that are completely broad.  They want to

14   come on the premises, they want to inspect everything.  There's

15   no description whatsoever to the premises inspection.  And all

16   of the materials that were in the file that were discoverable,

17   and the clients materials were immediately given to

18   Ms. Parazar, were copied onto a drive, and given to -- a flash

19   drive, and given to her at the time that we withdrew and were

20   allowed to withdraw from the Court.

21         Mr. Trout was subpoenaed for a deposition by

22   Ms. Parazar.  He showed up for that deposition and gave

23   testimony.  And it was a very -- I wasn't aware when it was

24   happening, but I've since looked at the deposition.  It was a

25   very hostile deposition.  And there was overlap between this

1  case, Ms. Smith's case and the Parazar case.  And I'm not sure

2  why Ms. Smith or what intentions Ms. Smith has in re-deposing

3  him or deposing him again.

4         My knowledge is very limited.  But I think you

5  understand the law, obviously, Judge, and the facts and

6  circumstances.  I won't go on anymore other than to say this

7  has been very upsetting.  Ms. Parazar put a scathing comment

8  online about me, personally attacking me and my religion and my

9  position.

10        I was served during a religious service approximately

11  one business day before the deposition was set requiring me to

12  file immediate motion so I couldn't do a meet and confer.  I

13  understand Mr. Trout attempted to do a meet and confer.  But

14  it's been very upsetting.  And so we appreciate being here

15  today, Judge, and look forward to you ruling.  Thank you.

16        **THE COURT:**  Thank you.  Ms. Smith, why don't you

17  address Mr. Bowen's Motion to Quash your subpoenas --

18        **MS. SMITH:**  Sure.

19        **THE COURT:**  -- and then also, you can address after

20  that your Motion to Strike the reply which you filed on ECF

21  number 50.

22        **MS. SMITH:**  Yes.  Okay.  Sure.  So Mr. Bowen's Motion

23  to Quash, I didn't get that.  So I'm not sure what he wrote.

24        But I did file a motion to hold them in contempt and

25  to compel them.  So before all of these subpoenas went out,

1    there was a notice sent to the other side obviously saying

2    that, "Hey, I'm going to send out these subpoenas."

3            So as soon and that notice was filed, I guess, they

4    got in contact with Mr. Trout and Mr. Bowen because then

5    Mr. Trout and Mr. Bowen started trying to dodge service.

6            And my process server filed an affidavit, you know,

7    it's on file actually showing that they were attempting to

8    dodge service, meaning Mr. Bowen was telling the process

9    server, which I believe my mom said he did the same thing to

10   her.  Which there were issues with them because they were

11   working with the, I guess, the other side's attorney in my

12   mom's case to basically sabotage my mom's case.

13           And so yeah, my process servers tried to serve him.

14   Kept telling her he's out of town, he's not there, he left

15   early, all of the excuses in the book that he could give.  And

16   so I told the process server to well, serve him at church

17   because I am pretty sure he'll be a church on Sunday, he's the

18   bishop.  And I know that through a family friend.  But he's the

19   bishop so I'm pretty sure he'll be at church on Sunday.  Since

20   he's dodging service at his own law firm, serve him at church.

21   So I did not -- my first -- my go to wasn't to serve him at

22   church but he kept -- he was dodging service.

23           And then with Mr. Trout he was doing the same thing.

24   And that's why I believe that they got in contact with

25   Mr. Trout and Mr. Bowen.  So Mr. Trout was doing the same

1  thing.  I tried to serve him at his -- wherever he worked, his

2  workplace first.  My process server went there, first they told

3  her he wasn't there, same thing.

4          Then the day that -- there was a day he was there, my

5  process server said he refused to come forward to accept the

6  subpoena.  Okay so I had to now find a different route again to

7  serve him.  So he got served at his home.  So they knew about -

8  - it wasn't like they -- they're now finding -- they were now

9  finding out about the subpoena.  They knew about the subpoenas

10 before they were served on them.  They were just trying or

11 attempting to dodge service.

