# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

LATONIA SMITH,                          )
                                    )
               Plaintiff,          )     Case No.: 2:19-cv-00824-GMN-EJY
   vs.                                  )
                                      )           **ORDER**
FENNEMORE CRAIG,                        )
                                      )
              Defendant.          )
_____ )

      Pending before the Court are Defendant Fennemore Craig's ("Defendant's") Motions to Dismiss the Complaint, (ECF Nos. 10, 11). Plaintiff Latonia Smith ("Plaintiff") filed a Response, (ECF No. 21), and Defendant filed a Reply, (ECF No. 28). Also pending before the Court is Plaintiff's Cross-Motion for Leave to Amend the Complaint, (ECF No. 22). Defendant filed a Response, (ECF No. 29), and Plaintiff filed a Reply, (ECF Nos. 32, 33).[1] For the reasons discussed below, the Court **GRANTS in part** and **DENIES in part** Defendant's Motions to Dismiss, and **DENIES** Plaintiff's Motion for Leave to Amend the Complaint.

## I.    <u>BACKGROUND</u>

      Plaintiff bases this action on allegations of "intentional, reckless, and malicious attacks"

---

[1] Plaintiff's Reply addresses both her Motion to Amend the Complaint and Defendant's Motions to Dismiss. The docket thus reflects two entries, (ECF Nos. 32, 33), with each entry holding an identical filing. Defendant now moves to strike Plaintiff's Reply to the extent it concerns the Motions to Dismiss because it would constitute a surreply filed without leave of court. The Court agrees. Plaintiff's Reply, (ECF Nos. 32, 33), for all intents and purposes, is a surreply opposing Defendant's Motions to Dismiss. From the beginning, the Reply argues that "[Defendant's] desperate reply to Plaintiff's Opposition to the Motions to Dismiss only highlight why their motions to dismiss should be denied as frivolous." (Reply 1:24–25). The Reply continues to oppose Defendant's Motions to Dismiss for nine out of thirteen pages. (*Id.* 1:24–10:2). Because Plaintiff did not seek leave of court before filing the surreply, it is not permitted. *See* D. Nev. Local R. 7-2(b). Plaintiff's *pro se* status does not excuse her from clear non-compliance with procedural rules. *See, e.g.*, *Carter v. C.I.R.*, 784 F.2d 1006, 1008–09 (9th Cir. 1986). While Plaintiff later moved for leave to file her surreply, (ECF No. 42), she failed to explain how Defendant's Reply offered new arguments warranting that surreply. Accordingly, the Court will not consider Plaintiff's Reply, (ECF Nos. 32, 33), to the extent it opposes Defendant's Motions to Dismiss.

by Defendant against her, which stem from Plaintiff's service as a witness in ligation between her mother (Annecer Peruzar), Caesars Entertainment, and Planet Hollywood Las Vegas. (Compl. ¶¶ 4–11, ECF No. 1). That litigation concerned Mrs. Peruzar's claims that Planet Hollywood improperly terminated her as a guest room attendant. Defendant (a regional law firm) represented Caesars and Planet Hollywood in the case. (*Id.* ¶¶ 4, 18–26).

According to Plaintiff, Defendant's employees engaged in a concerted effort to threaten and intimidate Plaintiff based on their belief that she was responsible for various "hateful messages" sent to Caesars and Planet Hollywood after the suspension and termination of Mrs. Peruzar. (*Id.* ¶¶ 29–30). For example, these threatening acts allegedly done by Defendant's employees consisted of: "accusing [Plaintiff] of crimes to third parties," adding Plaintiff to a "lawsuit/TPO," seeking "temporary restraining orders" against Plaintiff, and disclosing a "confidential settlement" between Plaintiff, Caesars, and Planet Hollywood. (*Id.* ¶¶ 30–37, 44). For these actions, Plaintiff filed this lawsuit on May 13, 2019, alleging five causes of action: (1) civil conspiracy; (2) slander/slander per se; (3) defamation/defamation per se; (4) intentional infliction of emotional distress; (5) permanent injunctive relief. (*Id.* ¶¶ 62–82).

Roughly a month after Plaintiff filed her Complaint, Defendant moved to dismiss all claims through two avenues: (1) a Special Motion to Dismiss pursuant to Nevada's anti-SLAPP law, Nevada Revised Statute 41.660 ("anti-SLAPP Motion"); and (2) a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] (Mots. Dismiss, ECF Nos. 10, 11).

## II.  **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action

---

[2] Ten days after filing her Complaint, Plaintiff filed a Motion seeking remand to the Eighth Judicial District Court for Clark County, Nevada. (Mot. Remand, ECF No. 6). The face of this Motion, however, shows her remand request concerned another case she brought in this District: case number 2:19-cv-00856-GMN-NJK. But if Plaintiff's Motion did seek remand of this matter, the Court has subject-matter jurisdiction based on 28 U.S.C. § 1332. Consequently, the Court **DENIES** Plaintiff's Motion to Remand, (ECF No. 6). Additionally, the Court **DISMISSES as moot** Defendant's Motion to Consolidate, (ECF No. 23), because case 2:19-cv-00856 has already been remanded to Nevada state court.

that fails to state a claim upon which relief can be granted. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint sufficiently states a claim, the Court takes all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The Court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is *plausible*, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

A court may also dismiss a complaint pursuant to Federal Rule of Civil Procedure 41(b) for failure to comply with Federal Rule of Civil Procedure 8(a). *Hearns v. San Bernardino Police Dept*., 530 F.3d 1124, 1129 (9th Cir. 2008). Rule 8(a)(2) requires that a plaintiff's complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Mindful of the fact that the Supreme Court has "instructed the federal courts to liberally construe the 'inartful pleading' of pro se litigants," *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987), the Court views Plaintiff's pleadings with the appropriate degree of leniency.