12          And so now they're acting like, "Oh well, we just got

13 it one day before the deposition or we just got it."  I think

14 in Brandon's case, a few days before the deposition, and they

15 are acting like, "Oh well, we can't attend because of short

16 notice."  When they already knew about the subpoena and they

17 knew that my process server was attempting to serve them, but

18 they were being untruthful and saying that they either weren't

19 there or they refused to come forward and accept the subpoenas.

20          And so with that I think their argument should be

21 disregarded as to why they didn't show up for their depositions

22 that were scheduled.

23          So the reason that they were subpoenaed is because

24 employees at Fennemore Craig's specifically send them letters

25 containing, you know, statements saying that I was a threat,

40

1   that I was a danger, that they wanted to include me or bring me

2   into my mom's lawsuit, because again, I told you I'm not

3   mentioned in my mom's lawsuit, and I'm really not a part of my

4   mom's lawsuit until, well, their side attempted to bring me in

5   as a witness, not my mom, they did.

6           And so the reason that Mr. Bowen and Mr. Trout were

7   subpoenaed for a deposition and for documents is because there

8   is reason to believe, especially from the document that was

9   sent from one of their employees at Fennemore Craig to

10  Mr. Trout and Mr. Bowen basically containing the slanderous

11  statements, there is reason to believe also that Mr. Trout and

12  Mr. Bowen have further communications with either that

13  employee, that same employee or other employees at Fennemore

14  Craig basically again, containing these slanderous statements,

15  the statements saying that I'm a threat, this, that against me.

16  Which is not under any type of litigation privilege because I'm

17  not involved in any litigation that either they were on or that

18  was concerned with them.  So anything about me that they sent

19  or that they received has nothing to do with a litigation as

20  they may try to say.

21          On my Motion to Strike, so I asked to strike

22  defense's reply which included a new evidence and new exhibits.

23  So defense basically filed his emergency motion.  Now instead

24  of attorney-client and all that he was asserting, "Oh, she has

25  issues," I guess because I had mental health issues in the past

1   or not in the past that one day basically that I shouldn't be

2   allowed to do depositions or gather documents or whatever.  And

3   so he inserted my medical records, which I also asked the Court

4   to seal and provide injunctive relief against him continually

5   distributing the medical records publicly.

6          And then -- so he made all these accusations saying

7   that I had made threats in the past, you know, at times they

8   all say, "Oh we -- it's just a reasonable belief."  But then

9   when they write and sometimes when they make statements, it'll

10  be like you know, they state it as if it's fact, meaning it

11  turns from, oh, just being belief to defamation because now

12  you're, you know, distributing and telling third parties that

13  I'm doing these things when I'm not or that I'm crazy, stuff

14  like that or that I have schizophrenia, and I don't.  Things of

15  that nature.

16         And so he made all those assertions in his initial

17  brief.  I replied stating, you know, they're incorrect and why

18  they're incorrect.  He then files a reply now packing on

19  evidence that is also -- that also contains factual

20  contentions, because the evidence that he included, at least

21  the way he described it, is not true.

22         I can't respond to that because then if I did

23  respond, he will file a Motion to Strike my Response, right?

24  Because you only get a brief opposition and then a response.

25  So it's unfair and, you know, other Courts have stricken

42

1   replies where it includes new evidence and new case law and new

2   arguments.

3           And so for him to then come on and try to pack on

4   evidence after he did his initial brief just making these

5   assertions, he didn't include any evidence, I don't have to

6   respond to evidence that he doesn't include.

7           But for him to now try to put that evidence in a

8   reply to my opposition and prevent me from being able to

9   respond and actually, you know, oppose his erroneous arguments,

10  I think it's unfair for him to be able to keep that on the

11  table without either allowing me to respond or having it

12  stricken.