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion . . . . However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted). Similarly,

"documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss becomes a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

If the court grants a motion to dismiss, it must then decide whether to grant leave to amend. The court should "freely give" leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant . . . undue prejudice to the opposing party by virtue of . . . the amendment, [or] futility of the amendment . . . ." Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962). Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

## III.  **DISCUSSION**

Defendant frames Plaintiff's lawsuit as an attempt to stifle its access to courts and punish it for securing protecting orders against her. (Anti-SLAPP Mot. 1:3–12, ECF No. 10). Accordingly, Defendant invokes Nevada's anti-SLAPP statute, which requires dismissal of claims based on good faith communications in furtherance of a person's right to free speech on issues of public concern. (*Id.*). Defendant also argues that, even if Plaintiff's Complaint were not barred by Nevada's anti-SLAPP statute, dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate because her allegations fail to state plausible claims. (*Id.* 1:26–2:3).

The below discussion first addresses the merits of Defendant's anti-SLAPP Motion, then the plausibility of Plaintiff's claims based on her factual allegations.

**A. Anti-SLAPP Motion**

A district court analyzing a special motion to dismiss under Nevada's anti-SLAPP statute engages in a two-step analysis. Nev. Rev. Stat. § 41.660(3). First, the court "[d]etermine[s] whether the moving party has established, by a preponderance of the evidence, that the claim is based upon a good faith communication in furtherance of . . . the right to free speech in direct connection with an issue of public concern. *Id.* § 41.660(3)(a). If the moving party fails to carry its burden at this first step, the inquiry ends and the case advances to discovery. *Coker v. Sassone*, 432 P.3d 746, 748 (Nev. 2019). If the moving party succeeds, however, the court advances to the second step. There, the burden shifts to the non-moving party to show "with prima facie evidence a probability of prevailing on the claim[s]." Nev. Rev. Stat. § 41.660(3)(b); *Coker*, 432 P.3d at 748. If the non-moving party fails to satisfy its burden on the second step, the court dismisses the action. *See id.* § 41.660(5).

The first step of Nevada's anti-SLAPP analysis holds two components: (1) determining if the non-moving party's claims for relief are based on a "communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern"; and, if so, (2) determining if such communication was in "good faith." *Id.* § 41.660(3)(a). Nevada Revised Statute 41.637 defines four forms of communication that can satisfy the first component. The most relevant one here, according to Defendant, is the third form listed at NRS 41.637(3), which concerns a "[w]ritten or oral statement made in direct connection with an issue under consideration by a legislative, executive or judicial body, or any other official proceeding authorized by law." *Id.* § 41.637(3); *Omerza v. Fore Stars, Ltd*, 455 P.3d 841, at *2 (Nev. 2020) (unpublished); (Anti-SLAPP Mot. 9:4–14). To then satisfy the second component of "good faith," the communication must be "truthful or made without knowledge of its falsehood." *Shapiro v. Welt*, 389 P.3d 262, 268 (Nev. 2017) ("[N]o communication falls within

the purview of NRS 41.660 unless it is 'truthful or is made without knowledge of its falsehood.'") (quoting Nev. Rev. Stat. § 41.637).

In analyzing the merits of Defendant's anti-SLAPP Motion, the Court turns to the Complaint's allegations since Defendant challenges solely the "legal sufficiency" of Plaintiff's claims. (*See* Anti-SLAPP Mot. 7:25–28, ECF No. 10); (Reply 2:1–5, 4:6–9, ECF No. 28); *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir.), *amended*, 897 F.3d 1224 (9th Cir. 2018), *and cert. denied sub nom. Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*, 139 S. Ct. 1446 (2019) ("[W]hen an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated.").[3]

### (1) Form of Communication under Nevada Revised Statute 41.637(3)

For a statement to fall under the protection of NRS 41.637(3), it must "(1) relate to the substantive issues in the litigation and (2) be directed to persons having some interest in the litigation." *Patin v. Ton Vinh*, 429 P.3d 1248, 1251–52 (Nev. 2018). While NRS 41.637(3)'s reach appears broad, it does not cover "any connection, however remote, with [a judicial] proceeding." *Id.* (internal quotations omitted). *Patin v. Ton Vinh*, for example, concerned a law firm's post on its website, which listed a jury verdict from one of the firm's cases dealing with dental malpractice and wrongful death. *Id.* at 1249. One doctor named in that suit filed a

---

[3] On March 3, 2020, Defendant filed a Motion for Leave to File Supplemental Authority, (ECF No. 82), which submits a ruling from the Eighth Judicial District Court for Nevada addressing similar claims by Plaintiff as this case but against different defendants. In the Eight Judicial District Court's decision, the court granted the defendants' Special Motion to Dismiss pursuant to NRS 41.660 with regard to Plaintiff's complaint. However, this state-court decision will not make a material difference to this Order. Though that state-court case dealt with similar factual allegations as here, the state court's decision relied on the parties' submissions of evidence (or lack thereof) to make findings of fact and conclusions. (Entry of Findings of Fact, Conclusions of Law, and order Granting Special Mot. Dismiss 2:2–6:24, Ex. A to Mot. for Leave to File Supplemental Authority, ECF No. 82-1). The Court's focus at this stage, by contrast, is limited to the pleadings since Defendant's challenge came only to the "legal sufficiency" of the Complaint. Accordingly, this Order declines to consider the Eighth Judicial District Court's decision and findings in ruling on Defendant's Motions to Dismiss, (ECF Nos. 10, 11); and thus the Court **DENIES** Defendant's Motion for Leave to File Supplemental Authority.

defamation action, claiming the post could be construed as stating that the jury found him negligent in causing the wrongful death when, in fact, another doctor had been found negligent. *Id.* The law firm thereafter moved to dismiss the defamation action under Nevada's anti-SLAPP statute by arguing that the posting fell under NRS 41.637(3). *Id.* But the Nevada Supreme Court disagreed. It reasoned that the posting did not fall under NRS 41.637(3) for the following reasons even though the jury verdict was pending on appeal: the posting did not relate to substantive issues in the appeal or the district court's proceedings; and, by merely being on the law firm's website, the posting was not directed to any specific person or group with an interest in the litigation. *Id.* at 1252.