13          Which I believe it should be stricken really because

14  it has nothing to do with the emergency Motion to Quash which

15  is based on the subpoenas and gathering evidence and being able

16  to take depositions.  I don't believe that has anything to do

17  with it, I just think it will continue to be a delay, so I

18  believe it should be stricken from the record, the evidence and

19  his response.

20          **THE COURT:**  Thank you.  I have one question,

21  Mr. Fugazzi, I know you filed, fairly recently, a Motion to

22  Extend some discovery.  And do you know the ECF number of that

23  by any chance?

24          **MR. FUGAZZI:**  It was filed on the 11th of the month,

25  your Honor.

1          **THE COURT:**  Something -- and I apologize --

2          **MR. FUGAZZI:**  I've got it.

3          **THE COURT:**  I am in a borrowed courtroom and I can't

4     access my system maybe the --

5          **MR. FUGAZZI:**  No, I've got it here, Judge --

6          **THE COURT:**  Okay.

7          **MR. FUGAZZI:**  -- if you give me one moment.

8          **THE COURT:**  61 is what the --

9          **MR. FUGAZZI:**  It should be --

10          **THE COURT:**  -- put --

11          **MR. FUGAZZI:**  Yeah, that sounds right.

12          **THE COURT:**  Okay.

13          **MR. FUGAZZI:**  It was September 11th.

14          **THE COURT:**  Okay.

15          **MR. FUGAZZI:**  Don't apologize.

16          **THE COURT:**  I don't need to hear anything else.  If

17     there's something you feel compelled to say, I won't stop you.

18          **MR. FUGAZZI:**  Thirty seconds.

19          **THE COURT:**  Mr. Bowen, the same.

20          **MR. FUGAZZI:**  Your Honor, I can be 30 seconds.  The

21     simple response is Judge Navarro herself in the Evans versus

22     Encore Event Technologies case that we cited, it's unpublished

23     but it's an order from Judge Navarro in footnote one where she

24     says, "in a reply a party may use evidence to rebut evidence

25     presented in an opposition to a Motion for Summary Judgment."

44

1   And there are clear allegations on page 3 and 11 that Ms. Smith

2   said she never threatened, never made a threat, there are also

3   allegations that she never even knew about the attachment of

4   her medical records and we attached declarations with her

5   authenticating them.  And the evidence that we attached to our

6   reply rebut that argument that she never threatened anyone.  So

7   unless the Court has questions --

8           **THE COURT:**  I understand quite well.

9           **MR. FUGAZZI:**  Thank you, your Honor.

10          **THE COURT:**  Thank you, Mr. Fugazzi.  Mr. Bowen did

11  you have something brief?

12          **MR. BOWEN:**  Yeah, just brief, Judge.  Thank you.  I

13  just can't let those allegations, I apologize.  I want to make

14  sure because we're on the record.  Nobody tried to evade

15  service, your Honor.  In fact, Mr. Trout did give a deposition

16  on the one matter.  I just would like to indicate that at no

17  time did my firm ever, ever collude with Fennemore Craig nor

18  have we ever done that.  Our goal was always to defend

19  Ms. Parazar to the best of our ability until we determined we

20  could not in good faith further act as her counsel and at that

21  time withdrew.  Thank you.

22          **THE COURT:**  Thank you.

23          There are 12 motions pending, perhaps 13.  Those are

24  ECF numbers 19, 31, 36, 37, 38, 42, 43, 44, 50, 52, 53, 54, and

25  61.  Number 19 is a Motion to Stay Discovery.

1    With that motion we stayed the rest of the -- if that

2  motion is granted, the remainder of the motions are rendered

3  moot, meaning they won't be ruled on at this time and they will

4  be dismissed without -- they would be denied without prejudice,

5  meaning they could be refiled at a time where discovery was

6  reopened should the Court not grant the Motion to Dismiss,

7  which is not before me.  The Motion to Dismiss is before Judge

8  -- I'm sorry, Judge Navarro and it is she who would decide that

9  motion as well as the Motion to Remand this Case, this

10  particular case to State Court.