Here, there are three categories of statements allegedly made by Defendant that serve as a basis for Plaintiff's claims. The first arises from several offensive remarks made by two of Defendant's employees (Shannon Pierce and Ethan Thomas) "after a public proceeding" on April 17, 2019. The Complaint alleges that Pierce and Thomas were angry about an "affidavit filed by [Plaintiff]" in the litigation between Plaintiff's mother, Planet Hollywood, and Caesars, so Pierce and Thomas proceeded to call Plaintiff a "nigga" followed by several threats and personal insults. (Compl. ¶¶ 40, 68, 73). The second category of statements concerns Defendant's disclosure of documents to "third parties," including a district court and counsel for Plaintiff's mother. The disclosed documents were several of Plaintiff's medical records and a settlement agreement Defendant had with Plaintiff. (*Id.* ¶¶ 37, 44, 46–50, 63–65, 68–69, 73). The final category arises from Defendant's "defamatory statements" through assertions that Plaintiff threatened and stalked others. (*Id.* ¶¶ 33, 42–44, 73). Plaintiff's Complaint states that these assertions of threatening and stalking behavior by Plaintiff occurred mostly in Defendant's legal filings on behalf of Caesars and Planet Hollywood. (*Id.*). Defendant argues that each category of statements constitutes protected activity under NRS 41.637(3) because

they occurred in relation to on-going litigation and were made to people involved in such litigation. (Anti-SLAPP Mot. 9:8–10:10).

Addressing first the offensive remarks allegedly made by Pierce and Thomas on April 17, 2019, the Court disagrees with Defendant's argument that they fall under NRS 41.637(3). These remarks were merely personal insults and threats lodged *after* a "public proceeding"; and, as alleged in the Complaint, the statements did not concern substantive issues in litigation. (*See* Compl. ¶ 40); (*see also id.* ¶¶ 68, 73, 78) (showing that this category of statements serves, in part, as a basis for Plaintiff's claims of slander/slander per se, defamation/defamation per se, and intentional infliction of emotional distress). Accordingly, such statements do not satisfy the first component of Nevada's anti-SLAPP statute. Whether the remarks support actionable claims is a separate issue addressed later in this Order.

Defendant succeeds, however, in showing that the second and third categories of statements were "in direct connection with an issue under consideration by a . . . judicial body" for purposes of NRS 41.637(3). Regarding the second category of statements about Defendant's disclosure of Plaintiff's settlement agreement and medical records, the Court arrives at its conclusion based on the following documents referenced in the Complaint and provided by the parties: the 2018 settlement agreement between Plaintiff and Defendant; a letter dated March 1, 2019, sent by Shannon Pierce (as an attorney for Defendant) to Ethan Thomas, Brandon Trout, Jerome Bowen, Shawna Braselton, and Wade Beavers; and Defendant's motion for a protective order against Plaintiff filed on April 22, 2019, with a Nevada state court.[4] (2018 Settlement Agreement, Ex. E to Req. Judicial Notice, ECF No. 12-

---

[4] The Court takes judicial notice of these three documents even though the Complaint does not explicitly reference them because each serve as a basis for Plaintiff's claims, neither party specifically disputes their authenticity, and either Plaintiff or Defendant provided them in relation to the Motions to Dismiss. *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). The Court considers them for their existence, not for the truth of their contents.

5); (Letter dated March 1, 2019, from Shannon Pierce to Brandon J. Trout, Ex. F to Pl.'s Resp., ECF No. 21-2); (Defs.' Em. Mot. Protective Order, Ex. B to Req. Judicial Not., ECF No. 12-2). These documents, when considered with the Complaint, reveal that the disclosures at issue in this second category occurred in two instances: (1) when Defendant's attorney (Shannon Pierce) mailed Plaintiff's settlement agreement to the counsel for Plaintiff's mother on March 1, 2019;[5] and (2) when Defendant discussed Plaintiff's settlement agreement and medical records in a motions for temporary protective orders against Plaintiff. (Compl. ¶¶ 9, 35–38, 42–44, 47–51, 63–65, 74). Both instances of disclosures related to substantive issues in on-going litigation and were directed to individuals involved in the litigation. That is, the March 1, 2019 letter advised counsel for Plaintiff's mother that Defendant "will be addressing our previous issues with [Plaintiff] in this litigation as well." (Letter dated March 1, 2019, from Shannon Pierce to Brandon J. Trout, Ex. F to Pl.'s Resp.). The letter then included the settlement agreement to reference previous issues of restricting Plaintiff's proximity to Samantha Radak (a supervisor for Planet Hollywood) and disparaging comments about Caesars and Planet Hollywood. Similarly, Defendant's motion for a temporary protective order included Plaintiff's settlement agreement and medical records to give the petitioned Nevada state court relevant documents for deciding to enjoin Plaintiff during litigation.

With the third category of statements about Plaintiff threatening and stalking others, these statements also occurred in filings with Nevada state courts and the letter sent to counsel for Plaintiff's mother during her on-going litigation with Caesars and Planet Hollywood. (Compl. ¶¶ 37, 42). For example, the Complaint alleges that Defendant, through Shannon

---

[5] Plaintiff presents argument about how disclosing the settlement agreement to Brandon Trout and Jerome Bowen breached confidentiality provisions of the agreement. But Plaintiff does not present a breach of contract claim; and thus, the success of such a claim need not be analyzed in the anti-SLAPP analysis. Moreover, the issue here is solely whether a communication related to "substantive issues in . . . litigation" and was "directed to persons having some interest in the litigation."

Pierce, "filed publicly with the court and made wild accusations about [Plaintiff] committing crimes." (*See id.* ¶ 42).  Plaintiff similarly alleges that Defendant engaged in an "agenda to intimidate, harass, and defame [Plaintiff] as a witness" by filing "frivolous and consecutive [temporary protective order] filings." (*Id.* ¶¶ 44, 49–50).  As statements about pending litigation made directly to a petitioned court or persons involved in that on-going litigation, they fall under NRS 41.637(3) as communications "in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern."