11    Court will issue a written order on the Motion to

12  Stay Discovery, but I wanted to tell you in Court today in case

13  you have any questions that that motion will be granted.

14    And because the Motion to Stay Discovery will be

15  granted, all other pending motions will be denied without

16  prejudice as moot to be refiled should the Court not -- meaning

17  Judge Navarro, not either remand this case to State Court,

18  Ms. Smith, or not dismiss it.

19    And it is my job to take a preliminary look at the

20  Motion to Dismiss and the complaint you found, the basis for

21  the motion, your opposition, and I have done that.  And I have

22  found that there is a substantial likelihood that the motion

23  will be granted and that is the primary reason for staying

24  discovery.

25    Do you have any questions about what I've just said,

46

1    Ms. Smith?

2              **MS. SMITH:**  Yes.  So the Motion to Dismiss, that's

3    basically a Motion for Summary Judgment if you looked at it,

4    and --

5              **THE COURT:**  I do not decide that.  That is in front

6    of --

7              **MS. SMITH:**  Okay.

8              **THE COURT:**  -- Judge Navarro.  And she will decide

9    whether or -- whether to grant it or deny it.  That is entirely

10   within her purview.

11             **MS. SMITH:**  Okay, but you said you looked at it.

12             **THE COURT:**  If she believes it is a Motion for

13   Summary Judgment and it is an improper motion, she would deny

14   it.  But I am not telling you that she will or will not deny

15   it.  It is not something that I have any input on.  I am simply

16   here to deal with the discovery issues and all of those that

17   have been discussed today, the motion numbers that I have

18   mentioned to you.

19             **MS. SMITH:**  Okay.  But you said you looked at the

20   Motion to Dismiss and you feel like that it'll be granted.

21             **THE COURT:**  I --

22             **MS. SMITH:**  So that's why you're staying or you're

23   preventing me from deposing the parties who are at issue in

24   that motion.

25             **THE COURT:**  The law on motions to stay discovery

47

1    require the U.S. Magistrate Judge, which is what I am, to take

2    what's called a preliminary peek to look at the Motion to

3    Dismiss and to make a determination based on my experience and

4    my understanding of the law as to whether that motion is likely

5    to be granted.

6            If I believe that there is a substantial likelihood

7    of that motion being granted, then I am empowered to Stay

8    discovery.  So I could be wrong, because this is Judge

9    Navarro's decision and Judge Navarro and I do not discuss the

10   motions before her or before me.  She makes her decisions and I

11   make mine.  They are separate.

12           So she will decide the Motion to Dismiss.  I've not

13   discussed that with her.  It is my opinion that there is a

14   likelihood, a strong likelihood that the motion will be

15   granted.  And I'm exercising my discretion based on that

16   belief, based on my legal experience, and my understanding of

17   the law and my position as a Judge in this case to Stay

18   discovery and dismiss -- deny the remaining motions that I've

19   mentioned without prejudice, meaning they can be refiled and

20   reargued should Judge Navarro not grant the Motion to Dismiss.

21   They're not gone forever.  They're gone until that -- until

22   Judge Navarro makes a decision on the Motion to Dismiss.

23           MS. SMITH:  Okay.  And what -- can you state what

24   specifically you looked at or what specifically you -- well,

25   what specifically you looked at in the Motion to Dismiss that

1   caused you to have that opinion?

2   THE COURT:   There is a very -- there are several very

3   strong privileges under the law that exist that are well

4   settled.  Anti-SLAPP statutes are very clear.  The right to

5   petition the Court and as well -- and you have that same right.

6   And the litigation privilege, privilege of what is said in a

7   court proceeding.  Those matters cannot be the basis for claims

8   of defamation or slander.

9        In addition, the civil conspiracy that you pled is

10  against Fennemore Craig only, and the law in Nevada is very

11  clear that a company cannot conspire with itself.  So there

12  must be more than one entity, a company and its employees

13  cannot be co-conspirators.  There must be two separate

14  unrelated entities, and there is only one here.