### (2) "Good Faith" under Nevada Revised Statute 41.637

Because portions of Plaintiff's Complaint rely on written and oral statements made by Defendant in direct connection with an issue under consideration by a judicial body, the next issue is whether those statements are "good faith communications" by being "truthful" or "made without knowledge of . . . falsehood". *See* Nev. Rev. Stat. § 41.637; *id.* § 41.660(a).  To show "good faith communications" as the basis for Plaintiff's Complaint, Defendant first focuses on the statements it allegedly made to Nevada state courts in support of temporary protective orders against Plaintiff—specifically, statements "accusing [Defendant] of the crimes of stalking, harassment, aggravated stalking, sending threatening messages . . . and called her a 'schizophrenic' . . . ." (Compl. ¶ 68).  According to Defendant, these statements qualify as "good faith communications" barred by Nevada's anti-SLAPP statute because they were "honest opinion" and based on Plaintiff's past conduct. (*See* Anti-SLAPP Mot. 9:16–20).  Defendant then supports this argument by citing to its motion seeking a protective order and granted protective orders. (*Id.*) (citing Ex. B. to Req. Judicial Notice, ECF No. 12-2).

Defendant's anti-SLAPP motion fails to the extent it argues that the statements made about Plaintiff stalking and threatening others would constitute "good faith communication."  The anti-SLAPP Motion fails in this regard because the Complaint specifically alleges that

Defendant made these statements "with actual knowledge of their falsity."[6] (Compl. ¶¶ 84–91). Since Defendant brings its anti-SLAPP Motion strictly on the legal sufficiency of Plaintiff's Complaint, it is beyond the Court's current role to weigh the veracity of evidence not referenced in the Complaint to determine whether Defendant's statements were—in fact—truthful or made without knowledge of falsity. *See, e.g.*, *Las Vegas Metro. Police Dep't v. Harris Corp., M/A Com*, No. 2:13-cv-01780-GMN, 2015 WL 895054, at *3 (D. Nev. Mar. 3, 2015) (noting that, for purposes of a motion under Federal Rule of Civil Procedure 12(b)(6), a court may take judicial notice of documents in a public record, but only for "notice of the existence of these documents" rather than "the truth of any disputed facts therein"). *Cf. Rosen v. Tarkanian*, 453 P.3d 1220, 1223 (Nev. 2019) (explaining how a determination of "good faith communication" requires "consideration of all of the evidence submitted by the defendant in support of his or her anti-SLAPP motion."). Indeed, for the exhibits that Defendant provided to the Court in support of its Motions to Dismiss—including a motion seeking a protective order and the related protective orders—Defendant simply "requests that the Court take judicial notice of the existence of these documents, and not for the truth of any disputed facts therein." (Reply 12:3–11, ECF No. 28).

Defendant, moreover, does not provide a basis for the Court to automatically consider as true its statements made to another court in pursuit of protective orders. Nor does Defendant cite authority for the position that granted protective orders stand, on their own, to show that

---

[6] Plaintiff's allegations about "actual knowledge of their falsity" arise in the context of a broad reference to the "defamatory accusations/statements." (Compl. ¶ 84) ("The defendant[s] published false and defamatory accusations/statements with actual knowledge of their falsity and/or reckless disregard for the truth."). Though broad, this reference is clear enough for the Court to interpret it as regarding Defendant's alleged statements at issue in Plaintiff's third cause of action for defamation. And in that third cause of action, Plaintiff identifies Defendant's allegedly false statements as those "accusing her of the crimes of stalking, harassment, aggravated stalking, sending threatening messages . . . and call[ing] her a 'schizophrenic'" in various petitions for temporary protective orders submitted to Nevada state courts. (*id.* ¶ 73); (Defs.' Em. Mot. Protective Order, Ex. B to Req. Judicial Not., ECF No. 12-2).

the related motions held only truthful facts or statements made without knowledge of falsity. (*Cf.* Temp. Order for Protection, Ex. F. to Mot. J. Not., ECF No. 12-6) (granting relief because "sufficient representations have been made"). Without evidence presented in this case to show the truth of Defendant's statements about Plaintiff stalking and threatening others, there is no basis for the Court to override Plaintiff's allegations and declare them "good faith communications" under Nevada's anti-SLAPP statute. *Cf. United Auto. Ins. Co. v. Christensen*, No. 2:18-cv-02269-JAD-BNW, 2019 WL 4394734, at *3 (D. Nev. Sept. 13, 2019) (analyzing a motion under Nevada's anti-SLAPP statute and explaining that, without evidentiary details of the "representations and conduct" in other cases, "the court has no way to determine whether [the defendant's] communications [in those other cases] were truthful or made without knowledge of their falsehood."). Consequently, to the extent that Plaintiff's claims arise from Defendant's statements about her stalking and threatening others, such claims are not subject to dismissal under Nevada's anti-SLAPP statute at this pleadings stage. *See* Nev. Rev. Stat. § 41.660(3)(a)–(b). *See, e.g.*, *Nano Found., Ltd. v. Silver*, No. 2:19-cv-04237-SVW-PJW, 2019 WL 6723428, at *2 (C.D. Cal. Aug. 20, 2019) (citing *Planned Parenthood*, and explaining that a defendant claiming its statements were truthful, and thus within the protection of California's anti-SLAPP statute, created a factual issue requiring consideration under Federal Rule of Civil Procedure 56.).