15        Your emotional intentional infliction of emotional

16  distress claim just doesn't state a claim upon which relief can

17  be granted.  The use of the language that you allege, I

18  understand is offensive and would be offensive to many people,

19  and even if true on this single occasion that it occurred,

20  would not be sufficient to state an intentional infliction of

21  emotional distress claim under Nevada law.

22        So the claims that you have asserted, civil

23  conspiracy, slander, slander per se, defamation, defamation per

24  se, and the intentional infliction of claims will fail, I

25  believe, based on the law that is applicable to those claims.

1        With respect to the settlement agreement, there is an

2   exception to that settlement agreement that allows the

3   disclosure of it for purposes of either enforcing it or to

4   others who need to know within the law firm.  The use of that

5   settlement agreement in this case was not impermissible in my

6   legal opinion.

7        So I believe that your claims will fail and/or be

8   remanded.  The Court -- Judge Navarro may just choose to remand

9   them to State Court, but I do not believe they will survive in

10  the Federal Court System.

11       That is why I'm Staying discovery.  But I will put

12  all of that in a written order for you so that you can see it

13  and analyze it for yourself.

14       MS. SMITH:  Okay.  And did you just read their Motion

15  to Dismiss or did you also look at the opposition?

16       THE COURT:  I looked at --

17       MS. SMITH:  Or just their --

18       THE COURT:  -- the motion, the opposition, and the

19  reply.  I've looked at all the pleadings in this case not just

20  one side.  I've read your motions, your oppositions, your

21  replies, defendant's motions, oppositions, and replies, as well

22  as those filed by third parties.  I looked at everything, spent

23  quite a bit of time.  That's why this has been sitting for some

24  period of time.  It was a lot to review.

25       MS. SMITH:  All right.  So the defamation claim is

50

1   not only -- is not about any statements that they made in

2   court.  That's the thing.

3            **THE COURT:**  Well, the Judge --

4            **MS. SMITH:**  It's about --

5            **THE COURT:**  Judge Navarro will make that decision as

6   I said I'm not making a decision that your case is being

7   dismissed.  I'm making a decision that you case is being Stayed

8   for discovery purposes.

9            If there's nothing further from defendants?

10           **MR. FUGAZZI:**  The Stay is effective as of now is the

11  question?

12           **THE COURT:**  The Stay is effective as of the Court's

13  announcement of its decision today and a written order will

14  follow so that Ms. Smith and anybody who chooses to take issue

15  with what is written may do so in accordance with the rules

16  applicable in Federal Court.

17           **MR. FUGAZZI:**  Thank you, your Honor.

18           **MR. BOWEN:**  Thank you, your Honor.

19           **THE MARSHAL:**  All rise.

20      **(Audio ended at 2:15 p.m.)**

21

22

23

24

25

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____                    October 4, 2019
        Signed                                              Dated


                    *TONI HUDSON, TRANSCRIBER*

CERTIFICATE OF SERVICE

I certify that I am serving a true and correct copy of the attached OBJECTIONS TO THE NEW

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS on the parties set forth below by:

_____            placing an original or true copy thereof in a sealed envelope with the correct prepaid

postage affixed for collection and mailing in the United States Mail, at Las Vegas,

Nevada.

___X___            Certified Mail, Return Receipt Requested of the document(s) listed above to the

person(s) at the address(es) set forth below

_____            E-service

_____            Personal delivery through a process server of the document(s) listed above to the

person(s) at the address(es) set forth below

Alex Fugazzi and Michael Paretti

SNELL AND WILMER

3883 Howard Hughes Parkway Suite 1100

Las Vegas, NV 89169

702-784-5200

afugazzi@swlaw.com

mparetti@swlaw.com

/s/ Latonia Smith

Plaintiff, In Proper Person

Dated this 7th day of October 2019