Defendant nevertheless satisfies its burden on the second component of Nevada's anti-SLAPP statute through the Complaint's allegations about Defendant wrongfully disclosing Plaintiff's settlement agreement and medical records. To arrive at this conclusion, the Court again turns to the relevant documents provided by the parties' briefs, which the Court previously took judicial notice of. *See supra* Section A.(1) (reviewing the settlement agreement, a letter from Shannon Pierce dated March 1, 2019, and Defendant's emergency motion for protective order filed April 22, 2019). In essence, the disclosures at issue in the Complaint

merely stated the existence of Plaintiff's settlement agreement and applicable medical records (records previously filed by Plaintiff's mother in her lawsuit). (Compl. ¶¶ 9, 42, 47–50, 63–65); (June 2018 Settlement Agreement, Ex. E to Mot. Judicial Not.); (Def.'s Em. Mot. Protective Order 4:6–5, Ex. B to Mot. Judicial Notice). These disclosures and explanations of content were truthful—the settlement agreement and medical records did, in fact, exist. Accordingly, Nevada's anti-SLAPP statute bars relief for claims based on these true disclosures because they constitute "good faith communication" related to substantive issues in pending litigation and made to the parties, counsel, and courts involved in that litigation. Nev. Rev. Stat. § 41.637(3).

### 3) Probability of Prevailing on the Claims

Since Defendant satisfies its initial burden of showing that parts of Plaintiff's claims are based on good faith communications as defined in NRS 41.660(3)(a) and 41.637—specifically, the parts alleging that Defendant wrongfully disclosed Plaintiff's settlement agreement and medical records through motions for temporary protective orders and a letter to her mother's counsel in another case—the Court next moves to the second step of Nevada's anti-SLAPP statute. This second step requires the Court to determine if Plaintiff "has demonstrated with prima facie evidence a probability of prevailing" on her claims. Nev. Rev. Stat. § 41.660(3)(b). Because Defendant challenges only the "legal sufficiency" of Plaintiff's Complaint, all Plaintiff must do to satisfy her burden at this second step is show that her Complaint's allegations support plausible claims.[7] *Planned Parenthood Fed'n of Am., Inc*, 890 F.3d at 834.

---

[7] Defendant appears to argue that it succeeds on the second step of NRS 41.660(3)(b) because NRS 41.650 grants immunity from "any civil action for claims" based upon "good faith communications in furtherance of the right to petition." (Anti-SLAPP Mot. 10:23–11:4). This argument could, however, simply be an alternative reason for dismissal aside from Nevada's anti-SLAPP statute. If Defendant cited NRS 41.650 to satisfy the second step of NRS 41.660(3)(b), its argument fails. Accepting this argument would render the anti-SLAPP statute's second step meaningless, because it essentially stands for the position that satisfying the first step of the anti-SLAPP statute automatically satisfies the second step. *See* Nev. Rev. Stat. § 41.660(3)(b) (stating that if the moving party has established that a claim is based on a good faith communication for purposes of NRS 41.660(3)(a), the court then must "determine whether the plaintiff has demonstrated with prima facie evidence a probability of prevailing on the claim."); *cf. United States v. Cabaccang*, 332 F.3d 622, 627 (9th Cir. 2003) (en banc) ("[W]e must interpret statutes as a whole, giving effect to each word and making every effort not to

As detailed below, the Complaint does not provide sufficient factual allegations to show how Defendant's disclosure of Plaintiff's settlement agreement and medical records could plausibly support her claims for relief. That part of her claims is therefore subject to dismissal under Nevada's anti-SLAPP statute. For the other portions of Plaintiff's claims which are not subject to Nevada's anti-SLAPP statute, those portions are subject to dismissal through the distinct route of Federal Rule of Civil Procedure 12(b)(6) because of insufficient factual allegations and a litigation privilege under Nevada law.

### (a) *Civil Conspiracy*

Plaintiff's first claim for civil conspiracy alleges that Defendant engaged in a "plot to harass, defame, and intimidate" Plaintiff. (Compl. ¶ 63). According to the Complaint, Defendant carried out the conspiracy by distributing Plaintiff's confidential settlement agreement, filing motions for temporary protective orders against Plaintiff, and furthering Defendant's clients' goal of "retaliating against" Plaintiff's mother. (*Id.* ¶¶ 63–65).

"An actionable civil conspiracy consists of a combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another, and damage results from the act or acts." *Consol. Generator-Nevada, Inc. v. Cummins Engine Co., Inc.*, 971 P.2d 1251, 1256 (Nev. 1998) (internal citations and quotation marks omitted). Under Nevada law, agents of a single principal cannot be held liable for civil conspiracy when acting in their official capacity for the principal and not as individuals pursuing an individual advantage. *Cf. Collins v. Union Fed. Sav. & Loan Ass'n*, 662 P.2d 610, 622 (Nev. 1983); *Flynn v. Liner Grode Stein Yankelevitz Sunshine Regenstreif & Taylor LLP*,

---

interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous." (quoting *Boise Cascade Corp. v. EPA*, 942 F.2d 1427, 1432 (9th Cir. 1991) (internal quotation marks omitted)). Moreover, demonstrating immunity from suit is crucially different than succeeding on a special motion to dismiss under Nevada's anti-SLAPP statute and thus being entitled to the statute's benefits.

No. 3:09-cv-00422-PMP, 2010 WL 4121886, at *9 (D. Nev. Oct. 15, 2010) (dismissing with prejudice a civil conspiracy claim under Nevada law against two attorneys and their clients).

Here, Plaintiff's civil conspiracy claim is only against Defendant for securing protective orders in its capacity as counsel for clients. (*See* Compl. ¶¶ 63–65). The Complaint does not allege a pursuit for individual advantage outside that role as counsel. Plaintiff therefore does not assert an actionable basis for civil conspiracy as a matter of law; and thus, the Court dismisses the claim with prejudice.

Aside from pleading deficiencies, Nevada recognizes the "longstanding common law rule that communications uttered or published in the course of judicial proceedings are absolutely privileged, rendering those who made the communications immune from civil liability." *Greenberg Traurig v. Frias Holding Co.*, 331 P.3d 901, 903 (Nev. 2014) (citations and quotations omitted). This litigation privilege is broad; it applies so long as the statements are "in some way pertinent to the subject of the controversy" and "even if the communications were made with knowledge [of falsity] and malice." *Id.* at 903.

The litigation privilege operates to bar Plaintiff's civil conspiracy claim because the claim targets Defendant's acts in petitioning courts for relief through motions for temporary protective orders. Indeed, Plaintiff frames the conspiracy as accomplishing its unlawful goal by having "several courts . . . considering the various [temporary protective orders] filed against [Plaintiff]." (Compl. ¶ 65).

**(b)** *Slander/Slander per se and Defamation/Defamation per se*

Plaintiff's second and third claims for slander/slander per se and defamation/defamation per se rely on identical allegations. (*Id.* ¶¶ 67–76). Both allege that Defendant made false statements accusing Plaintiff of "the crimes of stalking, harassment, aggravated stalking, sending threatening messages," and making other offensive comments. (*Id.*). The claims also rely on Defendant's disclosure of its settlement agreement with Plaintiff and medical records

when either petitioning a state court for temporary protective orders or communicating with her mother's counsel. (*Id.*).

For Plaintiff to state an actionable defamation claim, the Complaint must allege facts supporting four elements: (1) Defendant made statements that were false and defamatory concerning Plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages. *Flowers v. Carville*, 266 F. Supp. 2d 1245, 1251 (D. Nev. 2003) (citing *Pegasus v. Reno Newspapers*, 57 P.3d 82, 90 (Nev. 2002)). A claim for slander involves the same elements as defamation, but also requires "a showing of special damages unless the defamatory statement is slanderous per se." *See, e.g.*, *Guinn v. Yellow Checker Star*, Inc., No. 2:15-cv-00344-APG-GWF, 2015 WL 6123193, at *2 (D. Nev. Oct. 16, 2015). Moreover, "whether a statement is capable of a defamatory construction is a question of law for the court to decide." *Flowers*, 266 F. Supp. 2d at 1251.

Addressing first the allegations that Defendant falsely accused Plaintiff of committing crimes, the Complaint largely fails to state when and where Defendant made such statements. (*See* Compl. ¶¶ 68, 73). Parts of Plaintiff's Complaint describe these statements as being made in court filings to secure temporary protective orders. (*See id.*); (*see also* Pl.'s Resp. 11:2–12, ECF No. 21) (stating that her defamation and slander claims arise, at least in part, on false statements of fact in several temporary protective order filings). The only specific filing the Court can identify as containing accusations of criminal conduct is Defendant's April 22, 2019 Motion filed with the Clark County District Court. (Defs.' Em. Mot. Protective Order, Ex. B to Def.'s Mot. Judicial Not., ECF No. 12-2). There, Defendant accused Plaintiff of engaging in "both criminal and civil assault" under Nevada Revised Statute 200.471. (*Id.*). When construing Plaintiff's *pro se* Complaint liberally—as the Court must at this stage—Plaintiff appears to allege that these accusations were made "with actual knowledge of their falsity." (Compl. ¶¶ 84–85). Together, such allegations could support plausible claims for defamation

and slander. *Cf. Chocolate Magic Las Vegas LLC v. Ford*, No. 217CV00690APGNJK, 2018 WL 475418, at *7 (D. Nev. Jan. 17, 2018) ("Ford's statement regarding Chocolate Magic violating the state health code is an imputation of a crime and is actionable [in a defamation/libel claim] without proof of damages."). That said, whether these allegations of criminal activity escape Nevada's litigation privilege is a separate issue discussed below.

Outside accusations in Defendant's April 22, 2019 Motion, the Complaint fails to identify other times where Defendant accused Plaintiff of criminal conduct. That lack of detail means Defendant does not have adequate notice of the grounds upon which Plaintiff's claims rest; and thus, Plaintiff defamation and slander claims must be dismissed to the extent they rely on accusations of criminal conduct beyond Defendant's April 22, 2019 Motion. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Schaefer v. Diamond Resorts Int'l Mktg., Inc.*, No. 2:14-CV-01900-GMN, 2015 WL 1932196, at *8 (D. Nev. Apr. 28, 2015) (dismissing defamation and slander claims because the complaint lacked allegations indicating "to whom these false statements were made and when they were made").

Additionally, if Plaintiff intended her second and third claims to rely, in part, on Defendant's April 22, 2019 Emergency Motion for Protective Order, (Ex. B to Def.'s Mot. Judicial Not., ECF No. 12-2), other at-issue statements could be the following: (1) Defendant's disclosure about Plaintiff's medical records indicating a "differential diagnosis" of "schizophrenia" stemming from Plaintiff "feeling suicidal and homicidal"; and (2) disclosure of Plaintiff's settlement agreement and medical records. (Compl. ¶¶ 68–69, 73–74). But while Plaintiff alleges that Defendant "falsely indicate[d]" a diagnosis of schizophrenia, (*id.* ¶¶ 47–50), the Complaint leaves open a potential circumstance where her medical records at least discuss a *possible* schizophrenia diagnosis. Because the Complaint's allegations do not rule out that possibility and do not include more than conclusory statements of falsity, the Complaint fails to plausibly allege how Defendant's indication of diagnosis would be entirely false.

Similarly, Defendant's disclosure of the settlement agreement and medical records' existence in the April 22, 2019 Motion—as well as in the March 1, 2019 Letter—could not support a defamation claim as a matter of law since such statements of existence would be true.

Though Defendant's April 22, 2019 accusations of criminal activity by Plaintiff could satisfy the elements of defamation/slander, the litigation privilege under Nevada law nonetheless bars such a basis from supporting a plausible claim for relief here. Indeed, the litigation privilege bars the Complaint's second and third claims as far as their reliance on Defendant's statements made in motions filed with Nevada district courts because such filings concern communications about pending litigation to either a judicial body or individuals involved in the on-going litigation. *See Greenberg Traurig*, 331 P.3d at 903 (explaining that the litigation privilege applies "even if the communications were made with knowledge and malice"); *see also Jacobs v. Adelson*, 325 P.3d 1282, 1285 (Nev. 2014) (explaining that the litigation privilege applies so long as they are related to on-going or future litigation and "in some way pertinent" to the controversy).

Aside from statements concerning litigation, Plaintiff's second and third claims also revolve around the offensive remarks verbally lodged by Shannon Pierce and Ethan Thomas after a public proceeding on April 17, 2019, when Pierce and Thomas allegedly called Plaintiff a "schizophrenic" and said "niggas don't win." (*Id.* ¶¶ 40, 68,73). Neither party provided the Court with authority under Nevada law holding or suggesting that the term "nigga" is, by itself, a defamatory statement. Most courts have found that it is not. *See, e.g.*, *Ledsinger v. Burmeister*, 318 N.W. 2d 558, 563 (Mich. Ct. App. 1982); *Bradshaw v. Swagerty*, 563 P.2d 511, 514 (Kan. Ct. App. 1977) ("The term 'nigger' is one of insult, abuse and belittlement . . . . Its use is resented, and rightly so. It nevertheless is not within any category recognized as slanderous per se."); *Garraway v. Diversified Material Handling, Inc.*, 975 F. Supp. 1026, 1034 (N.D. Ohio 1997). *But see Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. Starplex Corp.*, 188

P.3d 332 (Or. Ct. App. 2008). And Nevada would likely agree with the majority. *Cf. Branda v. Sanford*, 637 P.2d 1223, 1226 (Nev. 1981) (stating that rhetoric such as "insults and epithets" is "not generally actionable"); *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1203 (9th Cir. 2002) (stating that, in making a prediction about how a state's highest court would resolve an issue, "federal courts look to existing state law without predicting potential changes in that law.").

Nevertheless, finding a statement defamatory depends on the circumstances of its use. *Lubin v. Kunin*, 17 P.3d 422, 425 (Nev. 2001). Plaintiff's allegations, however, do not support a defamatory use of that racial insult. The use instead resembles generalized, insulting rhetoric which did not personally attack Plaintiff, her competence, or her abilities. *See Posadas v. City of Reno*, 851 P.2d 438, 442 (Nev. 1993) ("A statement is defamatory when, under any reasonable definition, such charges would tend to lower the subject in the estimation of the community and to excite derogatory opinions against him and to hold him up to contempt.") (quotations omitted).

Even if the racial insult were used in a defamatory way, Plaintiff does not allege facts stating the racial insult was overheard by others. (*See* Compl. ¶ 40). The same is true about Pierce and Thomas calling her a "schizophrenic" during that April 17, 2019 incident. (*Id.*). Though Plaintiff alleges that they called her the racial insult and a schizophrenic to "third parties," that allegation fails to go beyond a mere recitation of the elements. (*See id.* ¶ 68). It, therefore, is insufficient to state a plausible claim under FRCP 12(b)(6).

Altogether, the Court dismisses Plaintiff's slander and defamation claims with prejudice under FRCP 12(b)(6) to the extent that they rely on a racial insult allegedly made by Pierce and Thomas on April 17, 2019. The Court also dismisses these claims with prejudice insofar as they rely on Defendant's April 22, 2019 Motion accusing Plaintiff of committing civil and criminal assault and disclosing Plaintiff's settlement agreement and medical records. By contrast, Plaintiff allegations about being called "schizophrenic" on April 17, 2019, might be

able to support a defamation claim if the factual deficiencies identified in this section of the Order are corrected. Because additional facts supporting this portion of her claims are possible, the Court dismisses the defamation and slander claims as to that portion without prejudice.

### (c) *Intentional Infliction of Emotional Distress*

Plaintiff's final claim is for intentional infliction of emotional distress. To state a claim, her Complaint must allege "(1) extreme and outrageous conduct on the part of the defendant; (2) intent to cause emotional distress or reckless disregard for causing emotional distress; (3) that the plaintiff actually suffered extreme or severe emotional distress; and (4) causation," *Miller v. Jones*, 970 P.2d 571, 577 (Nev. 1998). "[E]xtreme and outrageous conduct is that which is 'outside all possible bounds of decency' and is regarded as 'utterly intolerable in a civilized community.'" *Maduike v. Agency Rent–A–Car*, 953 P.2d 24, 26 (Nev. 1998).

Plaintiff's Complaint fails to allege a plausible claim for intentional infliction of emotional distress under these elements. The facts supporting this fourth claim are vague and conclusory in that the only allegation specific to it merely states "defendant(s) defamed, harassed, and intimidated [Plaintiff] . . . which has caused [Plaintiff] to . . . continually seek mental health treatment, has caused Ms. Smith permanent harm to her reputation, and has caused [Plaintiff] to fear for her life." (Compl. ¶ 78). Insofar as Plaintiff incorporates her allegations about threatening statements made by Pierce and Thomas on April 17, 2019, such allegations fail to support this claim because "mere insults, indignities, threats, annoyances . . . or other trivialities" do not rise to the level of conduct "outside all possible bounds of decency." *See, e.g.*, *Candelore v. Clark Cty. Sanitation Dist.*, 975 F.2d 588, 591 (9th Cir. 1992) (citing Restatement (Second) of Torts § 46 cmt. d (1965)); *cf. Stricker v. Nev. Sys. of Higher Educ.*, No. 3:06-cv-00613-LRH-VP, 2007 WL 2460036, at *4 (D. Nev. Aug. 24, 2007). Accordingly, even taking all allegations about the April 17, 2019 incident as true, Plaintiff fails to state a plausible claim for intentional infliction of emotional distress. Similarly, if Plaintiff's claims

concern statements made by Defendant in court filings, the Complaint fails to explicitly state that ground and thus does not give Defendant fair notice of the claim against it.

Though Plaintiff's current Complaint fails to state a claim for intentional infliction of emotional distress, her vague assertions leave the Court unable to find, as a matter of law, that she cannot plead additional factual allegations to support the cause of action. The Court, consequently, dismisses her fourth claim without prejudice.[8]

### B. Leave to Amend the Complaint by Adding New Claims

On August 5, 2019, Plaintiff moved to amend her Complaint so that she could assert three additional causes of action against Defendant: (1) breach of confidentiality; (2) abuse of process; and (3) malicious prosecution. (Cross-Motion to Am. 21:11–23:25, ECF No. 22). However, amendment to add these claims would be futile, as detailed below. The Court therefore denies Plaintiff's Cross-Motion.

Plaintiff's proposed breach of confidentiality claim centers on Defendant's disclosure of her settlement agreement to "several third parties" by attaching it to a letter. (*Id.* 21:18–28). The proposed allegations do not disclose who these third parties were, but it appears in reference to the March 1, 2019 Letter which serves as a basis for her original claims. (*See* Proposed Am. Compl. ¶¶ 84–86, Ex. I to Cross-Motion to Am., ECF No. 21). To that extent, adding this claim runs against the litigation privilege for the same reasons previously explained in this Order. *See supra* Section A.3.(b); *Fink v. Oshins*, 49 P.3d 640, 644 (Nev. 2002) (explaining that the litigation privilege "applies not only to communications made during actual judicial proceedings, but also to communications preliminary to a proposed judicial proceeding.") (internal quotations omitted).

---

[8] Like Plaintiff's other claims, she appears to base her fourth claim on various statements made by Defendant when securing temporary protective orders from a Nevada state court. (*See* Compl. ¶ 78). As discussed above, Nevada's recognition of the litigation privilege prevents such actions from supporting the claim.

Plaintiff's second claim for abuse of process similarly would fail under the litigation privilege. It focuses solely on Defendant's court filings while serving as counsel for Caesars and Planet Hollywood. Indeed, each allegation in support of this proposed claim discusses how "Defendant misused the power of the court to perpetuate injustice" by filing "multiple TPOs" and "knowingly filing frivolous civil complaints." (*See* Proposed Am. Compl. ¶¶ 87–92, Ex. I to Cross-Motion to Am.); *Bullivant Houser Bailey PC v. Eighth Judicial Dist. Court of State ex rel. Cty. of Clark*, 381 P.3d 597, at *3 (Nev. 2012) (unpublished). Moreover, Plaintiff does not specifically allege the amount of filings that Defendant made to abuse the process or that Defendant made its legal filings with an ulterior purpose from seeking relief in a regular course of proceedings. *See Posadas v. City of Reno*, 851 P.2d 438, 444 (Nev. 1993) (listing the elements for an abuse of process claim under Nevada law)

Lastly, Plaintiff fails to state a plausible claim for malicious prosecution because that type of claim only concerns a defendant's initiation, procurement, or participation in the continuation of a "criminal proceeding." *LaMantia v. Redisi*, 38 P.3d 877, 879 (Nev. 2002). By relying on civil actions alone, Plaintiff's proposed claim would fail as a matter of law.

### C. Attorney's Fees

Because the Court finds that Defendant successfully brought an anti-SLAPP Motion for portions of Plaintiff's Complaint, Defendant is entitled to its reasonable costs and attorney's fees incurred in connection with those portions. Nev. Rev. Stat. § 41.670(1)(a). Defendant's anti-SLAPP Motion did not, however, address the amount of fees and costs associated with it. The Court thus defers ruling on fees so that Defendant can adequately brief the issue. Defendant's motion must address how its requested fees conform with recent, applicable case law; and the motion must comply with this District's Local Rule 54-14. *See Century Sur. Co. v. Prince*, 782 F. App'x 553, 558 (9th Cir. 2019) (denying attorney's fees to the extent that

dismissal occurred under Federal Rule of Civil Procedure 12(b)(6) rather than a party's anti-SLAPP Motion).

### D. Remaining Motions

Pending before the Court is Plaintiff's Objection to Magistrate Judge Youchah's Order, (ECF No. 67), which denied several of Plaintiff's requests to subpoena witnesses and granted Defendant's request to stay discovery. Plaintiff argues that Judge Youchah erred in the Order for several reasons: discovery was necessary for Plaintiff to prove her claims, Judge Youchah applied improper weight to the likelihood of Defendant succeeding on its Motions to Dismiss, and Plaintiff required discovery to defend against the summary-judgment styled motions to dismiss. (Objection 5:8–8:2, 8:26–9:20, ECF No. 69).

The Court, however, does not find that Judge Youchah committed clear error or abused her discretion in staying discovery after balancing the appropriate factors under applicable case law. Fed. R. Civ. P. 72(a); D. Nev. Local R.IB 3–1(a); 28 U.S.C (stating that a district judge may reconsider any pretrial matter referred to a magistrate judge in a civil case when the moving party shows that the magistrate judge's order is clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a); D. Nev. Local R. IB 3–1(a). In particular, discovery was not necessary to address Defendant's Motions to Dismiss because its Motions relied solely on Plaintiff's pleadings. Similarly, Judge Youchah did not abuse her discretion in staying discovery to avoid unnecessary expenses after recognizing the fatal pleading deficiencies in Plaintiff's Complaint.

### IV.    CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Remand, (ECF No. 6), is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motions to Dismiss, (ECF Nos. 10, 11), are **GRANTED in part** and **DENIED in part**. Plaintiff's claims for civil conspiracy and intentional infliction of emotional distress are dismissed with prejudice. Plaintiff's claims for

defamation/defamation per se and slander/slander per se are dismissed in part with prejudice and in part without prejudice, as explained in this Order. Plaintiff has twenty-one days from the date of this Order to file an amended complaint as outlined in this Order. If Plaintiff elects not to timely amend the claims dismissed without prejudice in this Order, the Court will close the case and enter judgment accordingly.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Extend Time, (ECF No. 14), is **GRANTED** *nunc pro tunc*.

**IT IS FURTHER ORDERED** that Plaintiff's Cross-Motion for Leave to Amend the Complaint, (ECF No. 22), is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Consolidate Cases, (ECF No. 23), is **DISMISSED as moot**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike, (ECF No. 39), is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Objection, (ECF No. 69), to Magistrate Judge Youchah's Order, (ECF No. 67), is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Leave to File Supplemental Authority, (ECF No. 82), is **DENIED**.

**DATED** this __4__ day of March, 2020.

_____
Gloria M. Navarro, District Judge
United States District Court